1  Patrick N. Keegan, Esq. (SBN 167698)
   James M. Treglio, Esq. (SBN 228077)
2  **KEEGAN & BAKER, LLP**
   6156 Innovation Way
3  Carlsbad, CA 92009
   Tel:    (760) 929-9303
4  Fax:    (760) 929-9260

5  Walter Haines, Esq. (SBN 71075)
   **THE UNITED EMPLOYEES LAW GROUP**
6  5500 Bolsa Avenue, Ste 201
   Huntington Beach, CA 92649
7  Telephone: (310) 234-5678
   Facsimile: (562) 256-1006

8
   Attorneys for Plaintiff
9  JAMES CUNHA

10

11

12                    **UNITED STATES DISTRICT COURT**

13              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

14  JAMES CUNHA, an individual, on behalf of     Case No. 17-CV-00597-JST
    himself and all others similarly situated,
15                                               **FIRST   AMENDED   CLASS   ACTION**
                              Plaintiff,          **COMPLAINT   FOR   DAMAGES   AND**
16                                               **INJUNCTIVE RELIEF**
        vs.
17
    INTELLICHECK, LLC, a California Limited
18  Liability Company; CHICO PRODUCE, INC.,       **JURY TRIAL DEMANDED**
    d/b/a PROPACIFIC FRESH, INC., a California
19  Corporation; and DOES 1through 100;

20                            Defendants.

21

22        Plaintiff JAMES CUNHA by his attorneys, individually and on behalf of others similarly situated,

23  alleges upon personal knowledge as to himself and his acts stated herein, and as to all other matters upon

24  information and belief as follows:

25        1.    This class action arises from Defendants' preparation, acquisition and use of consumer

26  reports to conduct background checks on Plaintiff and similarly situated prospective and current employees.

27  Defendant INTELLICHECK, LLC is in the business of preparing and providing consumer reports to

28  employers and Defendant CHICO PRODUCE, INC. d/b/a PRO PACIFIC FRESH, INC. routinely obtains

First Amended Complaint                          1                      Case No. 17-CV-00597-JST

1    consumer reports from Defendant INTELLICHECK, LLC[1] and uses information in consumer reports in

2    connection with their hiring and employment practices and as a basis to take adverse action against its

3    employees and job applicants, all without complying with the Fair Credit Reporting Act, 15 U.S.C. § 1681,

4    et seq. ("FCRA"), and the Investigative Consumer Reporting Agencies Act, California Civil Code § 1786,

5    et seq. ("ICRAA").  Plaintiff, individually and on behalf of all others similarly situated, seeks statutory

6    damages, actual damages, compensatory damages, punitive damages, and expenses of this litigation,

7    including reasonable attorneys' fees and costs, due to Defendants' systematic and willful violation of the

8    FCRA and the ICRAA, as well as injunctive and declaratory relief for Defendants' violation of California's

9    Unfair Competition Laws ("UCL"), California Business & Professions Code § 17200.

10                              **JURISDICTION AND VENUE**

11        2.    This Court has federal question jurisdiction over Plaintiff JAMES CUNHA's FCRA claims

12    pursuant to 28 U.S.C. § 1331.  Plaintiff JAMES CUNHA has standing to bring his FCRA claims in this

13    Court since the disclosure requirement at issue, 15 U.S.C. § 1681b(b)(2)(A)(i), creates a right to information

14    by requiring employers to inform its employees and job applicants that they intend to procure their

15    consumer reports as part of the employment process. The authorization requirement, 15 U.S.C. §

16    1681b(b)(2)(A)(ii), creates a right to privacy by enabling employees and job applicants to withhold

17    permission to obtain the report from the employer, and a concrete injury when applicants are deprived of

18    their ability to meaningfully authorize the credit check. By providing a private cause of action for violations

19    of 15 U.S.C. 1681b(b)(2)(A), Congress has recognized the harm such violations cause, thereby articulating

20    a "chain[ ] of causation that will give rise to a case or controversy." *See Spokeo, Inc. v. Robins*, ⸺ U.S.

21    ⸺, 136 S.Ct. 1540, 1549, 194 L.Ed.2d 635 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 580,

22    112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (Kennedy, J., concurring)). Therefore, Plaintiff JAMES CUNHA

23    has Article III standing to bring this lawsuit. *Syed v. M-I, LLC*, 846 F.3d 1034, 1040 (9th Cir. 2017).

24        3.    Venue is proper in the United States District Court, Northern District of California pursuant

25    to 28 U.S.C. § 1391. Plaintiff JAMES CUNHA resides in the Northern District of California, worked for

26

27    _____

28    [1]Defendant CHICO PRODUCE, INC. d/b/a PRO PACIFIC FRESH, INC and Defendant INTELLICHECK, LLC are collectively referred to herein as "Defendants."

1 | CHICO PRODUCE, INC. d/b/a PROPACIFIC FRESH, INC., in this judicial district, and his claims arise,

2 | in substantial part, in this judicial district. CHICO PRODUCE, INC., d/b/a PROPACIFIC FRESH, INC.,

3 | regularly conducts business in this judicial district and is subject to personal jurisdiction in this district.

4 |    4.  Venue is also proper because on February 6, 2017, Defendant CHICO PRODUCE, INC.,

5 | d/b/a PROPACIFIC FRESH, INC., has submitted to the jurisdiction of this Court when it removed this

6 | action from the Superior Court of California by and for the County of Humboldt to the United States District

7 | Court for the Northern District of California.

8 | **PARTIES**

9 | **A. PLAINTIFF**

10 |    5.  Plaintiff JAMES CUNHA (hereinafter "Plaintiff" or "Cunha") is a citizen of the state of

11 | California, who honorably served in the United States Marine Corps from 1990 to 1994, a veteran of Desert

12 | Storm,  and was employed  by Defendant ProPacific Fresh, Inc., as a delivery driver from April 29, 2016

13 | until May of 2016.  Cunha is, and was at all relevant times herein, a citizen of the State of California, and

14 | a resident of Humboldt County. As a result of the consumer report conducted by the Defendants, Plaintiff

15 | was terminated from his position with Defendant CHICO PRODUCE, INC., d/b/a PRO PACIFIC FRESH,

16 | INC., prior to receiving a copy of the consumer report, and without being given any opportunity to respond

17 | to the information contained therein.

18 | **B.  DEFENDANTS**

19 |    6.  Defendant CHICO PRODUCE, INC. d/b/a PRO PACIFIC FRESH, INC., ("ProPacific") is

20 | a California Corporation with its principal place of business located in Durham, California.  At all relevant

21 | times, ProPacific does business as "ProPacific Fresh, Inc." and operates the website

22 | http://www.propacificfresh.com.   According to its webpage www.propacificfresh.com/about.php,

23 | "ProPacific Fresh specializes in the distribution of quality fresh food products to a diverse customer base

24 | including foodservice, retail, healthcare, schools, institutional and distributors throughout central and

25 | northern California and western Nevada."  At all relevant times, ProPacific does business as "Third Party

26 | Logistics Services" and currently on its webpage http://www.propacificfresh.com/protransport.php states

27 | that "Third Party Logistics Services operates a comprehensive logistics system covering all growing regions

28 | of California and Western Arizona."

7.     Defendant INTELLICHECK, LLC ("Intellicheck"), is a California limited liability company, with its principal place of business located in Orange, California.  At all relevant times, Intellicheck currently operates under the trademark of "Consumer Reporting CRCA Compliance Associates" and the website http://crcascreening.com. Currently on its webpage http://crcascreening.com/intellicheck-now-crca, Intellicheck states that "CRCA, formerly IntelliCheck, is the same great team with a new name."  Pursuant to its trademark details, Intellicheck provides "[b]ackground investigation and screening services," including "county and federal criminal searches," and "pre-employment background screening."  Currently on its webpage http://crcascreening.com/faqs, Intellicheck states that "Whether you are collecting information for employment or tenant agreement the report you receive is called a consumer report.  Various things can be included in a consumer report such as; Credit History, County Criminal searches, Sex Offender Registry, Drug Screening, Previous Employment and Education Verifications, or any of our other offered services (please refer to our Employment Services page for more detailed information) giving you the data you need to make an informed decision."  Currently on its webpage http://crcascreening.com/employment-services under the "Criminal History" section,  Intellicheck states that "The Criminal History Check is one of the key components of a pre-employment background check. State and Federal Courts have ruled that employers have a responsibility to perform a criminal background check, in order to avoid litigation due to negligent hiring.  This is recommended for all job classifications, to protect your personnel and customers, as well as your company's reputation."

A.     **PLAINTIFF JAMES CUNHA**

8.     Cunha applied for and was employed in the position as a delivery driver of produce with ProPacific on April 30, 2016.  On the first day of his employment, as part of his new employment orientation, Cunha was required to sign tax forms, citizenship forms, forms for his agreement to allow ProPacific to conduct a review of Cunha's driving record, forms for his agreement to submit to a drug test, and forms for his agreement to allow ProPacific to obtain a consumer report on him, as defined by Cal. Civil Code §1786.2.

9.     The authorization Cunha was required to sign, as part of his new employment orientation, did not include a statement as to why Cunha was required to allow ProPacific to obtain a consumer report on him, or why Cunha, as a delivery driver of produce for ProPacific, qualify as job duties that would allow

ProPacific to obtain a consumer report on Cunha for employment purposes, as specified under Cal. Labor Code § 1024.5. Specifically, Labor Code § 1024.5 prohibits the use of a consumer report for employment purposes unless the position of the person for whom the report is sought is any of the following: (1) a managerial position, (2) a position with the state Department of Justice, (3) a sworn police officer or other law enforcement position, (4) a position for which information contained in the report is required by law, (5) a position that involves regular access of bank or credit card information, (6) a position that is authorized to transfer money on behalf of the employer, (7) a position with access to proprietary information, or (8) a position that involves access to $10,000 or more in cash. As a delivery driver of produce, Cunha did not and does not meet any of the exceptions specified under Cal. Labor Code § 1024.5, and as such, the consumer report on Cunha that Intellicheck provided and ProPacific obtained and used was conducted for an unlawful and improper purpose.

10.     Notwithstanding the fact the consumer report on Cunha that Intellicheck provided and ProPacific obtained and used was conducted for an unlawful and improper purpose, Cunha was required by ProPacific to sign a "Disclosure and Authorization for Consumer Reports" on the first day of his employment, as part of his new employment orientation. However, the "Disclosure and Authorization for Consumer Reports" (or "Disclosure Statement") form, and all other documents provided to Cunha, violated the FCRA and the ICRAA by failing to provide Cunha with numerous required disclosures, including but not limited to statements that: (1) Cunha may obtain a copy of the report after 60 days following submission of the authorization; (2) Cunha has the right to view the consumer report at the offices of the consumer reporting agency with another individual who furnishes proper identification; and (3) a statement summarizing the provisions of Cal Civ. Code § 1786.22. Additionally, the Disclosure Statement provided to Cunha contained a waiver, and therefore, the Disclosure Statement was not provided in a separate document consisting solely of the disclosure, which violates both the FCRA and the ICRAA.

11.     This practice violates the plain language of the FCRA and the ICRAA, and flies in the face of unambiguous case law and regulatory guidance from the FTC. *See*, *e.g.*, *Syed v. M-I, LLC*, 846 F.3d 1034, 1041 (9th Cir. 2017) ("M-I violated the FCRA by including a liability waiver on the same document as its disclosure .... We conclude that the inclusion of the liability waiver did violate the FCRA"); *E.E.O.C. v. Video Only, Inc.*, No. 06-1362, 2008 WL 2433841, at *11 (D.Or. June 11, 2008) ("I grant summary

1  judgment of liability that Video Only violated . . . 15 § 1681b(b)(2)(A)(I). This section provides that at any

2  time before the report is procured, a disclosure is made in a document that consists solely of the disclosure

3  that a consumer report may be obtained for employment purposes. Video Only disclosed this possibility as

4  part of its job application, which is not a document consisting solely of the disclosure."); Exhibit 1 ("The

5  disclosure may not be part of an employment application . . . . A disclosure that is combined with many

6  items in an employment application -- no matter how 'prominently' it appears -- is not 'in a document that

7  consists solely of the disclosure' as required by[1681b(b)(2)(A)]."); and Exhibit 2 at 51 ("The disclosure

8  cannot be part of a printed employment application.").

9      12.     By burying the "Disclosure and Authorization for Consumer Reports" with forms requiring

10  his signature presented on the first day of his employment, as part of his new employment orientation,

11  ProPacific willfully disregarded the plain language of the statutes, relevant case law, and regulatory

12  guidance, and willfully violated 15 U.S.C. §§ 1681b(b)(2)(A) by procuring consumer report information

13  on Cunha without complying with the disclosure and authorization requirements of the statute.

14      13.     As described above, the "Disclosure and Authorization for Consumer Reports" provided to

15  Cunha does not consist solely of a disclosure and authorization to obtain consumer report information, but

16  also contains a waiver in violation of both the FCRA and the ICRAA. In addition, the Disclosure Statement

17  provided to Cunha also violates both the FCRA and the ICRAA because it contains the following release

18  and acknowledgment:

19          I release and hold harmless all parties involved from any and all liability for damages arising
           from requesting, procuring or furnishing the requested information except with respect to
20          a violation of the Act. I authorize the employer and its agent! consumer and/or credit
           reporting agency and all associated entities and its clients to receive any criminal history
21          information, workers compensation history or credit report pertaining to me in the files of
           any state or local criminal justice agency.
22
       14.     The insertion of this release and acknowledgment into the Disclosure Statement is also

23  contrary to longstanding regulatory guidance. The FTC has warned that "the form should not include any

24  extraneous information." Exhibit 3. In fact, the FTC has specifically warned that "[t]he inclusion of such

25  a waiver [of liability] in a disclosure form will violate Section 604(b)(2)(A) of the FCRA [15 U.S.C. §§

26  1681b(b)(2)(A)], which requires that a disclosure consist 'solely' of the disclosure that a consumer report

27  may be obtained for employment purposes." *Id.* By including an extraneous release and acknowledgment

28

1  in the Disclosure Statement, ProPacific willfully disregarded this regulatory guidance, and willfully violated

2  15 U.S.C. §§ 1681b(b)(2)(A) by procuring consumer report information on employees without complying

3  with the disclosure and authorization requirements of the statute.

4        15.    After Cunha signed the unlawful and improper Disclosure Statement, Intellicheck prepared

5  a consumer report on Cunha on behalf of, and at the instruction of, ProPacific. In violation of the FCRA and

6  the ICRAA, the consumer report on Cunha prepared by Intellicheck that was provide to ProPacific by

7  Intellicheck and that ProPacific used contained information on misdemeanor convictions more than seven

8  years prior to the date of the consumer report, and included information of arrests that did not result in a

9  conviction.  As a result of the information contained in the consumer report on Cunha prepared by

10  Intellicheck that was provide to ProPacific by Intellicheck on or about May 13, 2016, ProPacific terminated

11  Cunha's employment with ProPacific on May 20, 2016 based solely on information contained in the

12  consumer report on Cunha. As ProPacific's attorney stated in a letter dated June 14, 2016, "Mr. Cunha's

13  separation was strictly based upon his background check...."

14        16.    The FCRA also provides that "in using a consumer report for employment purposes, before

15  taking any adverse action based in whole or in part on the report, the person intending to take such adverse

16  action shall provide to the consumer to whom the report relates . . . a copy of the report[.]" 15 U.S.C. §

17  1681b(b)(3)(A)(i).

18        17.    Prior to his termination, Cunha was never provided with any notification that ProPacific

19  intended to take adverse action against Cunha for the information contained within the consumer report, nor

20  was Cunha provided with a copy of the consumer report until approximately one month after his

21  termination, and then, only at the express request of Plaintiff's counsel, in express violation of 15 U.S.C.

22  § 1681b(b)(3)(A)(i), (ii).

23        18.    This practice violates one of the most fundamental protections afforded to employees under

24  the FCRA, and also runs counter to longstanding regulatory guidance. See Exhibit 4 ("[15 U.S.C. §

25  1681b(b)(3)(A)] requires that all employers who use consumer reports provide a copy of the report to the

26  affected consumer before any adverse action is taken. Employers must comply with this provision even

27  where the information contained in the report (such as a criminal record) would automatically disqualify

28  the individual from employment or lead to an adverse employment action. Indeed, this is precisely the

1    situation where it is important that the consumer be informed of the negative information . . . .").

2          19.    By failing to provide Cunha with a copy of his consumer reports prior to taking adverse

3    employment action against him based on such consumer report, ProPacific willfully disregarded this

4    regulatory guidance and the plain language of the statute in violation of 15 U.S.C. §§ 1681b(b)(2)(A).

5          20.    Because ProPacific did not provide Cunha with a copy of the consumer report that it relied

6    upon and did not provide Cunha with an explanation for its termination decision, Cunha did not know why

7    he was terminated. Moreover, ProPacific never disclosed the reason for his termination on May 20, 2016

8    until approximately one month after his termination, when Cunha's attorneys requested the information. As

9    a result, Cunha was deprived of any opportunity to review the information in the report and discuss it with

10   his employer before he was terminated.

11         21.    It was unlawful for ProPacific to terminate Cunha's employment on the basis of information

12   contained in the consumer report that was never shared with him.  It also was unlawful for ProPacific to

13   procure a consumer report on Cunha without making the disclosures required by the FCRA.

14         22.    It also was unlawful for ProPacific to terminate Cunha from his employment based upon a

15   consumer report that contained information which contained information older than seven years in violation

16   of both the FCRA and the ICRAA.

17         23.    As a result of these acts, Cunha has suffered, and continues to suffer, economic loss as a

18   result of the adverse employment action taken against him.

19                          **COMMON FACTUAL ALLEGATIONS**

20         24.    This case arises out of Defendants' unlawful policies and procedures by which it obtains and

21   uses consumer reports of applicants seeking employment but fails to provide applicants with the statutorily

22   required disclosures, conducts consumer reports for an impermissible purpose, and does not  lack the

23   privacy policy required by law.  Further, the consumer reports include arrests that did not result in

24   convictions, and convictions that occurred more than seven years prior to the generation of the consumer

25   report.  For these violations, Plaintiff and members of the Class are seeking statutory damages of $100 to

26   $1,000 under the FCRA, actual damages under the ICRAA, and injunctive relief and restitutionary

27   disgorgement under the UCL.

28         25.    During all relevant time periods, Intellicheck and ProPacific are "persons" under the FCRA,

1  as defined by 15 U.S.C. § 1681a(b), and Plaintiff and all those similarly situated qualify as "consumers" as

2  defined by 15 U.S.C. § 1681a(c).  As a matter of policy and practice, Intellicheck provides consumer reports

3  to ProPactific and other employers throughout the United States, and ProPacific ordered and obtained

4  consumer reports from Intellicheck on its employees and job applicants, during all relevant time periods.

5  The consumer reports prepared by Intellicheck and obtained and used by ProPacific qualify as "consumer

6  reports" under the FCRA, as defined by 15 U.S.C. § 1681a(d) because the reports indicate the consumer's

7  credit worthiness, credit standing, credit capacity, character, general reputation, or mode of living, and are

8  used to consider the consumer for employment.

9      26.    During all relevant time periods, ProPacific required Cunha and all of its employees to sign

10 an "Disclosure and Authorization for Consumer Reports" form on the first day of their employment, as a

11 matter of policy and practice.  However, the "Disclosure and Authorization for Consumer Reports" form,

12 and all other documents provided to its employees on the first day of their employment, violated the FCRA

13 and the ICRAA by failing to provide each employee with numerous required disclosures, including but not

14 limited to statements that: (1) the employee or job applicant may obtain a copy of the report after 60 days

15 following submission of the authorization; (2) the employee or job applicant has the right to view the

16 consumer report at the offices of the consumer reporting agency with another individual who furnishes

17 proper identification; and (3) a statement summarizing the provisions of Cal Civ. Code § 1786.22.

18 Additionally, ProPacific failed to provide Cunha with any notice that they were about to take adverse action

19 against his employment as a result of the information contained within the consumer report that Intellicheck

20 provided to ProPacific before terminating his employment with ProPacific, in further violation of the FCRA.

21     27.    ProPacific's above-described conduct of obtaining consumer report of its employees and job

22 applicants without proper notification and disclosure would be actionable on its own, but ProPacific further

23 violated the ICRAA by conducting consumer reports on Plaintiff and all those similarly situated who were

24 employed as delivery drivers of produce.  As delivery drivers of produce, Plaintiff and all those similarly

25 situated do not qualify as the sort of employees, pursuant to California Labor Code § 1024.5, for whom

26 consumer reports can be used for employment purposes.

27     28.    Additionally, at all relevant times, Plaintiff is informed and believes that ProPacific has had

28 a policy and practice not provide its employees or job applicants with a copy of their consumer reports when

1    it takes adverse action against them based on the information in such consumer reports.  By failing to

2    provide Plaintiff and all those similarly situated with copies of their consumer reports prior to taking adverse

3    employment action against them based on such reports, ProPacific willfully disregarded this regulatory

4    guidance and the plain language of the statute in violation of 15 U.S.C. §§ 1681b(b)(2)(A).

5         29.    Further, at all relevant times, the consumer reports Intellicheck provided to ProPactific and

6    other employers throughout the United States contain information regarding arrests that did not result in

7    conviction, and for misdemeanor convictions that antedate the consumer report by more than seven years,

8    in violation of the FCRA and the ICRAA.

9         30.    As a result of Defendants' wrongful acts, practices and omissions, Plaintiff and all those

10    similarly situated have been injured, including, without limitation, having their privacy and statutory rights

11    violated in violation of the FCRA and the ICRAA.  Plaintiff, on behalf of himself and behalf of all those

12    similarly situated, seeks statutory damages, actual damages, compensatory damages, punitive damages,

13    injunctive relief, and expenses of this litigation, including reasonable attorneys' fees and costs.

14    **CLASS ACTION ALLEGATIONS**

15         31.    This action has been brought and may be maintained as a class action under Rule 23 of the

16    Federal Rules of Civil Procedure because the proposed classes and sub-classes are easily ascertainable and

17    there is a well-defined community of interest in the litigation, as described further below.

18         32.    Plaintiff is a member of and seeks to certify his claims alleged in his First Claim for Relief

19    on behalf of the  "Antedated Report Class" defined as follows:

20         Antedated Report Class: All persons who, on or after December 19, 2014, were subject to a
      consumer report prepared by Intellicheck.

21

22         33.    Plaintiff is a member of and seeks to certify his claims alleged in his Second and Fourth

      Claims for Relief on behalf of the "Background Check Class" defined as follows:
23

24         Background Check Class: All persons employed by ProPacific or who applied for a job with
      ProPacific who, on or after December 19, 2014, were the subject of a consumer report that
      was prepared by ProPacific.
25

26         34.    Plaintiff is a member of and seeks to certify his claims alleged in his Third Claim for Relief

27    on behalf of the "Adverse Action Class" defined as follows:

28         Adverse Action Class: All persons employed by ProPacific or who applied for a job with
      ProPacific who, on or after December 19, 2014, that ProPacific took adverse employment

action against based, in whole or in part, on information contained in a consumer report, and who were not provided a copy of such report in advance.

35.     Plaintiff is a member of and seeks to certify his claims alleged in his Fifth Claim for Relief on behalf of the "California Antedated Report Subclass" defined as follows:

California Antedated Report Subclass: All California residents, who, on or after December 19, 2014, were subject to a consumer report prepared by Intellicheck.

36.     Plaintiff is a member of and seeks to certify his claims alleged in his Sixth Claim for Relief on behalf of the "California Disclosure Subclass" defined as follows:

California Disclosure Subclass: All persons employed by ProPacific or who applied for a job with ProPacific who, on or after December 19, 2014, in California that were the subject of a consumer report that was prepared by ProPacific.

37.     Plaintiff is a member of and seeks to certify his claims alleged in his Seventh Claim for Relief on behalf of the "California UCL Class" defined as follows:

California UCL Class: All California residents, who, on or after December 19, 2012, were subject to a consumer report for employment purposes performed by Intellicheck and/or who were employed by ProPacific or who applied for a job with ProPacific that were the subject of a consumer report that was prepared by ProPacific.

38.     Defendants and their shareholders, officers, directors, and managing agents are excluded from the Classes and Subclasses defined above.  Members of the Classes and Subclasses defined above will hereinafter be collectively referred to as "Class Members."  Plaintiff reserves the right under F.R.C.P. Rule 23 to amend or modify the Class definition and Class Period with greater particularity or further division into subclasses or limitation to particular issues as warranted as additional facts are discovery by Plaintiff during his future investigations.

39.     This action is properly maintainable as a class action.  Although Plaintiff does not, as yet, know the exact size of the Classes and Subclasses defined above, based upon the nature of the Defendants' business, Plaintiff believes that there are more than 100 Class Members, and that Class Members are geographically dispersed throughout the United States.  Thus, each Class and Subclass defined above is sufficiently numerous to make joinder impracticable, if not completely impossible. The disposition of the claims of the Class Members through this class action will benefit both the parties and this Court.  In addition, each class and subclass is readily identifiable from information and records in the possession of Intellicheck, ProPacific, and the Class Members.

40.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact to each class and subclass predominate over questions which may affect individual class and subclass members, including the following:

a. Whether the consumer reports produced by Intellicheck contained information regarding misdemeanor convictions older than seven years, and/or information regarding arrests that did not lead to convictions;

b. Whether the consumer reports produced by Intellicheck violate the FCRA and the ICRAA;

c.  Whether Intellicheck's actions were willful;

d. Whether ProPacific uses consumer report information to conduct background checks on employees and prospective employees;

e. Whether ProPacific requires its employees to sign a Disclosure Statement;

f. Whether ProPacific's Disclosure Statement complies with the FCRA and the ICRAA;

g. Whether it was proper under the FCRA and the ICRAA for ProPacific to include the Disclosure Statement in a multi-page job application;

h. Whether it was proper under the FCRA and the ICRAA for ProPacific to include a liability release and acknowledgement in the Disclosure Statement;

i. Whether ProPacific violated the FCRA and the ICRAA by procuring consumer report information without  making proper disclosures in the format required by the statute;

j. Whether ProPacific violated the FCRA and the ICRAA by procuring consumer report information based on invalid authorizations;

k. Whether ProPacific violated the FCRA by taking adverse action against Plaintiffs and other members of the Adverse Action Class on the basis of information in a consumer report, without first furnishing a copy of the report to the affected persons;

l. Whether ProPacific's violations of the FCRA were willful;

m. The proper measure of statutory damages; and

n. The proper form of injunctive and declaratory relief.

o.  Whether Defendants are liable for attorneys' fees and costs.

41.     Plaintiffs and the Class Members' claims arise from and were caused by Defendants'

1    wrongful conduct. Plaintiff is asserting claims that are typical of the claims of each member of the Class.

2    Plaintiff is like all other Class Members because Plaintiff has suffered the same harm as those suffered by

3    each Class and Subclass defined above. Since Plaintiff's claims and the claims of Class Members all derive

4    from a common nucleus of operative facts, Plaintiff is asserting claims that are typical of the claims of all

5    Class Members.

6        42.    Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interest

7    that is contrary to or in conflict with those Class Members he seeks to represent. Furthermore, Plaintiff has

8    retained counsel experienced and competent in the prosecution of complex class action litigation alleged

9    herein to further ensure such protection and he intends to prosecute this action vigorously.

10        43.    The prosecution of separate actions by individual members of each Class and Subclass

11    defined above would create a risk of inconsistent or varying adjudications with respect to individual Class

12    Members, which would establish incompatible standards of conduct for the party opposing each Class and

13    Subclass defined above and would lead to repetitious trials of the numerous common questions of fact and

14    law. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would

15    preclude its maintenance as a class action. As a result, a class action is far superior to other available

16    methods for the fair and efficient adjudication of this controversy.

17        44.    Plaintiff and the Class Members have suffered irreparable harm and damages as a result of

18    Defendants' wrongful conduct as alleged herein. Absent a class action, Plaintiff and the Class Members

19    will continue to suffer losses, thereby allowing these violations of law to proceed without remedy, and

20    allowing Defendants to retain the proceeds of their ill-gotten gains.

21        45.    In addition, Defendants have acted or refused to act on grounds generally applicable to each

22    Class and Subclass defined above, thereby making appropriate final injunctive relief with respect to the each

23    Class and Subclass defined above as a whole.

24    **<u>FIRST CLAIM FOR RELIEF</u>**
      **Reporting Antedated Charges**
25    **(15 U.S.C. § 1681c(a)(2) and (5))**
      **(Asserted by the Antedated Report Class against Intellicheck)**
26
27        46.    Plaintiff alleges and incorporates by this reference the allegations in all preceding paragraphs.

      47.    In return for money, Intellicheck prepared and provided consumer reports on Plaintiff and
28

the Antedated Report Class, to ProPacific and other third-parties for employment purposes.

48.   The consumer reports prepared by Intellicheck and provided to ProPacific and other third-parties included civil suits, civil judgments, records of arrest, and convictions for misdemeanors that antedate the report by more than seven years.

50.   Intellicheck invaded the right of privacy of Plaintiff and the Antedated Report Class. Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (i.e., disclosure and authorization) set forth in the following subsections: 15 U.S.C. § 1681b(b)(2).

51.   The consumer reports of Plaintiff and the Antedated Report Class contained a wealth of private information which Intellicheck had no right to cause to be procured under the FCRA. The consumer reports of Plaintiff and the Antedated Report Class contained included, *inter alia*, contain information regarding arrests that did not result in conviction, and for misdemeanor convictions that antedate the consumer report by more than seven years, in violation of the FCRA. By causing consumer reports to be procured containing this private information without complying with the FCRA's disclosure requirements, Intellicheck illegally invaded Plaintiff's right to privacy, as well as the right of privacy of the Plaintiff and the Antedated Report Class.

52.   The foregoing violations were willful. Intellicheck acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Antedated Report Class under 15 U.S.C. §§ 1681c(a)(2) and 1681c(a)(5). Intellicheck's willful conduct is reflected by, inter alia, the following:

a. The FCRA was enacted in 1970; Intellicheck, which was founded in 2013, has had nearly four years to become compliant;

b. Intellicheck is a corporation which specializes in furnishing consumer reports for employment purposes and has access to legal advice through its outside employment counsel. Yet, there is no contemporaneous evidence that Intellicheck determined that its conduct was lawful;

c. Intellicheck's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

d. Intellicheck's similarly situated competitors have adopted policies of not reporting dismissed charges, antedated by more than seven years, and for which the statute of imitations has run;

e. Despite the pellucid statutory text and there being a depth of guidance, Intellicheck adopted a policy of systematically reporting dismissed charges, antedated by more than

seven years, and for which the statute of limitations had run. By adopting such a policy, Intellicheck voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

f. Intellicheck includes a notation on its reporting indicating that the seven year limitation on information is applicable, yet fails to exclude all adverse non-conviction information which antedates the date of the report by more than seven years.

53.     As a result of such conduct, Plaintiff and the Antedated Report Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. §1681n(a)(1)(A).

54.     As a result of such conduct, Plaintiff and the Antedated Report Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

55.     As a result of such conduct, Plaintiff and the Antedated Report Class are further entitled to recover their attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

**SECOND CLAIM FOR RELIEF**
**FOR VIOLATION OF THE FEDERAL CREDIT REPORTING ACT**
**(Violation of 15 U.S.C. §§ 1681b(b)(2)(A) and 1681d)**
**(On Behalf of Plaintiff and Background Check Class Against ProPacific)**

56.     Plaintiff alleges and incorporates by this reference the allegations in all preceding paragraphs.

57.     ProPacific is a "person" as defined by 15 U.S.C § 1681a(b) of the FCRA. ProPacific obtained and used consumer reports of its employees and job applicants for employment purposes. Plaintiff and the Background Check Class are "consumers" as defined by 15 U.S.C § 1681a(c) because they are individuals. At all relevant times, Plaintiff and the Background Check Class were applicants for employment with Defendants.

58.     15 U.S.C. § 1681b(b)(2)(A) provides that a person may not procure a consumer report for employment purposes unless the person provides the applicant with a "clear and conspicuous" disclosure "in a document that consists solely of the disclosure."

59.     By including an authorization to obtain a physical examination and conduct drug and alcohol tests as well as other matters, ProPacific violated 15 U.S.C. § 1681b(b)(2)(A) by not providing Plaintiff and the Background Check Class with a "clear and conspicuous" disclosure "in a document that consists solely of the disclosure."

60.     At all relevant times, ProPacific had a policy and practice that failed to provide a separate

document that consisted solely of the disclosure as required by 15 U.S.C. § 1681b(b)(2)(A).

61.     15 U.S.C. § 1681d(a) provides that the written disclosure statement must include a statement informing the consumer of his right to request additional disclosures concerning the nature and scope of the investigation for the consumer report. 15 U.S.C. § 1681d(a) also provides that the written disclosure statement must include a summary of the consumer's rights under 15 U.S.C. § 1681g(c).

62.     At all relevant times, ProPacific violated 15 U.S.C. § 1681d(a) of the FCRA by maintaining a policy and practice where ProPacific failed to provide Plaintiff and the Background Check Class with a disclosure statement identifying the consumer's rights to request additional disclosures concerning the nature and scope of the investigation for the consumer report and by failing to provide a summary of the consumer's rights under 15 U.S.C. § 1681g(c).

63.     In accordance with the Eleventh Circuit's recent decision in *Church v. Accretive Health, Inc.,* 2016 U.S. App. LEXIS 12414, *1, 2016 WL 3611543 (11th Cir. July 6, 2016), Plaintiff suffered a concrete informational injury because Defendant failed to provide Plaintiff and the Background Check Class with information to they was entitled to by statute, namely a stand-alone FCRA disclosure form. Through the FCRA, Congress has created a new right—the right to receive the required disclosure as set out in the FCRA—and a new injury—not receiving a stand-alone disclosure.

64.     Pursuant to § 1681b(b)(2), Plaintiff and the Background Check Class was entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure. Such a disclosure was required to be provided to Plaintiff and the Background Check Class before the consumer reports were to be procured. By depriving Plaintiff and the Background Check Class of this information, ProPacific injured Plaintiff and the Background Check Class. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

65.     ProPacific violated the FCRA by procuring consumer reports on Plaintiffs and the Background Check Class without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i). Namely, these disclosures had to be made: (1) before ProPacific actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and the Background Check Class that ProPacific might procure a consumer report on each of them for purposes of employment. The

1   required disclosures were not made, causing Plaintiffs an informational injury. *See*, *Church v. Accretive*

2   *Health, Inc*., 2016 U.S. App. LEXIS 12414, *1, 2016 WL 3611543 (11th Cir. July 6, 2016).

3       66.   Second, ProPacific invaded the right of privacy of Plaintiff and the Background Check Class.

4   Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured,

5   for employment purposes with respect to any consumer, unless" it complies with the statutory requirements

6   (i.e., disclosure and authorization) set forth in the following subsections: 15 U.S.C. § 1681b(b)(2). As one

7   court put it, "[t]he FCRA makes it unlawful to 'procure' a report without first providing the proper

8   disclosure and receiving the consumer's written authorization." *Harris v. Home Depot U.S.A.*, *Inc*., 114 F.

9   Supp. 3d 868, 869 (N.D. Cal. 2015).

10       67.   The consumer reports of Plaintiff and the Background Check Class contained a wealth of

11   private information which ProPacfic had no right to access under the FCRA. The consumer reports of

12   Plaintiff and the Background Check Class contained included, *inter alia*, contain information regarding

13   arrests that did not result in conviction, and for misdemeanor convictions that antedate the consumer report

14   by more than seven years, in violation of the FCRA. By procuring consumer reports containing this private

15   information without complying with the FCRA's disclosure requirements, ProPacific illegally invaded

16   Plaintiff's right to privacy, as well as the right of privacy of the Background Check Class.

17       68.   ProPacific's conduct in violation of 15 U.S.C. §§ 1681b(b)(2)(A) and 1681d was and is

18   willful. ProPacific acted in deliberate or reckless disregard of its obligations and the rights of its employees

19   and job applicants, including Plaintiff and the Background Check Class.  The foregoing violations were

20   willful. ProPacific knew or recklessly disregarded the fact that the Disclosure Statement must be a

21   stand-alone form (separate from the employment application), and should not include items not strictly

22   required by the FCRA. ProPacific acted in deliberate or reckless disregard of its obligations and the rights

23   of Plaintiff and the Background Check Class under 15 U.S.C. § 1681b(b)(2)(A)(i). ProPacific's willful

24   conduct is reflected by, among other things, the following facts:

25       a. ProPacific is a corporation with access to legal advice through outside employment counsel, and
           there is no contemporaneous evidence that it determined that its conduct was lawful;

26

27       b. ProPacific knew or had reason to know that its conduct was inconsistent with published FTC
           guidance and case law interpreting the FCRA and the plain language of the statute;

28       c. ProPacific voluntarily ran a risk of violating the law substantially greater than the risk associated

with a reading that was merely careless;

d. ProPacific's Disclosure Statement also references this stand-alone document requirement, and improperly asks the person filling out the form to "acknowledge that this is a stand-alone consumer notification"; and

e. ProPacific has not changed its business practices in response to the filing of this action.

69.    As a result of such conduct, Plaintiff and the Background Check Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. §1681n(a)(1)(A).

70.    As a result of such conduct, Plaintiff and the Background Check Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

71.    As a result of such conduct, Plaintiff and the Background Check Class are further entitled to recover their attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

**THIRD CLAIM FOR RELIEF**
**FOR VIOLATION OF THE FEDERAL CREDIT REPORTING ACT**
**(Violation of 15 U.S.C. § 1681b(b)(3)(A) and 15 U.S.C. § 1681m)**
**(On Behalf of Plaintiff and Adverse Action Class Against ProPacific)**

72.    Plaintiff alleges and incorporates by this reference the allegations in all preceding paragraphs.

73.    Plaintiff and the Adverse Action Class are each a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

74.    ProPacific is a "person" that regularly uses consumer reports for employment purposes.

75.    ProPacific used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff and the Adverse Action Class.

76.    ProPacific violated the FCRA by failing to provide Plaintiff and the Adverse Action Class with a copy of the consumer report that was used to take adverse employment action against them. See 15 U.S.C. § 1681b(b)(3)(A).

77.    The foregoing violations were willful. ProPacific acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Adverse Action Class under 15 U.S.C. § 1681b(b)(3)(A). ProPacific's willful conduct is reflected by, among other things, the following facts:

a. ProPacific is a corporation with access to legal advice through outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful;

b. ProPacific knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute;

c. ProPacific voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless;

d. ProPacific's Disclosure Statement does not state that a consumer report automatically will be provided to employees or prospective employees if ProPacific intends to take adverse action against them based on information in a consumer report. Rather, ProPacific places the burden on the affected individual to request a copy of his or her report; and

e. ProPacific's repeatedly violated the statute and its failure to provide Plaintiff and the Adverse Action Class with copies of their consumer reports was not accidental but pursuant to its established policies and practices.

78.     The FCRA requires ProPacific, as a user of consumer reports for employment purposes, before taking adverse action based in whole or in part on the consumer reports, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA. 15 U.S.C. § 1681b(b)(3)(A)(i), (ii).

79.     ProPacific negligently and/or willfully violated section 1681b(b)(3) of the FCRA by failing to provide to Plaintiff and the Adverse Action Class about whom the report relates a copy of the report and a written description of the consumer's rights under the FCRA a sufficient time before it took adverse action based in whole or in part on the consumer report.

80.     Pursuant to sections 1681n and 1681o of the FCRA, ProPacific is liable for negligently and/or willfully violating FCRA section 1681b(b)(3) by failing to provide to the consumer about whom the report relates a copy of the report and a written description of the consumer's rights under the FCRA a sufficient time before it took adverse action against Plaintiff and each Adverse Action Class member based in whole or in part on the consumer report.

81.     As a result of such conduct, Plaintiff and the Adverse Action Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. §1681n(a)(1)(A).

82.     As a result of such conduct, Plaintiff and the Adverse Action Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

83.     As a result of such conduct, Plaintiff and the Adverse Action Class are further entitled to recover their attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

**FOURTH CLAIM FOR RELIEF**
**Failure to Obtain Proper Authorization in Violation of the FCRA**
**15 U.S.C. § 1681b(b)(2)(A)(ii)**
**(On Behalf of Plaintiff and Background Check Class Against ProPacific)**

84.     Plaintiff alleges and incorporates by this reference the allegations in all preceding paragraphs.

85.     ProPacific violated the FCRA by procuring consumer reports relating to Plaintiff and  the Background Check Class without proper authorization. See 15 U.S.C. § 1681b(b)(2)(A)(ii).

86.     The foregoing violations were willful. ProPacific acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and the Background Check Class under 15 U.S.C. § 1681b(b)(2)(A)(ii).

87.     As a result of such conduct, Plaintiff and the Background Check Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations pursuant to 15 U.S.C. §1681n(a)(1)(A).

88.     As a result of such conduct, Plaintiff and the Background Check Class are entitled to such amount of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2).

89.     As a result of such conduct, Plaintiff and the Background Check Class are further entitled to recover their attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

**FIFTH CLAIM FOR RELIEF**
**FOR VIOLATION OF THE INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT,**
**CIVIL CODE § 1786.18**
**(On behalf of the Plaintiff and the California Antedated Subclass Against Intellicheck)**

90.     Plaintiff alleges and incorporates by this reference the allegations in all preceding paragraphs.

91.     California Civil Code §1786.18 prohibits an investigative credit reporting agency from making or furnishing any investigative consumer report containing records of arrest, indictment, information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years. These items of information shall no longer be reported if at any time it is learned that, in the case of a conviction, a full pardon has been granted or, in the case of an arrest, indictment, information, or misdemeanor complaint, a conviction did not result.

92.     At all relevant times, Intellicheck violated California Civil Code §1786.18 by issuing consumer reports on Plaintiff and the California Antedated Subclass containing records of arrest, indictment,

information, misdemeanor complaint, or conviction of a crime that, from the date of disposition, release, or parole, antedate the report by more than seven years.

93.     Further, Intellicheck has violated and continue to violate Cal. Civil Code §1786.20 (d)(1)(A), by not, conspicuously posting, as defined in subdivision (b) of Section 22577 of the Business and Professions Code, on their primary Internet Web site information describing its privacy practices with respect to its preparation and processing of investigative consumer reports.

94.     With respect to each of the aforementioned violations of the ICRAA provisions, Intellicheck is liable to Plaintiff and the California Antedated Subclass in the amount of the greater of the actual damages sustained as a result of the violations or $10,000 per violation pursuant to Civil Code § 1786.50 (a) (1).

95.     Intellicheck's violations were willful or grossly negligent within the meaning of Civil Code § 1786.50 (b), in that Intellicheck knowingly failed to fulfill obligations without a good faith, reasonable belief in the legality of their actions.

96.     Plaintiff and the California Antedated Subclass seek all available remedies pursuant to Cal. Civ. Code § 1786.50, including statutory damages and/or actual damages, punitive damages, injunctive and equitable relief, and attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF
## FOR VIOLATION OF THE INVESTIGATIVE CONSUMER REPORTING AGENCIES ACT
### (Violation of California Civil Code 1786, et seq.)
### (On Behalf of the Plaintiff and California Disclosure Subclass Against ProPacific)

97.     Plaintiff alleges and incorporates by this reference the allegations in all preceding paragraphs.

98.     ProPacific is a "person[]" as defined by Cal. Civ. Code § 1786.2(a). Plaintiff and the California Disclosure Subclass are "consumers" as defined by Cal. Civ. Code § 1786.2(b), as they are natural individuals who were either employed or made an application for employment purposes.

99.     Cal. Civ. Code § 1786.16(a)(1) of the ICRAA requires that consumers be provided a disclosure document which includes a summary of the provisions of Cal. Civ. Code § 1786.22. The summary must state that: (1) the consumer can view, during normal business hours, the file maintained on the applicant by the consumer reporting agency; (2) the consumer can obtain a copy of the report by submitting proper paperwork and paying the costs of duplication services via mail or appearing at the reporting agency's location in person; (3) if the consumer appears in person, the consumer may be

1   accompanied by another individual who furnishes proper identification; and (4) the consumer may receive

2   a summary of the report over the telephone by representatives of the reporting agency.

3       100.    As a matter of policy and practice, ProPacific failed to provide Plaintiff and the California

4   Disclosure Subclass with disclosure documents that complied with the ICRAA. At all relevant times,

5   ProPacific failed to include any language summarizing the provisions of Cal. Civ. Code § 1786.22 in any

6   documents furnished to Plaintiff and the California Disclosure Class in violation of Cal. Civ. Code §

7   1786.16(a)(1).

8       101.    Cal. Civ. Code § 1786.16(a)(2)(B) requires that person using the consumer report provide

9   the consumer with a "clear and conspicuous" disclosure of the consumer's rights under the statute "in a

10  document that consists solely of the disclosure."

11      102.    By including authorization to obtain a physical examination and conduct drug and alcohol

12  tests and other matters, ProPacific violated Cal. Civ. Code § 1786.16(a)(2)(B) by not providing the applicant

13  with a "clear and conspicuous" disclosure "in a document that consists solely of the disclosure."

14      103.    At all relevant times, ProPacific had a policy and practice of failing to provide a separate

15  document that consists solely of the disclosure as required by Cal. Civ. Code § 1786.16(a)(2)(B).

16      104.    Notwithstanding the fact that the disclosure violated the ICRAA, ProPacific knowingly and

17  intentionally conducted investigative consumer reports for an improper purpose in violation of Cal. Civil

18  Code § 1786.16(a)(2)(A), namely for employment purposes for an employee who does not meet any of the

19  requirements of Cal. Labor Code § 1024.5.

20      105.    ProPacific's conduct in violation of Cal. Civ. Code §§ 1786.16(a), 1786.16(b), and 1786.20

21  was and is willful. ProPacific acted in deliberate or reckless disregard of ProPacific's obligations and the

22  rights of applicants, including Plaintiff and the California Disclosure Subclass.

23      106.    As a result of procuring consumer reports for an improper purpose, failing to provide

24  adequate disclosure statements, and failing to have a privacy policy, Plaintiff and the California Disclosure

25  Subclass have sustained harm, including but not limited to, invasion of privacy and violation of statutory

26  rights.

27      107.    As a result of such conduct, Plaintiff and the California Disclosure Subclass seek all

28  available remedies pursuant to Cal. Civ. Code § 1786.50, including statutory damages and/or actual

1  damages, punitive damages,  injunctive and equitable relief, and attorneys' fees and costs.

2  **SEVENTH CLAIM FOR RELIEF**
3  **FOR VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, et seq)**
**(On Behalf of the Plaintiff and California UCL Class Against All Defendants)**

4  108.   Plaintiff alleges and incorporates by this reference the allegations in all preceding
5  paragraphs.

6  109.   California Business and Professions Code § 17200 *et seq.* prohibits unfair competition in the
7  form of any "unlawful" and "unfair" business acts and practices. Defendants' acts and practices described
8  in this Complaint constitute "unlawful" and "unfair" business acts and practices within the meaning of
9  Business and Professions Code § 17200 *et seq.*

10  110.   Intellicheck and ProPacific have engaged in "unlawful" business acts and practices by their
11  violations of state and federal law by committing the acts as described above, including *inter alia* failing
12  to provide Plaintiff and the California UCL Class with a clear and conspicuous disclosure in a document
13  consisting solely of the disclosure, a statement that the Plaintiff and the California UCL Class may request
14  additional disclosures concerning the nature and scope of the investigation for the consumer report, a
15  summary of the rights of Plaintiff and the California UCL Class, a statement that Plaintiff and the California
16  UCL Class  may dispute the accuracy of the consumer report, and a copy of the consumer report following
17  an adverse action or request for a copy as part of the application process.  Plaintiff and the California UCL
18  Class  reserve the right to allege other violations of law which constitute unlawful acts or practices.

19  111.   The violations of these laws serve as "unlawful" business practices for purposes of Business
20  and Professions Code § 17200 *et seq.* and remedies are provided therein under Business and Professions
21  Code § 17203.

22  112.   Intellicheck and ProPacific have also engaged in "unfair" business acts or practices in that
23  the harm caused by Defendants' wrongful conduct alleged above outweighs the utility of such conduct and
24  such conduct offends public policy, is immoral, unscrupulous, unethical, deceitful and offensive, causes
25  substantial injury to Plaintiff and California UCL Class, and provides Intellicheck and ProPacific with an
26  unfair competitive advantage over those employers and businesses that abide by the state and federal laws
27  alleged to have been violated by Defendants herein.

28  113.   As Intellicheck and ProPacific continue to operate in the State of California, Plaintiff and

1  California UCL Class may be subject to further background checks conducted by Intellicheck which are

2  conducted for improper purposes, contain antedated or inaccurate information, and are conducted after

3  inadequate disclosures are made, and because Courts have held that the FCRA does not allow for injunctive

4  relief in a private action, Plaintiff and the California UCL Class have no adequate remedy at law.

5       114.   Pursuant to Business & Professions Code § 17203, Plaintiff and California UCL Class seek

6  an order of this Court for equitable and/or injunctive relief in the form of requiring Defendants to correct

7  their illegal conduct that is necessary and proper to prevent Intellicheck and ProPacific from repeating their

8  wrongful practices as alleged above, plus interest and attorneys' fees pursuant to, *inter alia*,15 U.S.C. §

9  1681n, 15 U.S.C. § 1681o, California Civil Code § 1786.50, California Code of Civil Procedure § 1021.5.

10                                    **PRAYER FOR RELIEF**

11      WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, requests of this Court

12  the following relief:

13      1.     That the Court issue an Order certifying each Class and Subclass defined above , appointing

14  the named Plaintiff as a representative of each Class and Subclass defined above, and appointing Keegan

15  & Baker LLP and the United Employees Law Group, P.C.,  as counsel for the members of each Class and

16  Subclass defined above;

17      2.     For an Order requiring Defendants to identify each of the members of each Class and

18  Subclass defined above by name, home address, and home telephone number;

19      3.     For the creation of an administrative process wherein each injured member of each Class and

20  Subclass defined above may submit a claim in order to receive his or her money;

21      4.     For statutory, general, compensatory, and punitive damages for each Class and Subclass

22  defined above according to proof at trial;

23      5.     An award of appropriate equitable relief, including but not limited to preliminary, permanent,

24  and mandatory injunctive relief prohibiting the Defendants and their agents from committing further

25  unlawful conduct in violation of the FCRA, the ICRAA, and the UCL;

26      6.     Costs of suit, including reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n,

27  15 U.S.C. § 1681o, California Civil Code § 1786.50, California Code of Civil Procedure § 1021.5, and the

28  common fund doctrine;

1       7.      For pre-judgment and post-judgment at the legal rate;

2  ///

3  ///

4  ///

5  ///

6  ///

7       8.      Such further relief as the Court deems just and proper.

8  Dated: March 3, 2017                KEEGAN & BAKER, LLP

10                     _____/s/Patrick N. Keegan_____

                     Patrick N. Keegan, Esq.

11                   James M. Treglio, Esq.

                   Attorneys for Plaintiff JAMES CUNHA

1

## DEMAND FOR JURY TRIAL

2    Plaintiff and the Class hereby demand a jury trial on all claims for relief and claims with respect to

3  which they have a right to jury trial.

4  Dated: March 3, 2017                          KEEGAN & BAKER, LLP

5

6                                               _____/s/Patrick N. Keegan_____
                                                Patrick N. Keegan, Esq.
7                                               James M. Treglio, Esq.
                                                Attorneys for Plaintiff JAMES CUNHA
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2        I HEREBY CERTIFY that, on March 3, 2017, a true and correct copy of the **FIRST AMENDED**

3    **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** was filed

4    electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic

5    filing system and indicated on the Notice of Electronic Filing.  Parties may access this filing through the

6    Court's EM/ECF System.

7

8                                                    s/ Patrick N. Keegan
                                                    Patrick N. Keegan, Esq.
9                                                    pkeegan@keeganbaker.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1



**Federal Trade Commission**
**Protecting America's Consumers**

---

### UNITED STATES OF AMERICA
### FEDERAL TRADE COMMISSION
### WASHINGTON, D.C. 20580

Division of Credit Practices
Bureau of Consumer Protection
Clarke W. Brinckerhoff
Attorney

September 9, 1998

H. Rowan Leathers, III, Esq.
MANIER & HEROD
First Union Tower - Suite 2200
150 Fourth Avenue North
Nashville, Tennessee 37219

Re: Sections 603(d), 603(f), and 604(b) of the Fair Credit Reporting Act

Dear Mr. Leathers:

This responds to your letter dated concerning the application of the Fair Credit Reporting Act ("FCRA") to Employment Trac ("ET"), your client. ET provides information to prospective employers about the prior work experience of applicants, primarily in the fast food industry. ET provides the information telephonically (<u>i.e.</u>, without a written report) on a specific applicant upon request from a subscriber to this service.

You ask three questions, which we report verbatim preceding our analysis of each.

*1. Is ET's provision of this type of information subject to the FCRA?*

Yes. ET is a "consumer reporting agency" ("CRA") because Section 603(f) defines that term to include any party that "for monetary fees . . . regularly engages in . . . assembling . . . information on consumers for the purpose of furnishing consumer reports to third parties" in interstate commerce. Each report on an employment applicant is a "consumer report" because Section 603(d) defines that term very broadly to include any information bearing on a consumer's credit standing, "character, general reputation, personal characteristics, or mode of living" which is used (among other things) to make employment decisions. An individual's employment history, based on data in ET's files, unquestionably bears on his or her character, reputation, and other listed characteristics.

*2. Section 604(b)(2)(A) of the FCRA seems to require that the consumer disclosure be "in a document that consists solely of the disclosure." With regard to this requirement, is it sufficient that the disclosure be prominently set forth within an application for employment, or must it truly be included on a separate document?*

The disclosure may not be part of an employment application, because the language you quote is intended to ensure that it appears conspicuously in a document not encumbered by any other information. The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side with the disclosure. A disclosure that is combined with many items in an employment application -- no matter how "prominently" it appears -- is not "in a document that consists solely of the disclosure" as required by Section 604(b)(2)(A).

*3. Section 604(b)(3)(A) of the FCRA requires that a copy of the "report" be provided by the user to the consumer prior to adverse employment action being taken based in whole or in part on the report. In this instance, the report provided to the user is a verbal report, and not a written report. We would appreciate some guidance concerning how to provide a "copy of the report" within the context of this transaction.*

The purpose of this section, which was added in the 1996 amendments to the FCRA, is to provide the consumer with knowledge of information the CRA has reported about him or her that is going to result in adverse action in an employment context, affording the individual an opportunity to respond to it.(1) Where a written report exists, as in the case of a traditional

consumer report, Section 604(b)(3)(A) requires that the actual unexpurgated report must be provided to the applicant.(2) Where the employer possesses no written report because the information is provided verbally, as in ET's business, we believe it the employer may comply with Section 604(b)(3)(A) by telling the applicant orally what is in the report before taking adverse action. Because the report itself is oral, an oral "copy" seems the proper method of compliance. An employer that verbally provides to the applicant the report it receives (and informs him or her that ET is the source of the report), before rejecting the application, complies with the provision by conveying information that Congress intended the consumer to know prior to suffering adverse action.

The opinions set forth in this informal staff letter are not binding on the Commission.

Sincerely yours,

Clarke W. Brinckerhoff

1. S. Rept. 104-184, 104th Cong., 1st Sess. 35.

2. The enclosed staff opinion letter (Hahn, 7/8/98) discusses this subsection in that regard.

_____
Last Modified: Friday, June 24, 2011

EXHIBIT 2

# 40 YEARS OF EXPERIENCE
## WITH THE FAIR CREDIT REPORTING ACT

### AN FTC STAFF REPORT WITH SUMMARY OF INTERPRETATIONS



July 2011
Federal Trade Commission

B. <u>Employment reports with public record data</u>. An employer must comply with the disclosure and consumer authorization requirements of section 604(b)(2), even where the consumer report is comprised of public records and the CRA has already made the disclosure required by section 613, which specifically covers reports of public record information for employment purposes.[154]

## 2. WRITTEN DISCLOSURE AND CONSENT REQUIRED

Section 604(b)(2)(A) imposes an obligation on employers. It requires that, before obtaining consumer reports for employment purposes, employers must disclose this fact to each affected consumer in writing and obtain the consumer's written authorization.[155]

## 3. "IN A DOCUMENT THAT CONSISTS SOLELY OF THE DISCLOSURE"

A. <u>May include brief description of the nature of consumer reports</u>. The document that sets forth the disclosure to the consumer that a consumer report may be obtained for employment purposes may contain only minor additional items. The document may include a brief description of the nature of the consumer reports covered if the description does not confuse the consumer or detract from the mandated disclosure.[156]

B. <u>May include consumer authorization</u>. The disclosure document may include the required request for consumer authorization for procurement of a report for employment purposes.[157] If the disclosure notice and the consumer authorization are combined, certain identifying information may be included in the form; however, the notice may not include extraneous or contradictory information, such as a request for a consumer's waiver of his or her rights under the FCRA.[158]

C. <u>May include investigative consumer report disclosure</u>. If an employer intends to do an investigative consumer report on an employee or prospective employee, it must provide a disclosure under both this section and section 606.[159] An employer may include, with the disclosure required by section 604(b)(2)(A), a very limited notice of intent to procure an investigative consumer report required by section 606(a). However, the employer may not meet its obligation under section 606(b) to describe the nature and scope of the investigation in the same notice, because it would likely overshadow the disclosure required by this section.[160]

D. <u>May not be included in employment application</u>. The disclosure cannot be part of a printed employment application.[161]

## 4. TIMING AND EFFECTIVENESS OF DISCLOSURE AND AUTHORIZATION

The required disclosure may be made, and the authorization obtained, when the consumer applies for or commences employment.[162] An employer may use a one-time blanket disclosure, and obtain permission from applicants or current employees to procure consumer reports, at any time during the application process or during the employee's tenure.[163] The disclosure must state "clearly and conspicuously" that the employer intends for the disclosure and authorization to cover both the application for employment and, if the consumer is hired, any additional consumer reports obtained while the individual is an employee.[164] A valid disclosure and consent remain effective throughout the duration of employment.

EXHIBIT 3

**Federal Trade Commission**
**Protecting America's Consumers**

## UNITED STATES OF AMERICA
## FEDERAL TRADE COMMISSION
## WASHINGTON, D.C. 20580

Bureau of Consumer Protection

**June 12, 1998**

Richard W. Hauxwell, CEO
Accufax Div., Southwest
P.O. Box 35563
Tulsa, OK 74153-0563

Dear Mr. Hauxwell:

### Re: Sections 604 and 606 of the Fair Credit Reporting Act

This is in response to your letter asking for clarification of sections 604 and 606 of the Fair Credit Reporting Act ("FCRA"). You note that your company is a consumer reporting agency and that you are asking these questions on behalf of your clients. Your questions are addressed below in the order in which you presented them.

#### 1. Is it safe for us to assume, based on your opinion letter to Mr. Richard Steer, that we can combine the disclosure and release form, which includes applicant identifiers, in one form such as the enclosed sample?

Section 604(b) of the FCRA requires any employer who intends to obtain a consumer report for employment purposes to disclose this to the applicant or employee (in a document that consists solely of the disclosure) and to obtain the applicant or employee's written permission. As noted in the letter you cited (Steer, 10/21/97), it is our position that the disclosure notice and the authorization may be combined. If they are combined, identifying information (such as date of birth, Social Security number, driver's license number, and current and former addresses) may be included in the form. However, the form should not contain any extraneous information.

While we believe that you may combine the disclosure and authorization (and include identifying information) as you have in the draft form that you included with your letter, we note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. The inclusion of such a waiver in a disclosure form will violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist "solely" of the disclosure that a consumer report may be obtained for employment purposes. Moreover, it is a general principle of law that benefits provided to citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result. Brooklyn Savings Bank v. O'Neill, 324 U.S. 697 (1945). We note that no authorization for a waiver is contained in the FCRA; nor does the legislative history show that Congress intended that consumers should be able to sign away their legal rights under the Act.(1) Accordingly, employers and other users of information covered by the FCRA may not require consumers to waive their rights under the law.

#### 2. Our members would also like further clarification with regard to Section 606 as to when a Summary of Rights should be provided to the applicant. The language of the law is confusing.

Section 606 of the FCRA mandates that specific procedures be followed when an investi-gative consumer report is requested by an employer or other user who has a permissible purpose to obtain the report. First, Section 606(a)(1)(A) requires any person procuring an investigative consumer report to disclose this fact to the affected consumer not later than three days after the date on which the report was first requested. Second, Section 606(a)(1)(B) requires that the dis-closure include a statement of the consumer's right to obtain additional information and a copy of the summary of consumer rights prescribed by the Commission. Finally, Section 606(b) sets out the information that must be disclosed when the consumer requests a disclosure pursuant to Section 606(a)(1)(B).

The issue that you raise concerns exactly at what point the Commission's summary of rights must be sent. The language of Section 606(a)(1)(B) is not entirely clear in mandating that the disclosure "includes a statement informing the consumer of his right to request the additional disclosures provided for under subsection (b) of this section [the nature and scope of the inves-

tigation] and the written summary of the rights of the consumer prepared pursuant to section 609(c)." As you can see, the reference to the summary of rights comes after a reference to sub-part 606(b), but in a general discussion of the content of the sub-part 606(a)(1)(A) notice.

There are two possible interpretations of this ambiguous language: (1) that Congress in-tended for the summary to be sent with the initial Section 606(a)(1)(A) notice (that an investiga-tive consumer report has been or may be procured); or (2) that Congress intended that the sum-mary be provided with the subsequent Section 606(b) disclosure of the "nature and scope" of the investigation. The Commission's "Notice to Users of Consumer Reports: Obligations of Users Under the FCRA,"(2) states that the summary of rights should be provided with the Section 606(a) notice that an investigative consumer report has been or may be obtained. However, because the statutory language may be interpreted to require that the summary be sent with the subsequent Section 606(b) disclosure, it is unlikely that the Commission's staff would recommend any en-forcement action if the notice is sent with the Section 606(b) notice instead of the Section 606(a) notice.

***3. We would like your opinion regarding end-user organizations which procure criminal and other public record information for employment purposes directly from a federal, state, or county record repository. Would the government repository (agency) providing the information directly to the end-user organization ... requesting the information be considered a consumer reporting agency and subject to the same laws as a privately held consumer reporting agency?***

In general, information that is obtained by an employer directly from a federal, state or county record repository is not a "consumer report" because the repository (such as a courthouse or a state law enforcement agency) is not normally a "consumer reporting agency" and is itself not covered by the FCRA. The attached staff letters (Copple, 6/10/98; Goeke, 6/9/98) discuss this issue in more detail. Therefore, an employer who obtains information directly from a public record source is not subject to the FCRA as to that information. However, because of the fact that information in public record sources may be inaccurate or incomplete, we believe that em-ployers who use this type of information should voluntarily disclose to consumers the nature and substance of any public record information that they rely upon in taking any adverse action. If the information is, in fact, inaccurate or incomplete, the consumer may then take steps to correct the problem.

I hope that this information is helpful to you. The views that are expressed above are those of the Commission's staff and not the views of the Commission itself.

Sincerely,

William Haynes
Attorney
Division of Credit Practices

1. The FCRA is part of the Consumer Credit Protection Act, 15 U.S.C. § 1601. We note that the Truth In Lending Act, which is Subchapter I of the Consumer Credit Protection Act, does permit consumers to waive certain rights.

2. The Commission's notice may be found at 16 C.F.R. § 601, Appendix C (1997).

Last Modified: Friday, June 24, 2011

EXHIBIT 4



**Federal Trade Commission**
**Protecting America's Consumers**

---

### UNITED STATES OF AMERICA
### FEDERAL TRADE COMMISSION
### WASHINGTON, D.C. 20580

---

June 9, 1998

A. Michael Rosen, Esq.
Senior Vice President and General Counsel
Background America Inc.
1900 Church Street, S-400
Nashville, TN 37203

Re: Section 604(b), Section 605, and Section 607 of the Fair Credit Reporting Act

Dear Mr. Rosen:

This is in response to your letter requesting the views of the Commission's staff on issues raised by the amendments to the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, that went into effect on September 30, 1997. A number of the questions that you pose involve either legal or policy issues that are outside of the Commission staff's authority. The questions that we are able to respond to are summarized in italics below. The staff's views follow.

*1. Is a consumer reporting agency prohibited from issuing a consumer report in which reports of convictions for child molestation and rape that are older than seven years are included?*

Section 605(a)(5) of the FCRA specifies that no consumer reporting agency (CRA) may make a consumer report containing information about "[r]ecords of arrest, indictment, or conviction of crime which, from the date of disposition, release, or parole, antedate the report by more than seven years." Unfortunately, as presently written, the FCRA does not in most cases permit employers to obtain from a CRA information about a conviction that is more than seven years old. We note, however, that employers may obtain this type of information directly from a non-CRA source, such as the court in which the individual was convicted.

*2. How does the requirement that a copy of a consumer report used by an employer be provided to an applicant/employee before an adverse action is taken apply in a situation where the report contains information about a criminal conviction that will automatically disqualify the consumer?*

Section 604(b) requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action. Indeed, this is precisely the situation where it is important that the consumer be informed of the negative information in case the report is inaccurate or incomplete. If the report is in error, the employer may reconsider his or her tentative decision to take adverse action.

*3. May an employer provide copies of consumer reports to applicants as soon as the reports are received (i.e., before the employer reviews the report for possible negative information)?*

Nothing in the FCRA prohibits this. An employer may choose to send a copy of each consumer report obtained for employment purposes to the affected consumer as soon as it is prepared by the CRA or received by the employer. In this case, the pre-adverse action disclosure required by Section 604(b)(3) need only reference the fact that the report has already been provided to the consumer and include the summary of consumer rights prescribed by the Commission.

*4. May a consumer reporting agency fulfill the duties that the FCRA imposes upon its employer clients?*

An employer or any other user of consumer report information obtained from a CRA may have the CRA fulfill the user's ministerial obligations under the FCRA. For example, an employer may arrange for the CRA to provide any pre-adverse action

disclosures required by Section 604(b). However, the employer or other user remains responsible for any duty imposed by the FCRA and may be subject to liability if the duties are not performed by the CRA.

*5. Is a county courthouse that is required to make its records available to the public considered a CRA? Is a CRA that purchases information from such a public record source a reseller in relation to that source?*

We believe that a public entity such as a court which is required by law to make its records available for inspection and copying by the public should not be considered a CRA, and that information provided by the courthouse does not constitute a "consumer report." Because a CRA that obtains information from such a source is not "procur[ing] a consumer report" from the courthouse, the provisions of Section 607(e) that concern resellers of consumer reports do not ap-ply. I enclose a copy of a staff opinion letter that discusses these issues in detail (*Goeke*, 6/9/98).

*6. Is it mandatory for a CRA that obtains a consumer report from another CRA to provide to the selling CRA the name of the end-user of a consumer report as required by Section 607(e), even when the selling CRA does not request the information?*

Section 607(e) of the FCRA imposes special obligations upon entities that purchase consumer reports for resale from a CRA, including a requirement that the reseller must provide the selling CRA with the identity of the reseller's user. This obligation exists regardless of whether the selling CRA requests the information.

*7. Would a CRA/reseller be in compliance with Section 607(e) if it provides as the "name" of the end-user some description of the company (such as "national staffing company") rather than the actual name of the end-user?*

The reseller must provide the actual identity of the person or entity that is receiving the report. In the example you have provided, the CRA or reseller must provide the identity of the national staffing company. This is important because it enables a credit bureau or other CRA that is the source of the information to comply with Section 609(a)(3) of the FCRA, which requires CRAs to disclose to consumers the identities (trade name, where applicable) of all recipients of their reports for employment purposes for the previous two years.

*8. If a CRA (that is in the business of making investigative consumer reports) is hired by an employer to conduct only a public record search, is it required to comply with the FCRA?*

The CRA would have to comply with all relevant provisions of the FCRA. The fact that information is obtained by a CRA from public record sources has no effect upon the status of the information as "consumer report" information once it is obtained and sold by a CRA.

*9. Does a CRA need authorization from a consumer in an employment situation if the CRA is hired only to copy public records?*

Since the CRA would create a "consumer report" (the results of its inquiry), the information is covered by the FCRA and permission would be needed from the consumer in an employment situation. However, if the employer does not use a CRA but rather goes directly to a courthouse or other public record depository and checks the records, it would not be obtaining a "consumer report" under the FCRA and thus would not have to obtain the employee's permission.

*10. Is a CRA permitted to report what it learns when it checks specific statements on a consumer's employment application that refer to events which occurred more than seven years ago (such as a statement that the consumer graduated from college in 1965)?*

The CRA may verify the accuracy of application information so long as no provision of Section 605 prohibits this. I am enclosing a copy of a staff opinion letter that discusses this specific issue in greater detail (*Seham*, 4/17/98). The date that a consumer graduated from college is not an "adverse item of information" covered by Section 605. Accordingly, the CRA is permitted to report this information even if the consumer graduated more than seven years before the CRA reports it.

I hope that this information will be helpful to you. The views that are expressed herein are those of the Commission's staff and do not necessarily reflect the views of the Commission or any individual Commissioner.

Sincerely,

William Haynes
Attorney
Division of Credit Practices

Enclosure

---

Last Modified: Friday, June 24, 2011