UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

<table>
<tr><td>JAMES CUNHA,<br><br>            Plaintiff,<br><br>    v.<br><br>INTELLICHECK, LLC, et al.,<br><br>            Defendants.</td><td>Case No.17-cv-00597-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS OR STRIKE**<br><br>Re: ECF Nos. 24, 40</td></tr>
</table>

Defendants Chico Produce, Inc. d/b/a/ Pro Pacific Fresh, Inc. ("ProPacific") and IntelliCheck, LLC ("IntelliCheck") move to dismiss or strike portions of Plaintiff James Cunha's first amended complaint ("FAC").  ECF Nos. 24, 40.  The Court will grant the motions in part and deny them in part.

## I.       BACKGROUND

This putative class action arises out of an employment background check that IntelliCheck performed on Cunha when he applied to be a produce delivery driver for ProPacific on April 30, 2016.  FAC, ECF No. 21 ¶ 8.  On his first day of employment, Cunha was required to sign a number of forms, including a "Disclosure and Authorization for Consumer Reports" form ("Disclosure Form").  Id. ¶¶ 8, 10.  After Cunha signed the Disclosure Form, IntelliCheck prepared a consumer report on Cunha that included information about misdemeanor convictions that occurred more than seven years prior to the date of the consumer report and information about arrests that did not result in a conviction.  Id. ¶ 15.  As a result of the information contained in the consumer report, ProPacific terminated Cunha on May 20, 2016.  Id. ¶ 15.

Cunha alleges that ProPacific and IntelliCheck violated the Fair Credit Reporting Act ("FCRA") and California's Investigative Consumer Reporting Agencies Act ("ICRAA") by: (1) failing to make the requisite disclosures prior to obtaining a consumer report on Cunha; (2)

United States District Court
Northern District of California

preparing a consumer report that contained information older than seven years and terminating Cunha on that basis; and (3) failing to provide a copy of the consumer report before terminating Cunha based on information contained therein.  Id. ¶¶ 21-23, 51, 92.  With respect to disclosures, Cunha alleges that ProPacific's documents failed to disclose that Cunha had the right to obtain a copy of the report, that Cunha had the right to view the consumer report, and a statement summarizing the provisions of California Civil Code § 1786.22.  Id. ¶¶ 10, 26.  Cunha further alleges that ProPacific willfully violated the FCRA and the ICRAA by inserting a liability waiver in its Disclosure Form.  Id. ¶ 13.  Additionally, Cunha alleges that the Disclosure Form violated the FCRA and the ICRAA because it contained "extraneous information" (e.g. an authorization to obtain a physical examination and drug and alcohol testing) not solely related to the disclosure. Id. ¶¶ 14, 59.

The FAC asserts the following seven causes of action:

(1) FCRA claim under §§ 1681c(a)(2) and 1681c(a)(5) against IntelliCheck;

(2) FCRA claim under §§ 1681b(b)(2)(A) and 1681d against ProPacific;

(3) FCRA claim under §§ 1681b(b)(3)(A) and 1681m against ProPacific;

(4) FCRA claim under § 1681b(b)(2)(A)(ii) against ProPacific;

(5) ICRAA claim under § 1786.18 against IntelliCheck;

(6) ICRAA claim under § 1786, et seq. against ProPacific; and

(7) California Unfair Competition Law ("UCL") claim under California Business & Professions Code § 17200, et seq. against both Defendants.

Id. ¶¶ 46-114.  Based on these alleged violations, Cunha and putative class members seek statutory damages under the FCRA, actual damages under the ICRAA, and injunctive relief and restitutionary disgorgement under the UCL.  Id. ¶ 24.

On March 16, 2017, ProPacific moved to dismiss or strike Cunha's second, fourth, sixth, and seventh causes of action.  ECF No. 24.  On April 14, 2017, IntelliCheck moved to dismiss Cunha's first, fifth, and seventh causes of action.  ECF No. 40.  For the foregoing reasons, the Court grants in part and denies in part the motions.

United States District Court
Northern District of California

## II.     REQUESTS FOR JUDICIAL NOTICE

Before turning to the merits of the motions to dismiss, the Court resolves the parties' requests for judicial notice.

"As a general rule, we may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  United States v. Corinthian Colleges, 655 F.3d 984, 998–99 (9th Cir. 2011) (internal quotation marks and citations omitted).  However, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The Court "may take judicial notice on its own; or [] must take judicial notice if a party requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c).

Cunha requests that the Court take judicial notice of the following documents: (1) First Amended Complaint and Demand for Jury Trial in Sarmad Syed, et al. v. M-I LLC, et al, Case No. 14-CV-00742-WBS-BAM, ECF No. 36 (E.D. Cal.); and (2) Order filed in Gabriel Felix Moran v. The Screening Pros, LLC, Case No. 12-57246 (9th Cir.).  ECF No. 34–1.  Defendants do not oppose this request.

IntelliCheck requests that the Court take judicial notice of the following documents: (1) Order filed in Marchioli v. Pre-Employ.com, Inc., Case No. 16-CV-02305-JGB-DTB (C.D. Cal., Jan. 25, 2017); and (2) Order filed in John Doe v. Sterling Infosystems, Inc., Case No. 15-CV-04770-RGK-AJW (C.D. Cal., Dec. 21, 2015).  ECF Nos. 41, 51.  Cunha does not oppose this request.

The Court grants both requests for judicial notice because the documents are public court filings.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record").

The Court also takes judicial notice of Cunha's consumer report from May 2016 under the incorporation by reference doctrine.  See Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) ("A court may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached the [plaintiff's] pleading.")

3

1   (internal quotation marks omitted) (quoting In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970,

2   986 (9th Cir.1999)).  Cunha references his May 2016 consumer report throughout his complaint,

3   and IntelliCheck and Cunha both attached this document to their briefing.  See ECF No. 40–1, Ex.

4   A; ECF No. 48–2, Ex. 1.

5   ### III.   MOTIONS TO DISMISS OR STRIKE

6   ### A.   Legal Standards

7       A complaint must contain "a short and plain statement of the claim showing that the

8   pleader is entitled to relief" which gives "the defendant fair notice of what the . . . claim is and the

9   grounds upon which it rests."  Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544,

10  555 (2007) (internal quotation marks omitted).  "To survive a motion to dismiss, a complaint must

11  contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

12  face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim

13  has facial plausibility when the pleaded factual content allows the court to draw the reasonable

14  inference that the defendant is liable for the misconduct alleged."  Id. at 663.

15      Under Rule 12(f) of the Federal Rules of Civil Procedure, the Court "may strike from a

16  pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

17  The function of a motion to strike pursuant to Rule 12(f) is "to avoid the expenditure of time and

18  money that must arise from litigating spurious issues by dispensing with those issues prior to

19  trial."  Whittlestone, Inc. v. Handi–Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (citation omitted).

20  ### B.   Claim One

21      Cunha does not oppose IntelliCheck's motion to dismiss his claim under Section 1681c of

22  the FCRA.  ECF No. 40 at 11-13; ECF No. 48 at 9.  Therefore, the Court grants the motion to

23  dismiss this claim with prejudice.

24  ### C.   Claim Two

25      ProPacific moves to dismiss or strike portions of Cunha's second cause of action on the

26  ground that he has failed to state a claim under Sections 1681d and 1681g(c) of the FCRA because

27  he has not alleged sufficient facts to demonstrate that the information contained in his consumer

United States District Court
Northern District of California

United States District Court
Northern District of California

report was obtained through personal interviews.  ECF No. 24 at 8-9.[1]  The Court agrees.

Cunha alleges that ProPacific violated Section 1681d(a) "by failing to provide a disclosure concerning the nature and scope of the investigation for the consumer report and by failing to provide a summary of the consumer's rights under 15 U.S.C. § 1681g(c)."  ECF No. 21, ¶ 62.  However, Section 1681d's disclosure requirements only apply to "investigative consumer reports," which the statute defines as "a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is *obtained through personal interviews* with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information."  See 15 U.S.C. §§ 1681d, 1681a(e) (emphasis added).  If the report qualifies as an "investigative consumer report," the entity that procures the report must provide the consumer with a written summary of their rights pursuant to Section 1681g(c).  Id. § 1681d(a)(1).

The FAC does not allege any facts suggesting that Cunha's report contained information that was "obtained through personal interviews with neighbors, friends, or associates" such that it was an "investigative consumer report" subject to Section 1681d.  Id.  Therefore, the Court dismisses the portions of Cunha's second cause of action that relate to Sections 1681d and 1681g of the FCRA because he has failed to state a claim under that provision.

### D.    Claim Four

Next, ProPacific moves to dismiss Cunha's claim under Section 1681b(b)(2)(A)(ii) of the FCRA.  ECF No. 24 at 10-11.

Section 1681b(b)(2)(A) of the FCRA provides:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--
>
> > **(i)** a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is

---

[1] Although Cunha's second claim actually combines two distinct claims under the FCRA—one under Section 1681d and one under Section 1681b(b)(2)(A)—ProPacific does not move to dismiss Cunha's claim under Section 1681b(b)(2)(A).  ECF No. 35 at 3.

procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

**(ii)** the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A).

In his second claim for relief, Cunha generally asserts a cause of action under Section 1681b(b)(2)(A) that presumably encompasses both subsection (i) and subsection (ii).  ECF No. 21 ¶¶ 56-71.  In his fourth claim for relief, Cunha asserts a cause of action solely under subsection (ii).  Id. ¶¶ 84-89.

ProPacific moves to dismiss the fourth claim for relief on two grounds: (1) Cunha has failed to allege facts sufficient to establish willfulness; and (2) Cunha alleges that he signed ProPacific's authorization form prior to the background check, which directly refutes a claim under subsection (ii).  ECF No. 24 at 10-11.

The Court agrees that Cunha has failed to state a claim under subsection (ii), and accordingly grants the motion to dismiss his fourth claim for relief.  Cunha repeatedly alleges in the FAC that he signed an authorization form on his first day of employment.  ECF No. 21 ¶¶ 8-10, 15.  These allegations establish that Cunha gave written authorization for ProPacific to procure a consumer report on him, and therefore necessarily defeat Cunha's claim under Section 1681b(b)(2)(A)(ii).

However, the Court notes for the sake of clarity that Cunha has stated a claim for a willful violation of subsection (i) in his second claim for relief.  Section 1681b(b)(2)(A)(i) requires that the document "consists solely of the disclosure."  15 U.S.C. § 1681b(b)(2)(A)(i).  The Ninth Circuit recently held that "the FCRA unambiguously bars a prospective employer from including a liability waiver on a disclosure document provided a job applicant pursuant to Section 1681b(b)(2)(A)."  Syed v. M-I, LLC, 853 F.3d 492, 503 (9th Cir. 2017).  And, because subsection (i) is "not subject to a range of plausible interpretations," an employer who includes a liability waiver on a disclosure document willfully violates that provision "as a matter of law," regardless of their subjective interpretation of the statute.  See id. at 505.  Like the plaintiff in Syed, Cunha

United States District Court
Northern District of California

alleges that ProPacific included a liability waiver in its Disclosure Form.  See ECF No. 21 ¶¶ 10, 13, 14 (alleging that "the Disclosure Statement provided to [him] contained a waiver, and therefore, the Disclosure Statement was not provided in a separate document consisting solely of the disclosure, which violates [] the FCRA …").  Therefore, the Court allows Cunha's second claim for relief to proceed.

### E.      Claims Five and Six

ProPacific and IntelliCheck both move to dismiss Cunha's ICRAA claims on the following grounds: (1) Cunha cannot simultaneously bring claims under the FCRA and ICRAA that stem from the same alleged act or omission;[2] and (2) the ICRAA is unconstitutionally vague.  ECF No. 24 at 3, 11-14; ECF No. 40 at 13-18.  ProPacific also argues that Cunha has failed to allege sufficient facts to demonstrate a willful violation of the ICRAA.  Id.  All of these arguments fail.

#### 1.      Cunha May Bring Simultaneous FCRA and ICRAA Claims

Courts have rejected Defendants' contention that a plaintiff cannot bring simultaneous FCRA and ICRAA claims based on the same act or omission, and this Court will do the same.

Defendants rely on Section 1786.52 of the ICRAA, which states: "Any investigative consumer reporting agency or user of information against whom an action brought pursuant to Section 1681n or 1681o of [the FCRA] is pending shall not be subject to suit for the same act or omission under Section 1786.50."  Cal. Civ. Code § 1786.52(a).

But a California court of appeal has interpreted an identical provision in the Consumer Credit Reporting Agencies Act ("CCRAA") to mean that a plaintiff cannot revive a defeated FCRA claim by subsequently bringing a CCRAA claim based on the same act or omission—it does not mean that a plaintiff may not bring a FCRA claim and a CCRAA claim in the same action.  Section 1785.34 of the CCRAA contains almost identical language as Section 1786.52 of the ICRAA: "Any consumer credit reporting agency or user of information against whom an action brought pursuant to Section 1681n or 1681*o* of Title 15 of the United States Code is

---

[2] Because the Court dismissed the FCRA claim against IntelliCheck, IntelliCheck's motion to dismiss on this ground is now moot.  The Court nonetheless addresses the argument because Cunha still asserts a FCRA claim against ProPacific and the Court grants Cunha leave to amend to add a new FCRA claim against IntelliCheck.

United States District Court
Northern District of California

pending shall not be subject to suit for the same act or omission under Section 1785.31." Cal. Civ. Code § 1785.34. And a California court of appeal has held that Section 1785.34 "is intended to . . . apply to a circumstance where there is a prior action pending under the federal law, and someone brings a later action under the state law . . . . [T]hat's the plain meaning of the statute." Cisneros v. U.D. Registry, Inc., 39 Cal. App. 4th 548, 581 (Cal. Ct. App. 1995) (internal quotation marks omitted). Based on the Cisneros decision, several courts in this district have denied motions to dismiss simultaneous CCRAA and FCRA claims in the same complaint. See, e.g., Ramirez v. Trans Union, LLC, 899 F. Supp. 2d 941, 944–45 (N.D. Cal. 2012); Guillen v. Bank of Am. Corp., No. 5:10-CV-05825 EJD, 2011 WL 4071996, at *4 (N.D. Cal. Aug. 31, 2011). Although Cisneros dealt with the CCRAA, and not the ICRAA, Defendants have provided no persuasive reason to interpret identical text differently.[3] See Lewis v. Sw. Airlines Co., No. 3:16-CV-1538-M, 2017 WL 879225, at *4 (N.D. Tex. Mar. 6, 2017) ("In the absence of authority suggesting that the California Supreme Court would interpret the [ICRAA] differently, the Court declines to find that Plaintiff's [ICRAA] claims are barred as a matter of law.").

For this reason, the Court rejects Defendants' argument that Cunha is barred from asserting both FCRA and ICRAA claims in the same complaint.[4]

---

[3] IntelliCheck points to a single case in which a court has held that Section 1786.52 of the ICRAA bars simultaneous ICRAA and FCRA claims. ECF No. 40 at 17 (relying on Coleman v. Koh'ls Dep't Stores, Inc., No 15-cv-02588-JCS, 2015 WL 5782352, at *7, n. 7 (N.D. Cal. Oct. 5, 2015). The Coleman court dismissed plaintiffs' ICRAA claims with leave to amend because the allegations in the complaint suggested that the defendant's forms complied with ICRAA. Id. at *7. However, the court stated in a footnote that, for purposes of amendment, Section 1786.52 barred plaintiffs from asserting claims under both the ICRAA and FCRA. Id. at *7, n. 7. In doing so, the court was "mindful of a contrary holding with respect to an analogous election remedies provision in the CCRAA," but nonetheless distinguished the weight of authority solely on the ground that those cases "dealt with a different statutory provision than the one here." Id. Because the Coleman court failed to explain why identical statutory language should be interpreted differently simply because it appears in the ICRAA, and not the CCRAA, the Court does not find this reasoning persuasive.

[4] The Court also rejects IntelliCheck's related argument that the ICRAA claims should be dismissed as duplicative of the FCRA claims. ECF No. 40 at 18. IntelliCheck relies on cases in which district courts dismissed claims because they were identical to claims asserted in *separate* actions brought by the same plaintiffs. See M.M. v. Lafayette Sch. Dist., 681 F.3d 1082, 1091 (9th Cir. 2012); Bell v. ReconTrust Co., 587 F. App'x 402, 405 (9th Cir. 2014). That is not the case here.

### 2.      The ICRAA is Not Unconstitutionally Vague

Statutes are presumed to be constitutional and "must be upheld unless their unconstitutionality clearly, positively and unmistakably appears." Lockheed Aircraft Corp. v. Sup. Ct. of Los Angeles Cty., 28 Cal. 2d 481, 484 (1946). A statute is unconstitutionally vague in violation of due process if it describes the prohibited conduct "in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Connally v. General Const. Co., 269 U.S. 385, 391 (1926). Statutes that relate to the "economic regulation" of businesses are "subject to a less strict vagueness test because [their] subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498 (1982).

### a.      Statutory Scheme

California has enacted two statutes that govern consumer reports. The ICRAA covers reports that contain information about "a consumer's character, general reputation, personal characteristics, or mode of living," and explicitly excludes reports that are "limited to specific factual information relating to a consumer's credit record …" Cal. Civ. Code § 1786.2(c). Meanwhile, the CCRAA covers reports containing "information . . . bearing on a consumer's credit worthiness, credit standing, or credit capacity," and explicitly excludes "any report containing information solely on a consumer's character, general reputation, personal characteristics, or mode of living . . ." Cal. Civ. Code § 1785.3(c). "The ICRAA imposes stricter duties and more severe penalties on persons compiling or requesting [] reports containing character information than the CCRAA does on those compiling or requesting [] reports containing creditworthiness information." Ortiz v. Lyon Mgmt. Grp., Inc., 157 Cal. App. 4th 604, 614 (2007). The two statutes work together to protect consumers from unfair and harmful reporting tactics. See Cal. Civ. Code §§ 1785.1(b), 1786(b) (declaring that both ICRAA and CCRAA address "a need to insure that [investigative consumer and consumer credit] reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.").

9

### b.    The *Ortiz* Decision

Based on the statutory framework outlined above, Defendants argue that the ICRAA is void for vagueness as applied to the conduct alleged here because Cunha's report contained information related to Plaintiff's criminal background history, which could bear on both his character and his creditworthiness, thus potentially implicating both the ICRAA and the CCRAA. ECF No. 40 at 13-16.  Accordingly, Defendants argue, they "can only guess as to whether the ICRAA or the CCRAA applies" and they "did not have sufficient notice that the ICRAA covered Plaintiff's report."  Id. at 15.

To support this argument, the Defendants rely on a line of cases stemming from Ortiz v. Lyon Mgmt. Grp., 157 Cal. App. 4th 604, 615-19 (2007).  In Ortiz, a panel of the California Court of Appeal held that the ICRAA was unconstitutionally vague because its regulation of reports containing information on a consumer's character overlapped with the CCRAA's provisions governing reports containing information on a consumer's creditworthiness.  Id. at 612.  The court held that, "[w]hile [the ICRAA and the CCRAA] require a distinction between creditworthiness and character information, the line between the two is not readily apparent" because an individual's creditworthiness also bears on their character, and vice versa.  Ortiz, 157 Cal. App.4th at 615.  The court reasoned that "the Legislature recognized the inherent overlap between creditworthiness information and character information" because "each statute expressly excludes from its ambit any reports containing only information covered by the other."  Id. at 615-16.  The court noted that previously, despite this overlap, credit reporting agencies and credit report users could determine whether the ICRAA applied because the ICRAA defined an investigative consumer report "not just by the *type* of information it contains (i.e., character information), but also by the *means* by which the information was obtained (i.e., through personal interviews)."  Id. at 616-17 (emphasis in original).  But that changed in 1998 when the Legislature amended the ICRAA to replace "through personal interviews" with "through any means."  Id. at 617. According to the Ortiz court, the 1998 amendment "exposed an underlying uncertainty in the statute": how to "categorize information that speaks to both creditworthiness and character, but which is not obtained through personal interviews."  Id. at 617.  Because the report at issue in

United States District Court
Northern District of California

10

United States District Court
Northern District of California

1    <u>Ortiz</u> contained unlawful detainer information that "can be categorized under both statutes," the

2    court concluded that it was "left with no rational basis to determine whether unlawful detainer

3    information constitutes creditworthiness information subject to the CCRAA or character

4    information subject to the ICRAA."  <u>Id.</u> at 617-19.  The court accordingly held that "[t]he 1998

5    amendment rendered the ICRAA unconstitutional as applied to tenant screening reports containing

6    unlawful detainer information."  <u>Id.</u> at 619.

7         Several courts have since relied on <u>Ortiz</u> to hold that the ICRAA is void for vagueness as

8    applied to credit reports that contain criminal background information.  <u>See</u> <u>Moran v. Screening</u>

9    <u>Pros, LLC</u>, No. 2:12-CV-05808-SVW-AG, 2012 WL 10655744, at *5-*7 (C.D. Cal. Sept. 28,

10   2012), <u>on reconsideration in part,</u> No. 2:12-CV-05808-SVW, 2012 WL 10655745 (C.D. Cal. Nov.

11   20, 2012) (dismissing plaintiff's ICRAA claims because "the criminal information in the instant

12   Report clearly subjects it to the CCRAA as well as the ICRAA");[5] <u>Roe v. LexisNexis Risk Sols.</u>

13   <u>Inc</u>, No. CV 12-6284 GAF (EX), 2013 WL 11246904, at *3-*6 (C.D. Cal. Mar. 19, 2013) (holding

14   that the ICRAA was unconstitutionally vague as applied to an employment screening report that

15   contained criminal background information because "criminal background information fits both

16   into the category of character evidence under the ICRAA and in the category of creditworthiness

17   under the CCRAA"); <u>Trujillo v. First Am. Registry, Inc.</u>, 157 Cal. App. 4th 628, 640 (2007)

18   ("[T]he ICRAA is unconstitutionally vague because persons of reasonable intelligence cannot

19   determine whether unlawful detainer information is character information subject to the ICRAA or

20   creditworthiness information subject to the CCRAA.").

21        More recently, however, a different panel of the California Court of Appeal held that

22   "<u>Ortiz</u> was wrongly decided because it failed to consider case law governing the interpretation of

23   overlapping statutes."  <u>Connor v. First Student, Inc.</u>, 191 Cal. Rptr. 3d 404, 408, <u>as modified</u> (Aug.

24   14, 2015), <u>review granted and opinion superseded sub nom.</u> Connor v. First Student, 360 P.3d

25

26

27   [5] <u>Moran</u> is currently on appeal to the Ninth Circuit, which has stayed the case pending a decision
     from the California Supreme Court in <u>Connor v. First Student</u>, 239 Cal. App. 4th 526 (2015)
28   (review granted by the California Supreme Court on November 24, 2015).  <u>See</u> <u>Gabriel Moran v.</u>
     <u>The Screening Pros</u>, Case No. 12-57246, ECF No. 83 (January 13, 2016).

1022 (Cal. 2015).[6]  The Connor court reiterated the well-established rule that courts must give

effect to overlapping statutes if they are capable of coexisting.  Id. at 412-13.  The court explained

that the ICRAA and the CCRAA were capable of coexistence because "[a]n agency that furnishes

a report containing both creditworthiness information and character information, and the person

who procures or causes that report to be made, can comply with each act without violating the

other." Id. at 413.  The court also noted that, "despite the overlap between the CCRAA and the

ICRAA after the 1998 amendment, there remain certain consumer reports that are governed

exclusively by the ICRAA [] or by the CCRAA …" Id.  As a result, the court concluded that "we

can—and must—give effect to both acts," and "[t]he fact that the two acts overlap in their

coverage of some consumer reports does not render the acts unconstitutionally vague to the extent

of that overlap." Id. at 412, 413.  The California Supreme Court granted review of Connor on

November 24, 2015.  Connor v. First Student, 360 P.3d 1022 (Cal. 2015).

### c.    Analysis

Absent guidance from the California Supreme Court, this Court must "follow decisions of

the California Court of Appeal unless there is convincing evidence that the California Supreme

Court would hold otherwise." Carvalho, 629 F.3d at 889.  Here, there are conflicting decisions

from that court.  While Defendants see the California Supreme Court's decision to review Connor

as foretelling its reversal, see, e.g., ECF No. 40 at 8 ("[t]here is ample evidence that the California

Supreme Court will hold that Connor was wrongly decided"), it seems more likely that the

Supreme Court was merely reacting to a split of authority among the courts of appeal.  Given the

overwhelming case law discussed below – which directly contradicts the decision in Ortiz, and

which the Ortiz court failed to consider – the Court concludes that there is convincing evidence

---

[6] IntelliCheck argues that Cunha and this Court cannot cite to or rely on Connor because the
California Supreme Court de-published the Connor opinion when it granted review, citing to
California Rule of Court 8.1115 for support. ECF No. 40 at 15.  Whatever the rule in state court
might be, in this federal district court unpublished decisions may be considered in determining the
nature of California law.  See Employers Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214,
1220 n.8 (9th Cir. 2003).  Because "[o]ur duty as a federal court in this case is to ascertain and
apply the existing California law," and because the California Supreme Court has not yet spoken
to this issue, the Court will rely on the Connor decision for its potential persuasive value.
Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 889 (9th Cir. 2010).

United States District Court
Northern District of California

that the California Supreme Court would overrule Ortiz and affirm Connor. Therefore, the Court declines to follow Ortiz.

The California Court of Appeal's decision in Ortiz is inconsistent with California Supreme Court and United States Supreme Court precedent regarding the interpretation of overlapping statutes.[7] "A court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistencies in them, and construe them to give force and effect to all of their provisions." Pac. Palisades Bowl Mobile Estates, LLC v. City of Los Angeles, 55 Cal. 4th 783, 805 (2012) (internal citations and quotation marks omitted). See also Connecticut Nat. Bank v. Germain, 503 U.S. 249, 253 (1992) (same). "Absent an express declaration of legislative intent, we will find an implied repeal only when there is no rational basis for harmonizing two potentially conflicting statutes, and the statutes are irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." Palisades, 55 Cal. 4th at 805 (internal citations and quotation marks omitted).

Courts have applied this basic principle of statutory interpretation in numerous contexts. For example, courts have held that, "[s]o long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied." United States v. Batchelder, 442 U.S. 114, 118-23 (1979) ("That this particular conduct may violate both Titles does not detract from the notice afforded by each."). See also, e.g., Abramski v. United States, 134 S. Ct. 2259, 2272 (2014) ("[T]he mere potential for some transactions to run afoul of both prohibitions gives no cause to read § 922(d) as limiting § 922(a)(6) (or vice versa)."). Likewise, courts have interpreted overlapping environmental statutes as complementary where possible. See, e.g., Palisades, 55 Cal. 4th at 805 ("Government Code section 66427.5 can be construed to require a hearing devoted exclusively to the issue of economic displacement of tenants *in addition* to the procedures and hearings required by other state laws. Such a construction is consistent with the general application of the Subdivision Map Act *and the*

---

[7] Both federal and state law are relevant here because the scope of the void for vagueness doctrine under California law is the same as under federal law. See People v. Morgan, 42 Cal. 4th 593, 605 (2007).

Coastal Act and the Mello Act to developments within the coastal zone, harmonizing the provisions of all three acts.") (emphasis in original); <u>Nat. Res. Def. Council, Inc. v. Arcata Nat. Corp.</u>, 59 Cal. App. 3d 959, 965 (Ct. App. 1976) ("We entertain no doubt that the two acts in question are not in conflict, but rather supplement each other and, therefore, must be harmonized.").  The same is true in the labor context.  <u>See</u>, <u>e.g.</u>, <u>Powell v. U.S. Cartridge Co.</u>, 339 U.S. 497, 519–20 (1950) ("The applicability of the Walsh-Healey Act to the contracts before us therefore does not preclude the application of the Fair Labor Standards Act to employees under the same contracts. We find the Acts to be mutually supplementary.").  And the list goes on.  <u>See</u>, <u>e.g.</u>, <u>J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.</u>, 534 U.S. 124, 142 (2001) (holding that "there is no positive repugnancy between the issuance of utility patents for plants and [Plant Variety Protection] coverage for plants" because the two statutes had "different requirements and protections" and "the overlap is only partial"); <u>Connecticut Nat. Bank v. Germain</u>, 503 U.S. 249, 253 (1992) (overlapping jurisdictional statutes "do not pose an either-or proposition" because "each section confers jurisdiction over cases that the other section does not reach"); <u>Sanchez v. Swissport, Inc.</u>, 213 Cal. App. 4th 1331, 1338 (2013) (overlapping statutes governing pregnancy-related disability leave because the Pregnancy Disability Leave Law's "remedies *augment*, rather than supplant, those set forth elsewhere in the FEHA") (emphasis in original).

The <u>Ortiz</u> court ran afoul of this harmonization principle when it invalidated the ICCRA on the ground that "the statutory scheme fails to set forth truly distinct categories." <u>Ortiz</u>, 157 Cal. App. 4th at 612-13 (describing the issue as a "categorization challenge").  The court identified the "uncertainty" in the statute as the inability "to categorize information that speaks to both creditworthiness and character, but which is not obtained through personal interviews." <u>Id.</u> at 617. But this holding assumes that a credit report must fall under either the ICRAA or the CCRAA, but not both. See <u>id.</u> ("The information is now subject to both statutes, though the statutory scheme disallows this.").  That assumption was true prior to 1998 because the ICCRA required that information be obtained through personal interviews, whereas the CCRAA expressly excluded information obtained through personal interviews.  <u>See</u> 1994 Cal. Legis. Serv. Ch. 1010 (S.B. 2053) (defining an "investigative consumer report" under the ICCRA to information "obtained

14

through personal interviews" and defining a "consumer credit report" under the CCRAA to "not include . . . information . . . which is obtained through personal interviews"). But the Legislature's removal of the ICCRA's personal interview requirement in 1998 created partial overlap with the CCRAA. "Thus, after the amendment, consumer reports that include character information obtained from a source other than personal interviews continue to be governed by the CCRAA, as long as the reports contain information bearing on a consumer's credit worthiness, credit standing, or credit capacity. But they *also* are governed by the ICRAA under its clear and unambiguous language." Connor, 191 Cal. Rptr. 3d at 412 (internal quotation marks and citations omitted) (emphasis in original). Because the ICCRA and the CCRAA can be interpreted to coexist in this way, their partial overlap does not render the ICRAA void for vagueness. Connecticut Nat. Bank, 503 U.S. at 253 ("Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, a court must give effect to both.") (internal citations omitted) (quoting Wood v. United States, 16 Pet. 342, 363 (1842)).

Nor does this interpretation of the statutes "render one or the other wholly superfluous." Id. In some cases, the creation of a consumer report will trigger either the ICRAA or the CCRAA, but not both. For example, if a report is "limited to specific factual information relating to a consumer's credit record," only the CCRAA's less stringent requirements will apply. Cal. Civ. Code § 1786.2(c). Conversely, if a report is limited to character information obtained through personal interviews, the ICRAA's more stringent requirements will apply. In sum, each statute continues to reach conduct that the other statute does not reach.

But where, as here, a consumer report contains character and credit information that was not obtained through personal interviews, *both* the ICRAA and the CCRAA are triggered, and an employer or credit reporting agency must simply comply with the ICRAA's more stringent requirements, which will also satisfy the CCRAA. See Powell, 339 U.S. at 519 ("There has been no presentation of instances, however, where compliance with one Act makes it impossible to comply with the other. There has been no demonstration of the impossibility of determining, in each instance, the respective wage requirements under each Act and then applying the higher requirement as satisfying both."). Because Cunha's consumer report included information about

15

his "credit worthiness, credit standing, credit capacity, character, general reputation, or mode of living," it fell within the scope of both statutes, and the Defendants were required to comply with the ICRAA's more stringent requirements.  ECF No. 21, ¶ 25.

Aside from this partial overlap between the two statutes, which does not render the ICRAA unconstitutionally vague for the reasons outlined above, Defendants otherwise fail to explain how the ICRAA fails to provide sufficient notice of the conduct it prohibits.  The Court therefore denies the motion to dismiss on this ground.

### 3.   Willfulness

Cunha has adequately alleged a willful violation of the ICRAA.  He alleges that ProPacific violated the ICRAA by failing to provide a summary of the consumer's rights in the disclosure document, including extraneous documents in the disclosure document, and conducting investigative consumer reports for an improper purpose.  ECF No. 21 ¶¶ 97–107.

Like its federal counterpart, Section 1786.16 of the ICRAA provides that a person who procures an investigative consumer report must "provide[] a clear and conspicuous disclosure in writing to the consumer at any time before the report is procured or caused to be made *in a document that consists solely of the disclosure*."  Cal. Civil Code § 1786.16(a)(2)(B) (emphasis added).  As the Ninth Circuit explained in <u>Syed</u>, this language "unambiguously bars a prospective employer from including a liability waiver on a disclosure document provided a job applicant" and is "not subject to a range of plausible interpretations."  <u>Syed</u>, 853 F.3d at 503–05.  Here, Cunha alleges that the Disclosure Form contained a liability waiver and "authorization to obtain a physical examination and conduct drug and alcohol tests and other matters."  ECF No. 21 ¶¶ 10, 13, 102.  Because this conduct was clearly unlawful under Section 1786.16 of the ICRAA, Cunha has adequately alleged willfulness.

The Court notes that Cunha also makes additional allegations regarding willfulness, for example that "ProPacific is a corporation with access to legal advice through outside employment counsel" and that "ProPacific's Disclosure Statement also references this stand-alone document requirement . . ."  ECF No. 21 ¶¶ 68, 77.  These allegations further suggest willfulness.

The Court denies the motions to dismiss claims five and six.

16

United States District Court
Northern District of California

### F.   Claim Seven

Defendants move to dismiss Cunha's UCL claim on the following three grounds: (1) Cunha lacks standing to seek injunctive relief under the UCL; (2) Cunha's UCL claim is federally preempted by the FCRA; (3) Cunha has not demonstrated that he lacks an adequate remedy at law, so he is not entitled to equitable relief under the UCL; and (4) Cunha has failed to state a claim under the UCL.  ECF No. 24 at 14–18; ECF No. 40 at at 18-21.

The Court concludes that Cunha lacks constitutional standing to seek injunctive relief, and accordingly dismisses his seventh claim for relief.

"[I]n federal court, a plaintiff must still demonstrate Article III standing to seek injunctive relief, even if she would otherwise have standing in state court."  Freeman v. ABC Legal Servs., Inc., 877 F. Supp. 2d 919, 924 (N.D. Cal. 2012).  "[A] plaintiff whose cause of action [under the UCL] is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury to establish Article III standing."  Id. (quoting Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1022 (9th Cir. 2004)).[8]

In turn, to have standing under Article III, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) (Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)).  "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."  Id.  "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element."  Id. (quoting Warth v. Seldin, 422 U.S. 490, 518 (1975)).

A plaintiff who alleges past wrongs and seeks prospective injunctive relief must also "establish a real and immediate threat" that he or she will suffer the same injury in the future.  See City of Los Angeles v. Lyons, 461 U.S. 95, 101-06 (1983) ("[P]ast wrongs do not in themselves

---

[8] For this reason, Cunha's reliance on cases that address statutory standing under the UCL is misplaced for the purposes of this motion.

1  amount to that real and immediate threat of injury necessary to make out a case or controversy.").

2  Put differently, the plaintiff must show "a sufficient likelihood that he will again be wronged in a

3  similar way." Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007) (quoting

4  Lyons, 461 U.S. at 111). In a class action, a plaintiff "cannot rely on the prospect of future injury

5  to unnamed class members if they cannot establish they have standing to seek injunctive relief."

6  Castagnola v. Hewlett-Packard Co., No. C 11-05772 JSW, 2012 WL 2159385, at *5 (N.D. Cal.

7  June 13, 2012).

8  As a former employee who alleges a past wrong—namely, an unlawful background check

9  that caused his termination—Cunha does not have standing to seek prospective injunctive relief

10  because he has failed to show a sufficient likelihood that he will personally be harmed by

11  ProPacific's and IntelliCheck's practices again in the future. See Walsh v. Nevada Dep't of

12  Human Res., 471 F.3d 1033, 1037 (9th Cir. 2006) (holding that former employee who did not

13  indicate an interest in returning to work for the defendant lacked standing to seek injunctive relief

14  "because she would not stand to benefit from an injunction requiring the anti-discriminatory

15  policies she requests at her former place of work"). Through his UCL claim, Cunha "seek[s] an

16  order of this Court for equitable and/or injunctive relief in the form of requiring Defendants to

17  correct their illegal conduct that is necessary and proper to prevent Intellicheck and ProPacific

18  from repeating their wrongful practices as alleged above." ECF No. 21 ¶ 114. However, Cunha

19  would not benefit from such injunctive relief because he no longer works for ProPacific and has

20  not indicated any intent to apply to work there in the future.

21  Cunha alleges that, because "Intellicheck and ProPacific continue to operate in the State of

22  California, Plaintiff and California UCL Class may be subject to further background checks

23  conducted by Intellicheck . . ." ECF No. 21 ¶ 113. But Cunha must show a sufficient

24  likelihood—not a speculative possibility—that he will personally be harmed again in the same

25  way. See Freeman, 877 F. Supp. 2d at 927–28 (concluding that Plaintiffs lacked standing to seek

26  injunctive relief because "Plaintiffs' current allegations establish only that [the defendant] will

27  (allegedly) harm many people, but not necessarily that it will harm *Plaintiffs* again") (emphasis in

28  original). He has failed to do so. And "[a]ny injury unnamed members of this proposed class may

1    have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the

2    injunctive relief they seek." Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1045 (9th Cir. 1999)

3    ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not

4    represent a class seeking that relief.").

5         Next, Cunha argues that he is entitled to injunctive relief because the Defendants continue

6    to possess his consumer report. ECF No. 34 at 27–28.  But the injuries alleged in the FAC relate

7    to inadequate disclosures and the improper procurement of his consumer report, not the mere

8    possession of that report.  Therefore, this assertion, even if true, fails to establish a sufficient

9    likelihood that Cunha will suffer the same injuries alleged in this complaint.  See Bates, 511 F.3d

10   at 985 (9th Cir. 2007) (plaintiff must show "a sufficient likelihood that he will again be wronged

11   in a similar way").

12        Cunha next argues that IntelliCheck continues to violate ICCRA by not conspicuously

13   posting its privacy practices on its website.  ECF No. 48 at 27.  But, even if this allegation is

14   accepted as true, it still fails to establish constitutional standing because Cunha does not allege that

15   this technical violation of the statute caused him to suffer a concrete injury-in-fact.  Spokeo, 136

16   S. Ct. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory

17   violation. For that reason, [the plaintiff] could not, for example, allege a bare procedural violation,

18   divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.").  The

19   concrete injuries alleged in the complaint—in particular, Cunha's termination—were caused by

20   Defendants' allegedly unlawful procurement of his consumer report, not IntelliCheck's alleged

21   failure to post its privacy practices on its website.

22        Finally, Cunha argues that that the alleged misconduct is ongoing because the header on

23   the copy of his consumer report, which IntelliCheck attached to its motion to dismiss, lists a date

24   of "2/14/17."  ECF No. 48 at 27–28.  This argument is frivolous.  The consumer report clearly lists

25   a report date of "05–13–2016," and an order date of "05–06–2016."  ECF No. 40–1 at 4.  As

26   Cunha admits, the "2/14/17" date simply represents the date that the report was printed for

27   purposes of this litigation.  ECF No. 48–1 ¶ 3.  Therefore, this document similarly fails to establish

28   an ongoing injury sufficient to seek prospective injunctive relief.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Cunha's failure to demonstrate a sufficient likelihood of future injury distinguishes this

2    case from the cases that Cunha relies on in its opposition brief.  See, e.g., In re Yahoo Mail Litig.,

3    308 F.R.D. 577, 589 (N.D. Cal. 2015) ("Plaintiffs have shown that they intend to continue to email

4    Yahoo Mail subscribers and have, in fact, done so since discovering Yahoo's alleged wrongful

5    conduct. Plaintiffs have therefore alleged a 'real and immediate threat' that their electronic

6    communications will be intercepted and used by Yahoo—the precise injuries that Plaintiffs

7    identify as the basis for this action.") (internal citations omitted).

8    Because Cunha fails to establish standing to seek injunctive relief under Article III, the

9    Court grants the motion to dismiss Cunha's seventh cause of action under the UCL.

10   **G.    Leave to Amend**

11   "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that

12   the complaint could not be saved by any amendment."  Contreras v. Toyota Motor Sales U.S.A.

13   Inc., 484 F. App'x 116, 118 (9th Cir. 2012).  "Although leave to amend a deficient complaint shall

14   be freely given when justice so requires, Fed.R.Civ.P. 15(a), leave may be denied if amendment of

15   the complaint would be futile."  Gordon v. City of Oakland, 627 F.3d 1092, 1094 (9th Cir. 2010).

16   Because Cunha does not oppose the dismissal of claim one, the Court dismisses that claim

17   with prejudice.  The Court also dismisses claim four with prejudice because any amendment

18   would be futile in light of Cunha's repeated admissions that he gave ProPacific written

19   authorization to run his consumer report.

20   The Court dismisses the portions of Cunha's second cause of action that relate to Section

21   1681d and Section 1681g of the FCRA with leave to amend.  Upon amendment, Cunha should

22   allege what facts, if any, suggest that the information contained in his consumer report was

23   obtained through personal interviews such that it was an "investigative consumer report" subject

24   to the FCRA.

25   The Court also dismisses Cunha's seventh cause of action under the UCL with leave to

26   amend.  Upon amendment, Cunha should allege facts that show a sufficient likelihood that he will

27   be wronged again in a similar way in the future.  See, e.g., Ramirez v. Manpower, Inc., No. 5:13-

28   CV-2880-EJD, 2014 WL 116531, at *7 (N.D. Cal. Jan. 13, 2014) (dismissing plaintiff's claim for

injunctive relief with leave to amend).

Finally, the Court grants Cunha's request for leave to amend to allege the following claims: (1) a claim against IntelliCheck under 15 U.S.C. § 1681b(b)(1)(A) & (B); and (2) a claim against ProPacific under Section 1785.20.5 of the CCRAA.

## CONCLUSION

The Court grants the motions to dismiss claim one; portions of claim two; claim four; and claim seven.  The Court denies the motions to dismiss claims five and six.  If Cunha wishes to file an amended complaint to cure the deficiencies noted above, he must do so within thirty days of this Order.

IT IS SO ORDERED.

Dated:  May 26, 2017

_____
JON S. TIGAR
United States District Judge