UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CUNHA,<br><br>    Plaintiff,<br><br>    v.<br><br>CHICO PRODUCE, INC.,<br><br>    Defendant. | Case No. 17-cv-00597-JST<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SANCTIONS AND TO DISQUALIFY PLAINTIFF'S COUNSEL**<br><br>Re: ECF No. 117 |

Before the Court is Defendant Chico Produce's motion (1) to enjoin Plaintiff's counsel's misrepresentations to, and improper solicitation of, putative class members, (2) for a curative notice to be sent to putative class members, (3) for monetary sanctions, and (4) to disqualify Plaintiff's counsel. The Court will deny the motion.

**I.     BACKGROUND**

This motion stems from an underlying lawsuit brought by James Cunha, on behalf of himself and all others individually situated. *See* ECF No. 75, Second Amended Complaint ("SAC"). Cunha is represented by Keegan & Baker, LLP and The United Employees Law Group (hereinafter "Plaintiff's counsel"). Cunha initially brought suit against IntelliCheck, LLC and Chico Produce, Inc.[1] *See* ECF No. 2. Cunha alleges that he was terminated from his position with Chico Produce as a result of a consumer report conducted by Defendants, prior to receiving a copy of the consumer report, and without being given an opportunity to respond. SAC ¶ 5. Cunha's second amended complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), the Investigative Consumer Reporting Agencies Act ("ICRAA")[2], and the California Consumer

---

[1] Pursuant to stipulation, IntelliCheck was dismissed on September 20, 2017. ECF No 87.
[2] Under the ICRAA, a prevailing plaintiff may recover "[a]ny actual damages sustained by the

Reporting Agencies Act (CCRAA).  *Id.* ¶ 1.

Cunha filed a motion for class certification on March 9, 2018.  ECF No. 112.  Chico Produce filed this motion on March 28, 2018, nine days before the deadline for its opposition to class certification.  ECF No. 117.  Both motions are now fully briefed.  However, the Court stayed consideration of the motion to certify the class pending resolution of this motion.  ECF No. 130.

## II.   REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Chico Produce requests that the Court judicially notice the State Bar of California membership profile for attorney members Patrick Nathaniel Keegan, James Michael Treglio, and Walter Lewis Haines.  ECF No. 116.  The request is not opposed, and the Court grants it.

## III.   EVIDENTIARY OBJECTIONS

Plaintiff's counsel filed objections to evidence submitted in support of Chico Produce's initial motion.  ECF No. 125-1.  Chico Produce filed objections to the evidence filed in support of Plaintiff's opposition.  ECF No. 127.  Both sets of objections were contained in documents separate from the parties' briefs on the motion.  The local rules require that any evidentiary objections to a motion be contained within the opposition brief, and that any evidentiary objections to the opposition be contained in the reply brief.  Civ. L.R. 7-3(b), (c).  Because the parties' objections do not comply with this rule, the Court does not consider them.

Plaintiff's counsel also filed evidentiary objections to new evidence in Chico Produce's reply.  ECF No. 131.  The Court resolved these objections by granting Plaintiff's counsel's request for leave to file a sur-reply.  ECF No. 134.

---

consumer as a result of the failure or, except in the case of class actions, ten thousand dollars ($10,000), whichever sum is greater."  Cal. Civ. Code § 1786.50(a)(1).

## IV. LEGAL STANDARD

### A. Rule 37

"Federal Rule of Civil Procedure 37 authorizes the district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules.[3] When choosing among possible sanctions, the district court may consider the deterrent value of an order of dismissal on future litigants as well as on the parties." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) (internal citations omitted). The court "must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "The violation need not be willful, unless the sanction is dismissal." *O'Connor v. Uber Techs., Inc.*, No. 13-CV-03826-EMC, 2017 WL 3782101, at *4 (N.D. Cal. Aug. 31, 2017), *appeal dismissed*, No. 17-16859, 2017 WL 6398066 (9th Cir. Sept. 27, 2017) (citing *Lew v. Kona Hosp.*, 754 F.2d 1420, 1426-27 (9th Cir. 1985)). "Whether to impose sanctions is 'left to the sound discretion of the trial judge.'" *Id.* (quoting *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 844 (9th Cir. 1976)).

### B. Rule 16

Under Federal Rule of Civil Procedure 16, "the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Rule 16 also provides for the payment of reasonable expenses incurred because of noncompliance "unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2). "Sanctions under this rule, too, are committed to the district court's discretion." *O'Connor*, 2017 WL 3782101, at *4 (*citing Ayers v. City of Richmond*, 895 F.2d 1267, 1269-70 (9th Cir. 1990)).

---

[3] Rule 26(f)(3) addresses the development of a discovery plan and references "any other orders that the court should issue under Rule 26(c)," the rule addressing protective orders. Fed. R. Civ. P. 26.

### C. The Court's Inherent Authority

"The Court also has 'the inherent authority to impose sanctions for bad faith, which includes a broad range of willful improper conduct.'" *Id.* (quoting *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (quotation and citation omitted). "A finding of bad faith is usually required before a court can enter sanctions pursuant to its inherent authority." *Id.* (citing *Lahiri v. Universal Music and Video Distribution Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010)). However, "a 'willful' violation of a court order does not require proof of mental intent such as bad faith or an improper motive, but rather, it is enough that a party acted deliberately." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012). "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

### D. Rule 23

"Rule 23(d) of the Federal Rules of Civil Procedure gives the court broad powers to make 'appropriate orders' to ensure efficient and fair proceedings in a class action." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1242 (N.D. Cal. 2000). The rule provides:

> In conducting an action under this rule, the court may issue orders that . . . (B) require—to protect class members and fairly conduct the action—giving appropriate notice to some or all class members of: (i) any step in the action; (ii) the proposed extent of the judgment; or (iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action.

Fed. R. Civ. P. 23(d). "This has been described as a 'nonexhaustive list.'" O'Connor, 2017 WL 3782101, at *5 (citation omitted).

### E. Professional Rules of Ethics

Lawyers who practice before this Court are required to abide by the standards of professional conduct required of members of the State Bar of California. *See* Local C.R. 11-1(c)(3). "The district court has the duty and responsibility of supervising the conduct of attorneys who appear before it." *Erickson v. Newmar Corp.*, 87 F.3d 298, 300 (9th Cir. 1996). "District

4

judges have an arsenal of sanctions they can impose for unethical behavior" including "monetary sanctions, contempt, and the disqualification of counsel." *Id.* at 303.

Motions for disqualification are governed by state law. *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir.2000). "Whether to disqualify counsel is a decision conveyed to the discretion of the district court." *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 814 (N.D. Cal. 2004) (internal citation omitted). Because of the potential for abuse, motions for disqualification are subject to strict judicial scrutiny. *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1049 (9th Cir.1985); *see also Concat*, 350 F.Supp.2d at 814 (N.D.Cal.2004) ("Because disqualification is a drastic measure, it is generally disfavored and should only be imposed when absolutely necessary.").

The court examining a motion to disqualify "must balance such varied interests as a party's right to chosen counsel, the interest in representing a client, the burden placed on a client to find new counsel, and the possibility that 'tactical abuse underlies the disqualification motion.'" *Kelly v. Roker*, No. C 11-05822 JSW, 2012 WL 851558, at *2 (N.D. Cal. Mar. 13, 2012) (quoting *People ex rel Dept. of Corporations v. Speedee Oil Change Systems, Inc.*, 20 Cal.4th 1135, 1145, (1999). "On the other hand, however, 'the paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar.'" *Concat*, 350 F. Supp. 2d at 814 (quoting *State Farm Mut. Auto. Ins. Co. v. Federal Ins. Co.,* 72 Cal.App.4th 1422 (1999)).

## V.   DISCUSSION

Chico Produce argues that Plaintiff's counsel violated the court's protective order and the California Rules of Professional Conduct as set forth in more detail below.[4]

---

[4] Chico Produce also argues that Plaintiff and his counsel breached their fiduciary duty to absent class members. ECF No. 117 at 3. The Court finds this argument more appropriate to the question of whether Plaintiff can demonstrate that he will be able to "fairly and adequately protect the interests of all members in the class." Fed. R. Civ. P. 23(a)(4). This question will be in front of the court in the pending motion for class certification, ECF No. 112. Finally, Chico Produce argues that Plaintiff and his counsel have obstructed proper discovery. The Court does not consider these arguments because all discovery disputes have been referred to a magistrate judge. ECF No. 93.

### A. Protective Order

Pursuant to stipulation, the Court entered a protective order on June 21, 2017. ECF Nos. 71, 72. The protective order states that "[d]isclosure and discovery activity in this action are likely to involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted." ECF No. 72 at 1. It further states that "Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case only for prosecuting, defending, or attempting to settle this litigation." *Id.* at 7.

Plaintiff settled his individual claims with defendant IntelliCheck in July 2017. ECF No. 81. As part of the settlement agreement, Plaintiff's counsel received "a copy of the production of the IntelliCheck Background Screening Reports (IntelliCheck 1-283) purporting to relate to putative members of the five putative classes and sub-classes." ECF Nos. 125-12 ¶ 5; 125-13 ¶ 4. On August 28, 2017, these reports were produced subject to the Protective Order. ECF No. 117-5. The reports contained putative class contact information. ECF No. 118-1. According to Chico Produce, it was "not informed or otherwise made aware of this exchange at the time." ECF No. 117 at 9.

Chico Produce later produced a class list, also subject to the Protective Order, on October 10, 2017. ECF No. 117 at 11. On October 13, 2017, Plaintiff's counsel informed Chico Produce that they had been retained by twelve putative class members "[p]rior to receiving the partial class list in this matter." ECF Nos. 117 at 11-12; 117-9 at 2. Plaintiff's counsel did not reveal in what capacity they represented these individuals. ECF No. 117-9 at 2.

Plaintiff's counsel have not yet sought to add any of these individuals as class representatives. ECF No. 74. Chico Produce contends that Plaintiff's counsel "has tried to avoid Chico Produce's attempts to conduct discovery into these 12 individuals, arguing that they are not parties to this action." ECF No. 117 at 12. Nonetheless, on at least two separate occasions, Plaintiff's counsel has offered to settle the twelve represented putative class members' claims

individually. ECF Nos. 117-10; 124-15.[5]

Plaintiff filed a motion for class certification on March 9, 2018. ECF No. 112. Plaintiff seeks to certify only his third claim, for relief for violations of the FCRA. ECF No. 112.

Chico Produce argues that Plaintiff's counsel violated the protective order by "us[ing] private class member contact information marked by IntelliCheck as Confidential for purposes outside the scope of this action; namely, to bring or threaten and settle separate, individual ICRAA actions." *Id.* at 16-17. Chico Produce points to Plaintiff's counsel's attempts to settle the represented putative class members' individual claims using the $10,000 statutory damages available for individual actions as a benchmark. ECF No. 117. Chico Produce also cites declarations of putative class members stating that they were told by Plaintiff's counsel that they would receive $10,000 if they won, which is more than they could receive recovering only as class members. ECF Nos. 119-4; 119-6; 119-7. Further, Anthony Demman, a law administrator for the United Employees Law Group, states that during his telephone calls with putative class members, "[a]ny mention of damages sought would have been accurately describing what is alleged in the operative complaint, i.e. actual and/or statutory damages in the amounts from anywhere between $100 and $10,000. ECF No. 125-13 ¶ 5. Chico Produce contends that this supports their argument that Plaintiff's counsel misused the contact information to bring or threaten separate individual ICRAA actions because $10,000 in damages is not available in a class action. ECF No. 126 at 7.

Plaintiffs concede that they obtained contact information of the represented putative class members from the IntelliCheck Background Screening Reports. *Id.* at 12 n.4. Plaintiff's counsel argue that they used the reports "to seek additional plaintiffs and class representatives," "to verify the accuracy and authenticity of the IntelliCheck Background Screening Reports," and "to obtain

---

[5] The Court notes that Plaintiff's counsel offered to dismiss the class action in exchange for payment to James Cunha and the twelve represented putative class members on December 13, 2017. ECF No. 117-10. Plaintiff's counsel did not request payment for any other putative class members. In light of these actions, the Court questions whether Cunha and his lawyers will be able to "fairly and adequately protect the interests of all members in the class." Fed. R. Civ. P. 23(a)(4). As noted above, the Court will consider this question in the pending motion for class certification, ECF No. 112.

information pertaining to the course and dealings of the defendant Chico Produce." ECF No. 125 at 15-16, 19. They contend that "[a]ll that Plaintiff's counsel has done is use the IntelliCheck Background Check Reports for purposes of this litigation by obtaining additional putative Background Check Class member testimony in support of Plaintiff's motion for class certification, which is not a violation of the Protective Order." ECF No. 136 at 5-6. They note that they "have not filed any cases in state court on behalf of any of their clients. *Id.* at 5.

Contacting putative class members with the intention of soliciting new clients for individual cases would be a violation of the protective order[6] but, while there is some evidence a violation might have occurred, Defendants have not satisfactorily established that it did occur. The Court does order Plaintiff's counsel not to use any information subject to the protective order to solicit clients, including, but not limited to, solicitation of clients for individual claims under the FCRA, ICAA, and CCRA. *See Gilbert v. Moneymutual*, LLC, No. 13-CV-01171-JSW (LB), 2016 WL 2654379, at *2-3 (N.D. Cal. May 10, 2016). But it does not find a violation of the protective order.

### B. California Rules of Professional Conduct

Chico Produce argues that Plaintiff's counsel violated several California Rules of Professional Conduct during telephone calls to putative class members. ECF No. 117 at 17-21. In support of this argument, Chico Produce submits three declarations from putative class members, Scott Humanson, Terry Van Sickle, and Javier Mendez, describing their contact with Plaintiff's counsel. ECF Nos. 119-4; 119-6; 119-7.

Chico Produce argues that these calls violated several of Rule 1-400(D)'s subdivisions[7]

---

[6] During the hearing on this motion, Plaintiff's counsel acknowledged that contacting putative class members with the intent to file separate lawsuits would violate the protective order.

[7] Rule 1-400(D) states that a communication or solicitation shall not "(1) Contain any untrue statement; or (2) Contain any matter, or present or arrange any matter in a manner or format which is false, deceptive, or which tends to confuse, deceive, or mislead the public; or (3) Omit to state any fact necessary to make the statements made, in the light of circumstances under which they are made, not misleading to the public; or (4) Fail to indicate clearly, expressly, or by context, that it is a communication or solicitation, as the case may be; or (5) Be transmitted in any manner which involves intrusion, coercion, duress, compulsion, intimidation, threats, or vexatious or harassing conduct. (6) State that a member is a "certified specialist" unless the member holds a current certificate as a specialist issued by the Board of Legal Specialization, or any other entity accredited by the State Bar to designate specialists pursuant to standards adopted by the Board of

because Plaintiff's Counsel "guaranteed putative class members that they would receive money and guaranteed how much they would receive." ECF No. 117 at 20.  They contend that "the guarantees are particularly egregious, because the amount promised was not even legally sound, since statutory damages of $10,000 are not available in ICRAA class actions." *Id.*  In response, Plaintiff's counsel submits a declaration from Anthony Demman, a law administrator for the United Employees Law Group.  ECF No. 125-13.  Demman states that he did not guarantee any amount of money to Humanson or Van Sickle. *Id.* ¶ 5.  He also states that he has never spoken with Mendez. *Id.* ¶ 10.

The allegations in the Humanson, Vack Sickle and Mendez declarations are concerning.  However, they are not sufficient for the Court to find a violations of Rule 1-400(D) because the Court cannot conclude it is more likely than not that Plaintiff's counsel said anything which was false, deceptive, or misleading, or omitted anything material, or failed to clearly identify the nature of the communication.

Whether Plaintiff's counsel violated Rules 1-400(B)-(C) is a closer case.  These rules prohibit telephonic solicitations "made on behalf of law firms by or on behalf of a member or law firm to a prospective client with whom the member or law firm has no family or prior professional relationship, unless the solicitation is protected from abridgment by the Constitution of the United States or by the Constitution of the State of California."  Plaintiff's counsel may, however, contact putative class members for investigative purposes. *See Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330, 338 (N.D. Cal. 2010).  Here again, while the circumstances give cause for concern, the Court cannot find it proven that Plaintiff's counsel contacted putative class members with the intention of seeking new clients, such that Plaintiff's counsel engaged in an improper solicitation.[8]

## CONCLUSION

This is a close case, but sanctions of the kind requested here are not designed for close cases. E.g., Douglas R. Richmond, Alternative Sanctions in Litigation, 47 N.M. L. Rev. 209, 244

---

Governors, and states the complete name of the entity which granted certification.
[8] There is also insufficient evidence that Plaintiff's counsel aided Demman in the unauthorized practice of law.  ECF No. 126 at 7.

9

(2017) (noting that giving lawyer "the benefit of the doubt in close cases . . . is consistent with sanctions doctrine generally"); Danielle Kie Hart, Still Chilling After All These Years: Rule 11 of the Federal Rules of Civil Procedure and Its Impact on Federal Civil Rights Plaintiffs After the 1993 Amendments, 37 Val. U. L. Rev. 1, 122 (2002) (arguing that "sanctions should not be imposed at all" in close cases); Golden Eagle Distrib. Corp. v. Burroughs Corp., 801 F.2d 1531, 1541 (9th Cir. 1986) (noting that "when mandatory sanctions ride upon close judicial decisions . . . [t]he danger of arbitrariness increases and the probability of uniform enforcement declines"). Although some of the evidence before the Court is disconcerting, the Court concludes that Defendants have not met their burden of demonstrating sanctionable conduct. Accordingly, Defendants' motion is denied.

The Court will conduct a hearing on Plaintiffs' motion for class certification, ECF No. 112, on November 15, 2018 at 2:00 p.m.

**IT IS SO ORDERED.**

Dated: September 5, 2018



JON S. TIGAR
United States District Judge