1  DAVID YEREMIAN & ASSOCIATES, INC.
   David Yeremian (SBN 226337)
2  david@yeremianlaw.com
   535 N. Brand Blvd., Suite 705
3  Glendale, California 91203
   Telephone: (818) 230-8380
4  Facsimile: (818) 230-0308

5  Attorneys for Plaintiff,
   JAMES CUNHA

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10

11 JAMES CUNHA , on behalf of himself and     Case No.  17-CV-00597-JST
   all others similarly situated,
12                                             [CLASS ACTION]
                    Plaintiff,
13                                             Hon. Jon S. Tigar
            vs.
14                                             **PLAINTIFF'S NOTICE OF MOTION AND**
   INTELLICHECK, LLC, a California             **MEMORANDUM OF POINTS AND**
15 Limited Liability Company; CHICO            **AUTHORITIES IN SUPPORT OF**
   PRODUCE, INC., d/b/a PROPACIFIC             **PLAINTIFF'S AMENDED MOTION FOR**
16 FRESH, INC., a California Corporation;      **PRELIMINARY APPROVAL OF CLASS**
   and DOES 1 through 50, inclusive,           **ACTION SETTLEMENT**
17
                    Defendants.
18
                                               *[filed concurrently with Plaintiff's Notice of*
19                                             *Motion and Motion; Declarations of David*
                                               *Yeremian and James Cunha; and [Proposed]*
20                                             *Order]*

21                                             Date:          September 30, 2020
                                               Time:          2:00 p.m.
22                                             Dept.:         Courtroom 6

23

24

25

26

27

28

1

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

2      PLEASE TAKE NOTICE that on September 30, 2020 at 2:00 p.m., or as soon thereafter

3   as this matter may be heard, in Department 6 of the above-entitled Court, located at Oakland

4   Courthouse, 1301 Clay Street, Oakland, California 946122, before the Honorable Jon S. Tigar,

5   Plaintiff James Cunha ("Plaintiff"), on behalf of himself and all persons similarly situated, will

6   and hereby do move this Court pursuant to Federal Rules of Civil Procedure, Rule 23 for an order

7   preliminarily approving the class action settlement reached between Plaintiff and Defendant

8   Chico Produce, Inc. (doing business as ProPacific Fresh Inc.), ("Defendant"). Pursuant to the

9   proposed Joint Stipulation of Settlement and Release of Claims ("Stipulation"), filed concurrently

10   herewith, Defendant does not oppose the preliminary approval of the class action settlement.

11      Under the terms of the Stipulation, the parties have agreed that all claims brought on

12   behalf of the class shall be fully and finally resolved for the total sum of $250,000.00 ("Gross

13   Settlement Amount") to be paid on a non-reversionary basis. The amount remaining of the Gross

14   Settlement Amount after the following deductions have been made ("Net Settlement Amount")

15   shall be available for distribution to class members who do not opt out of the settlement:

16      • Attorneys' Fees and Litigation Costs in the total amount of $87,000.00, which is

17         $75,000.00 in attorneys' fees (30% of the Total Settlement Payment) and

18         $12,000.00 in verified attorneys' costs;

19      • Incentive Award in the amount $5,000.00 for the Named Plaintiff for his services

20         as representative of the Settlement Class;

21      • Settlement Administrator Costs which shall not exceed $6,000.00.

22      This Notice of Motion and Motion is based on the fact that this is a fair and reasonable

23   settlement that benefits the class and was the product of informed, non-collusive negotiations by

24   the parties who were represented by experienced and able counsel.

25      This Notice of Motion and Motion is based on this Notice, the parties' Stipulation, the

26   accompanying Memorandum of Points and Authorities, the Declaration of David Yeremian and

27   James Cunha, and the pleadings, records and files in the case, and such other further oral and

28   documentary evidence which may be submitted at or before the hearing on this Motion.

4844-7891-1133.1

1

Dated: August 21, 2020                    Respectfully submitted,

2

DAVID YEREMIAN & ASSOCIATES, INC.

3

4

By  /s/ David Yeremian

5

David Yeremian
Attorneys for Plaintiff, JAMES CUNHA

6

on behalf of himself and others similarly situated

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4844-7891-1133.1

TABLE OF CONTENTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4844-7891-1133.1

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY ...........................1

    A.    Procedural History ................................................................................1

    B.    Investigation ..........................................................................................2

    C.    Settlement Efforts .................................................................................4

    D.    The Parties Engaged in Arms'-Length Settlement Negotiations ...........4

III.  MATERIAL TERMS OF THE PROPOSED CLASS ACTION SETTLEMENT .....5

    A.    The Settlement Benefits ........................................................................6

    B.    Settlement Class ....................................................................................6

    C.    Differences Between the Settlement Class and the Class Proposed in the
          Second Amended Complaint. ................................................................6

    D.    A Consumer-Friendly Settlement Payment Distribution .......................7

    E.    The Proposed Notice to the Settlement Class ........................................7

    F.    Proposed Attorney's Fees and Costs are Reasonable and Should be
          Approved ...............................................................................................8

    G.    The Class Representative Incentive Award is Fair and Reasonable ......10

    H.    The Settlement Administrator Selection Process ..................................12

    I.    Implementation Schedule ....................................................................13

IV.   ARGUMENT ....................................................................................................13

    A.    The Court Should Grant Preliminary Approval of the Class Settlement. ...........13

          1. The Standard for Preliminary Approval Has Been Met. ...................13

          2. The Settlement is Reasonable In Light of the Strengths and Weaknesses
          of Plaintiff's Case. ...........................................................................14

          3. The Risk, Expense and Complexity of the Case, Including the Risk of
          Decertification, Favor Approval of the Settlement. .............................16

          4. The Amount Offered in Settlement Supports Approving the Settlement. ..........17

          5. The Settlement was Finalized After a Thorough Investigation. ..........19

          6. The Views of Experienced Counsel Should be Accorded Substantial
          Weight. ............................................................................................19

          7. The Presence of a Governmental Participant. ...................................20

8. The Reaction of the Class. ...................................................................20

9. Conclusion. ..........................................................................................20

B.    Certificate for Settlement Purposes Only is Appropriate........................................20

1. The Proposed Class Meets the Requirements of Rule 23. ..................................20

2. The Proposed Class is Sufficiently Numerous.................................................21

3. There are Questions of Law and Fact that are Common to the Class. ...............21

4. Plaintiff's Claims are Typical of the Proposed Settlement Class. .....................22

5. Plaintiff and Plaintiff's Counsel will Adequately Represent the Interests of the Proposed Settlement Class. ...........................................................................22

6. Common Issues Predominate Over Individual Issues.......................................23

7. Class Settlement is Superior to Other Available Means of Resolution. ............23

C.    The Proposed Notice of Settlement Adequately Informs Settlement Class Members about the Case and Proposed Settlement. ................................................24

V.    CONCLUSION.............................................................................................................25

1

## <u>TABLE OF AUTHORITIES</u>

2

3

### CASES

4

Amchem Prods. v. Windsor,
    521 U.S. 591, 620 (1997)..................................................................... 20

5

6

Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.,
    480 F. Supp. 1195, aff'd 622 F.2d 1106 (2d Cir. 1980) ............................ 9

7

8

Bogosian v. Gulf Oil Corp.,
    621 F.Supp. 27 (E.D. Pa. 1985) ........................................................... 10

9

10

Bryan v. Pittsburgh Plate Glass Co.,
    59 F.R.D. 616, 617 aff'd 494 F.2d 799 (3d Cir.)..................................... 10

11

Churchill Village v. Gen. Elec.,
    361 F.3d 566 (9th Cir. 2004)................................................................ 25

12

13

Class Plaintiffs v. City of Seattle,
    955 F.2d 1268, 1276 (1992)................................................................. 13

14

15

Connor v. First Student, Inc.,
    5 Cal. 5th 1026 (2018) ........................................................................ 16

16

17

Duran v. U.S. Bank Nat. Assn.,
59 Cal. 4th 1, 34 (2014)……………………………………………………………17

18

19

Eisen v. Porsche Cars North American, Inc.,
    Case No. 11-09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at * 13
    (C.D. Cal. 2014) ........................................................................... 19-20

20

21

Espinoza v. Bluemercury, Inc.,
    2017 WL 10799553 *3 (N.D. Cal. 2017) ............................................... 17

22

Gay v. Waiters' & Dairy Lunchmen's Union,
    489 F.Supp. 282 (N.D. Cal. 1980), aff'd 694 F.2d 531 (9th Cir. 1982) ................... 21

23

24

Hammon v. Barry,
    752 F.Supp. 1087 (D.D.C. 1990) ......................................................... 14

25

26

Hanlon v. Chrysler Corp.,
    150 F.3d 1011 (9th Cir. 1998)........................................................... 20-23

27

28

In re Activision Sec. Litig.,
    723 F.Supp. at 1378-79 (N.D. 1989).................................................... 8-9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4844-7891-1133.1

In re Ampicillin Antitrust Litig.,
    472 F.Supp 1357 (N.D. GA 1979) .................................................................. 9

In re Armored Car Antitrust Litigation,
    521 U.S. 591, 620 (1997) ................................................................................ 14

In re Chicken Antitrust Litigation,
    560 F. Supp. 957, 962 (N.D. GA 1980) ......................................................... 14

In re Pac. Enterprises Sec. Litig.,
    47 F.3d 373, 378-79 (9th Cir. 1995) .............................................................. 8-9

In re Washington Pub. Power Supply Sys. Sec Litig.,
    19 F.3d 1291, 1295-96 (9th Cir. 1994) ........................................................... 8

Long v. Tommy Hilfiger U.S.A.,
    671 F.3d 371 (3d Cir. 2012) ........................................................................... 13

Linder v. Thrifty Oil Co.,
    23 Cal. 4th 429, 434 ........................................................................................ 13

Linney v. Cellular Alaska Partnership,
    151 F.3d at 1239 .............................................................................................. 19

Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.,
    834 F.2d 677, 681 (7th Cir. 1987) .................................................................. 13

Miller v. CEVA Logistics USA Inc.,
    2015 WL 729638 *7 (N.D. Cal. 2015) ........................................................... 18

Mitchinson v. Love's Travel Stops & Country Stores, Inc.,
    2017 WL 2289342 (E.D. Cal. 2017) ............................................................... 20

Molski v. Gleich,
    318 F.3d 937, 953 (9th Cir. 2003) .................................................................. 14

Mullane v. Central Hanover Bank & Trust Co.,
    339 U.S. 306 (1950) ........................................................................................ 24

Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,
    221 F.R.D. 523, 525-26 (C.D. Cal. 2004). ..................................................... 14

Parra v. Bashas, Inc.,
    536 F.3d 975, 978-79 (9th Cir. 2008) ............................................................ 21

Priddy v. Edelman 883 F.2d 438, 447 (6th Cir. 1989),
    521 U.S. 591, 620 (1997) ................................................................................ 14

1
2

Ramirez v. Trans. Union LLC,
    2017 WL 5153280 (N.D. Cal. 2017)................................................................... 14, 23

3
4

Robins v. Spokeo, Inc.,
    742 F.3d 409, 412 (9th Cir. 2014)................................................................................. 23

5
6

Rodriguez v. West Publ. Corp.,
    563 F.3d 948, 964 (9th Cir. 2009)................................................................. 13-15, 18

7
8

Safeco Ins. Co. of Am. v. Burr,
551 U.S. 47, 57-59
(2007)…………………………………………………………………………………15

9

Sommers v. Abraham Lincoln Federal Savings & Loan Association,
    79 F.R.D. 571 (E.D. PA 1978) ...................................................................................... 14

10
11

Syed v. M-i LLC,
    853 F.3d 297 (9th Cir. 2017).......................................................................................... 17

12
13

Torres v. Pet Extreme,
    No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. 2015)............... 15

14
15

Toys 'R' Us-Del., Facta Litig.,
    295 F.R.D. 438, 451 (C.D. Cal. 2014) .......................................................................... 15

16

Van Gemert v. Boeing Co.,
    516 F. Supp. 412, 420 ...................................................................................................... 9

17
18

Van Vranken v. Atlantic Richfield Co.,
    901 F.Supp. 294 (N.D. Cal. 1995) ............................................................................... 10

19
20

Vasquez v. Coast Valley Roofing, Inc.,
    670 F.Supp. 3d 1114, 1121 (E.D. Cal. 2009)............................................................. 21

21
22

Vincent v. Hughes Air West, Inc.,
    557 F.2d 759, 769 (9th Cir. 1977).............................................................................. 8-9

23
24

Wal-Mart Stores, Inc. v. Dukes,
    131 S. Ct. 2541, 2551 (2011) .................................................................................. 16, 21

25
26

Wehner v. Syntex Corp.,
    117 F.R.D. 641, 644 (N.D. Cal. 1987) ........................................................................ 22

27
28

Willes v. State Farm Fire & Cas. Co.,
    512 F.3d 565, 566 (9th Cir. 2008)................................................................................ 15

TABLE OF AUTHORITIES

1

2

**STATUTES**

3    15 U.S.C. § 1681 ........................................................................................... 1, 15, 18, 22

4

5    California Civil Code § 1785 ................................................................................... 1, 18

6    California Civil Code § 1786 ............................................................................ 1, 17-18, 21

7    FED. R. CIV. P. 23. ............................................................................................... 13

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

Plaintiff James Cunha ("Plaintiff"), on his own behalf and on behalf of a putative class of similarly situated prospective and current employees, brought this action against Defendants Intellicheck, LLC and Chico Produce, Inc. (doing business as ProPacific Fresh, Inc.) (since Defendant Intellicheck was later dismissed all further reference to "Defendant," "Defendants," or "ProPacific" means Chico Produce, Inc.). This class action arises from Defendant's acquisition and use of consumer reports to conduct background checks on Plaintiff and the putative class. Defendant routinely obtains consumer reports on its California employees, and then uses the information contained in such consumer reports in connection with their hiring and employment practices, all without complying with the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), the Investigative Consumer Reporting Agencies Act, California Civil Code § 1786, *et seq.* ("ICRAA"), and the Consumer Credit Reporting Agencies Act, California Civil Code § 1785, *et seq.* ("CCRAA").

After engaging in substantial investigation and extensive and hard-fought negotiations, the parties have agreed to settle all claims alleged in the lawsuit on a class-wide non-reversionary basis for $250,000.00, inclusive of all fees and costs. In order to arrive at this settlement, Plaintiff engaged in arms'-length negotiations with Defendant, reaching an agreement following mediation with a third party neutral.

In light of the risks of continuing with this litigation, Plaintiff submits that this proposed settlement is fair, reasonable, and adequate, and in the best interests of the class. Consequently, Plaintiff, with the consent and approval of Defendant, hereby moves this Court for an order: granting preliminary approval of the proposed class action settlement, as embodied in the Joint Stipulation of Settlement and Release of Claims between Plaintiff and Defendant ("Stipulation") filed concurrently herewith as Exhibit 1 to the Declaration of David Yeremian.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    Procedural History

On December 20, 2016, Plaintiff filed a putative class action complaint entitled *James*

1   *Cunha vs. Intellicheck, LLC, et. al.*, Case No. DR160670, in Humboldt County Superior Court.

2   *See* Declaration of David Yeremian (Yeremian Decl.") filed concurrently herewith, ¶ 5. Plaintiff

3   alleged class-wide claims under the FCRA, ICRAA, relating to his seeking employment with

4   Defendant. *Id*. Plaintiff later amended to add a claim under the CCRAA. *Id*. Plaintiff alleged that

5   the disclosure and authorization forms Defendant provided to Plaintiff and other applicants, titled

6   Disclosure and Authorization for Consumer Reports, Authorization for Background Investigation,

7   and Disclosure and Authorization for Consumer Reports, improperly contained extraneous

8   information, in violation of the FCRA, ICRAA and CCRAA. *Id*. Plaintiff further alleged that

9   Defendant took adverse employment actions against himself and other applicants based on

10  information contained in consumer reports without first complying with the notice requirements

11  of the FCRA and ICRAA. *Id*. Finally, Plaintiff alleged that Defendant improperly requested credit

12  information from applicants without complying with the CCRAA. *Id*.

13        On February 6, 2017, ProPacific filed its Notice of Removal of Civil Action to United

14  States District Court, Northern District of California pursuant to 28 U.S.C. § 1331, 28 U.S.C. §

15  1441(a), 28 U.S.C. § 1446(b), and 28 U.S.C. § 1367(a). *Id*. at ¶ 6. On February 24, 2017, Plaintiff

16  filed a Notice of Intent to File First Amended Class Action Complaint. *Id*. On March 3, 2017,

17  Plaintiff filed his First Amended Class Action Complaint. *Id*. On March 16, 2017, ProPacific filed

18  a Motion to Dismiss or Strike Claims Two, Four, Six, and Seven of Plaintiff's First Amended

19  Complaint. *Id*. On March 22, 2017, ProPacific filed its Notice of Constitutional Challenge of

20  ICRAA Statute. *Id*. On March 30, 2017, Plaintiff filed an Opposition to Defendant's Motion to

21  Dismiss or Strike. *Id*. On April 6, 2017, ProPacific filed a Reply in Support of Its Motion to

22  Dismiss or Strike. *Id*. On May 16, 2017, Defendant served its Initial Disclosures. *Id*. On May 26,

23  2017, the Court issued an Order Granting in Part and Denying in Part Motion to Dismiss or

24  Strike. *Id*. On June 30, 2017, Plaintiff filed a Second Amended Class Action Complaint for

25  Damages. *Id*.

26        **B.    Investigation**

27        After filing the lawsuit, the parties conducted a thorough investigation of the facts and

28  claims giving rise to the action, including: (1) formal and informal discovery, and meeting and

conferring with defense counsel about same; (2) reviewing and analyzing Defendant's

background check policies and other documentation; (3) conducting depositions; (4) researching

the applicable law and potential defenses; (5) constructing damage models; and (6) reviewing

information provided by Defendant at the mediation that was held in this case. *Id*. at ¶ 7. The

Class enumerated in this action is ascertainable because the Class Members may be readily

identified by reference to Defendant's records. *Id*. Defendant has agreed to share the information

from these records with the Settlement Administrator in order to identify and contact the Class

Members. *Id*.

The parties engaged in formal and informal discovery, including the exchange of

numerous documents and relevant data. *Id*. at ¶ 8. Plaintiff propounded the following requests on

Defendant: First Set of Interrogatories; First Request for Production of Documents; Second Set of

Interrogatories; First Set of Request for Admissions; and Second Set of Requests for Admissions.

*Id*. Defendant propounded the following requests on Plaintiff: First Set of Interrogatories and

First Request for Production of Documents. *Id*. The parties also conducted depositions. *Id*. More

specifically, one Class Member and also the "person most knowledgeable" were deposed. *Id*.

Plaintiff's counsel reviewed Defendant's background check policies and the actual

background check disclosure and authorization forms of those who applied for employment with

Defendant during the class period. *Id*. at ¶ 9.

Plaintiff's counsel thoroughly analyzed the evolving, and often conflicting case law

governing FCRA, CCRAA and ICRAA class actions. *Id*. at ¶ 10. This review and investigation

allowed Plaintiff's counsel to structure a settlement that provides benefits directly to the persons

who were required to use the allegedly unlawful forms. *Id*.

Plaintiff's counsel also conducted a study and investigation of the law and facts relating to

the claims that were asserted and that could have been asserted, as well as a study and

investigation of the scope and identity of the settlement class, and has concluded, taking into

account the benefits of this settlement, and the risks and delays of further litigation, as well as the

strengths and weaknesses of Plaintiff's claims and Defendant's defenses, that this settlement is

fair, reasonable, and adequate, and in the best interests of the Plaintiff and all members of the

1    classes affected by it. *Id*. at ¶ 11.

2            **C.        Settlement Efforts**

3            On August 29, 2017, the parties mediated this case before Baldwin Lee. Yeremian Decl.

4    at ¶ 13. During the mediation, the parties discussed all aspects of the case, including the risks of

5    litigation and the risks to both parties of proceeding with a motion for class certification as well as

6    the law relating to employment class actions. *Id*. The case did not settle at meditation. *Id*. At some

7    point thereafter counsel for Defendant filed a motion to disqualify Patrick Keegan (then counsel

8    for Plaintiff). *Id*. Out of an abundance of caution for protecting the interests of the Class, Plaintiff

9    sought new counsel and retained Class Counsel to take over representation. *Id*. Class Counsel

10   substituted into the action and the Court ultimately denied Defendant's motion to disqualify prior

11   counsel. *Id*. After reviewing the entire file, including all pleadings and discovery, and after

12   meeting and conferring with Plaintiff, Class Counsel, informed by his review of the totality of the

13   proceedings and of what transpired at mediation, engaged counsel for Defendant in further

14   settlement negotiations. *Id*. The parties continued to negotiate after mediation and ultimately

15   reached an agreement. *Id.* Ultimately, the parties agreed to settle the lawsuit according to the

16   terms set forth in the Stipulation. (*Id.; See* Exhibit 1 attached to Yeremian Decl. ("Joint

17   Stipulation").)

18           From Class Counsel's review of the facts, strengths and weaknesses of the case, the risks

19   and delays posed by further litigation, and Class Counsel's own prior litigation experience, Class

20   Counsel believe that the recovery for each class member is fair and reasonable, taking into

21   consideration the amounts received in other employment class actions, and the risks inherent in

22   litigation of this genre. Yeremian Decl. at ¶ 13. Further, and based on the settlement negotiations,

23   which were hard-fought and conducted in good faith and at arm's length between attorneys with

24   substantial experience litigating class actions, the Stipulation was the product of a non-collusive

25   settlement process in which the parties were forced to make significant compromises in the

26   interest of reaching a full and complete settlement of the lawsuit. *Id*.

27           **D.        The Parties Engaged in Arms'-Length Settlement Negotiations**

28           The proposed Settlement was the culmination of protracted discussions between the

- 4 -

1    parties following a thorough analysis of the pertinent facts and law at issue. *See* Yeremian Decl.

2    Following formal discovery, informal discovery and arms'-length negotiations, the parties

3    reached a settlement in principle on a class basis. *Id*. The parties held a mediation with a third

4    party neutral, Baldwin Lee, on August 29, 2017 which did not result in mediation. *Id* at ¶ 13.

5    **III. MATERIAL TERMS OF THE PROPOSED CLASS ACTION SETTLEMENT**

6        The parties have executed a Joint Stipulation of Class Action Settlement ("Joint

7    Stipulation") attached to the Yeremian Declaration as **Exhibit 1**. Defendant has agreed to pay

8    $250,000.00 ("Total Settlement Payment") on a non-reversionary basis to settle and release all

9    claims asserted by Plaintiff in the operative complaint on behalf of the proposed class. (Joint

10   Stipulation at ¶1(p)). The Stipulation defines the "Settlement Class" all individuals from whom

11   Defendant obtained written consent between December 20, 2014 and January 1, 2018, using

12   forms titled Disclosure and Authorization for Consumer Reports, Authorization for Background

13   Investigation, and Disclosure and Authorization for Consumer Reports, to conduct a background

14   check and upon whom Defendant subsequently obtained a background check. *Id*. at ¶ 1(f). The

15   amount remaining in the Total Settlement Payment after the following deductions have been

16   made (the "Class Settlement Fund") shall be available for distribution to class members who do

17   not opt out:

18       • Attorneys' Fees and Litigation Costs in the total amount of $87,000, which is

19   $75,000 in attorneys' fees (30% of the Total Settlement Payment) and $12,000.00 in verified

20   attorneys' costs; *Id*. at ¶ 5(a)(i)

21       • Incentive Award in the amount $5,000 to Plaintiff for his services as representative

22   of the Settlement Class; (*Id*. at ¶ 5(a)(iii)) and

23       • Settlement Administrator Costs which shall not exceed $6,000; *Id*. at ¶ 5(a)(ii)

24       The Notice of Settlement will provide instructions for how to opt-out of the Settlement

25   and provide instructions for how to object to the settlement at the Fairness Hearing. *Id*. at ¶ 8;

26   Exhibit 2 to Yeremian Decl.

27       Each recipient of any monies paid in accordance with the Joint Stipulation is responsible

28   for any taxes associated with the monies received by each recipient. *Id*. at ¶ 10. The Parties agree

that the Settlement Amount to the Settlement Class Members and the Incentive Award to Plaintiff

shall be correctly and appropriately allocated as 1099 income. *Id*. The Parties intend that no

portion of the Settlement Amount or Incentive Award constitutes a non-deductible payment

within the meaning of Section 162(f) of the Internal Revenue Code. *Id*. The payments made to

Settlement Class Members pursuant to this Agreement are not being made for any other purpose

and shall not be construed as compensation for purposes of determining eligibility for any health

and welfare benefits or unemployment compensation, and no benefit, including but not limited to

pension and/or 401k, shall increase or accrue as a result of any payment made as a result of this

settlement. *Id*.

## A. The Settlement Benefits

Under the Settlement, the parties estimate the Class Settlement Fund to be approximately

$152,000.00. Joint Stipulation at ¶ 5(iv). Because there are 111 Class Members in the Settlement

Class, each Class Member who does not opt out will receive $1,369.37 ($152,000.00 divided by

111).

## B. Settlement Class

All the Class Members have FCRA, ICRAA, and CCRAA claims. Plaintiff understands

Chico Produce "is an employer in the states of California, Nevada, and Arizona," ECF No. 153 at

24. However, the alleged violations extend only to California state employees because

background checks were performed only on California based truck driver employees. (Yeremian

Decl., ¶ 15).

## C. Differences between the Settlement Class and the Class Proposed in the Second Amended Complaint

The Settlement Class under the Settlement very closely resembles the class proposed in

the SAC. The class proposed in the SAC includes the following:

> Background Check Class [Third Claim]: All persons employed by ProPacific or who
> applied for a job with ProPacific who, on or after December 19, 2014, that were the
> subject of a consumer report that was obtained by ProPacific.

> Adverse Action Class [Fourth Claim]: All persons employed by ProPacific or who applied
> for a job with ProPacific who, on or after December 19, 2014, that were the subject of a

consumer report that was obtained by ProPacific, against whom ProPacific took adverse employment action based, and who were not provided a copy of such report in advance.

California Disclosure SubClass [Sixth and Seventh Claims]: All persons employed by ProPacific or who applied for a job with ProPacific who, on or after December 19, 2014, in California that were the subject of a consumer report that was obtained by ProPacific. SAC ¶¶ 33-34, 36.

Given the fact that the alleged FCRA violations extend only to California state employees since background checks were performed only on California employees, the "background check class" and the "California disclosure subclass" proposed in the SAC include the same individuals defined in the class under the settlement. The only difference is that the class under the settlement limits the class to those individuals who obtained written consent between December 20, 2014 and January 1, 2018.[1]

## D.  A Consumer-Friendly Settlement Payment Distribution

The parties have negotiated a mailing procedure to minimize the burden to Settlement Class Members. (Joint Stipulation, at ¶ 7). Class Members will not have to submit a claim form in order to receive payment. *Id*. at ¶ 8. Instead, all Settlement Class members to whom notice was sent and not returned as undeliverable, will be sent settlement checks and will have 120 days to cash them. *Id*. There will be no *cy pres* funds. Any funds from uncashed checks shall be tendered to the California Unclaimed Property Fund in the name of the Class Member. *Id*.

## E.  The Proposed Notice to the Settlement Class

Within five (5) business days after the Court's Order granting Preliminary Settlement Approval, Defendant shall provide the Settlement Administrator with the names and last known addresses for the members of the Settlement Class. *Id*. at ¶ 7(b). Within ten (10) business days of receipt of the Class List, the Settlement Administrator will mail the settlement materials to the members of the Settlement Class, who will have sixty (60) days to consider the terms of the Settlement. *Id*.

## F.  Proposed Attorney's Fees and Costs are Reasonable and Should be Approved

Under the Stipulation, subject to approval by this Court, Class Counsel will seek an award

---

[1] In the prior version of the settlement agreement, a subclass was called for which was eliminated after this Court denied the Motion for Preliminary Approval.

of fees equal to thirty percent (30%) of the of the Total Settlement Payment, amounting to $75,000.00, plus $12,000.00 for litigation costs, upon proof of receipt. *Id*. at ¶5(a); Exh. 1 at ¶ 5(a)(i). The requested fees are fair compensation for a law firm involved in undertaking complex, risky, expensive, and time-consuming litigation solely on a contingent basis. *See* Yeremian Decl. Defendant will not oppose Class Counsel's fee request.

The Ninth Circuit has recognized that an appropriate method for awarding attorneys' fees in class actions is to award a percentage of the "common fund" created as a result of the settlement. *Vincent v. Hughes Air West, Inc*. 557 F.2d 759, 769 (9th Cir. 1997).The purpose of the common fund/percentage approach is to "spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone." *Id*. Accordingly, under Ninth Circuit law, the District Court has discretion to choose either the percentage-of-the-fund method or the lodestar method. *In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1295-96 (9th Cir. 1994).

Several courts have, however, expressed frustration with the "lodestar" approach for deciding fee awards, which usually involves wading through voluminous time records. Thus, the percentage approach can be preferable to the lodestar in certain situations because: (1) it aligns the interests of class counsel and absent class members; (2) it encourages efficient resolution of the litigation by providing an incentive for early, yet reasonable, settlement; and (3) it reduces the demands on judicial resources. *In re Activision Sec. Litig.*, 723 F. Supp. at 1378-79 (N.D.1989).The Ninth Circuit has used the percentage of the common fund approach to determine the award of attorneys' fees. *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (approving attorneys' fee of 33 1/3% of settlement fund).

Class Counsel's application for attorneys' fees in light of the facts and circumstances surrounding this case is well within the range of reasonableness. Historically, courts have awarded percentage fees in the range of 20% to 50% of the common fund, depending on the circumstances of the case. *Newberg*, at §14.03; *see also In re Activision Sec. Litig.*, 723 F. Supp. at 1378. According to *Newberg*:

No general rule can be articulated on what is a reasonable percentage of a

common fund.Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented. *Newberg*, § 14.03.

*Newberg* further notes: "[A]chievement of a substantial recovery with modest hours expended should not be penalized but should be rewarded for considerations of time saved by superior services performed."*Id.* at §§ 14-10:14-11.

The attorneys' fees request provided for in the Stipulation is commensurate with judicial precedent. Both state and federal courts regularly approve fee awards equal to or greater than the percentage requested in this case. *See, e.g., In re Pac. Enterprises Sec. Litig*., 47 F.3d 373, 379 (affirming an award equal to 33% of the common fund); *In re Activision Sec. Litig.*, 723 F. Supp. at 1375 (awarding plaintiffs' counsel 32.8% of the common fund created to settle the litigation); *In re Ampicillin Antitrust Litigation* 526 F.Supp. 494 (D. D.C. 1981) (awarding 45% of $7.3 million settlement fund); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp.* 480 F. Supp.1195 (S.D.N.Y. 1979), *aff'd* 622 F.2d 1106 (2d Cir. 1980) (approximately 53% of the settlement fund awarded); *Van Gemert v. Boeing Co.* (S.D. N.Y. 1981) 516 F.Supp. 412, 420 (awarding 36% of settlement fund).

Here, Class Counsel has borne the entire risk and costs of litigation and will not receive any compensation until recovery is obtained. *See* Yeremian Decl. The Court should also consider the benefit obtained by Class Counsel on behalf of class members. Thus, the requested award for Class Counsel is reasonable.

California state and federal courts have recognized that an appropriate method for determining an award of attorneys' fees is based on a percentage of the total value of benefits to the State and putatively aggrieved employees by the settlement. *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 254 (2001); *Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Vincent v. Hughes Air West, Inc*., 557 F. 2d 759, 769 (9th Cir. 1997).

The California Supreme Court has held that the award of attorneys' fees in common fund wage and hour settlements should start with the percentage method. *See Laffitte v. Robert Half*

1   *Int'l*, 1 Cal. 5th 480, 503 (2016) ("We join the overwhelming majority of federal and state courts

2   in holding that when class action litigation establishes a monetary fund for the benefit of the class

3   members, and the trial court in its equitable powers awards class counsel a fee out of that fund,

4   the court may determine the amount of a reasonable fee by choosing an appropriate percentage of

5   the fund created."). The California Supreme Court affirmed a fee award representing 33 1/3

6   percent of the fund. *Id*. at 506. This was based on a lodestar amount that required a multiplier of

7   2.13. *Id*. at 487.

8        From the foregoing analysis, Class Counsel's requested attorneys' fees are fair and

9   reasonable. Here, Class Counsel has requested reasonable attorneys' fees in the amount of

10  **$75,000**, and Plaintiff submits that an upward departure from the 25% federal benchmark is

11  appropriate. In total Class Counsel has invested approximately **95** hours to date with an additional

12  **37.5** hours to be incurred by final approval. (Yeremian Decl., ¶ 40). Class Counsel's lodestar to

13  date is **$54,907.00**. Class Counsel expects this amount to increase in an amount to match or

14  exceed the $75,000.00 fee award in the settlement agreement. (Yeremian Decl., ¶¶40-43.) Counsel

15  respectfully submits an award of $75,000.00 in attorneys' fees is fair and reasonable. Counsel will

16  submit evidence and briefing to support the attorneys' fees request pursuant to the Court's

17  standing order at final approval.

18       Plaintiff and counsel submit the fees and costs awards are appropriate.

19  **G.  The Class Representative Incentive Award is Fair and Reasonable**

20       It is appropriate to provide a relatively modest additional incentive payment to the class

21  representative. See *Newberg*, § 12.1; *Van Vranken v. Atlantic Richfield Co.* (N.D. Cal. 1995) 901

22  F.Supp. 294; *Bogosian v.Gulf Oil Corp.* (E.D. Pa. 1985) 621 F.Supp. 27 (award of $20,000.00

23  each to two class representatives in antitrust case); *Bryan v. Pittsburgh Plate Glass Co.(PPG*

24  *Industries, Inc.)* (W.D. Pa. 1973) 59 F.R.D. 616, 617, *aff'd*494 F.2d 799 (3d Cir.), *cert. denied in*

25  *Abate v. Pittsburgh Plate Glass Co.* (1974) 419 U.S. 900 (payments of $17,500.00 to class

26  members who aided in advancing Title VII case).

27       Plaintiff is entitled to a reasonable incentive payment for his effort and initiative in

28  bringing and helping to prosecute this class action. Defendant made Plaintiff a job offer and

1   required Plaintiff to complete and sign numerous documents including a consumer report

2   authorization form. *See* Declaration of James Cunha (Cunha Decl.") filed concurrently herewith,

3   ¶ 3. Defendant hired Plaintiff and then terminated him 18 days later based on the items in the

4   consumer report that Defendant procured. *Id*. at ¶ 4-5. It took Plaintiff several weeks to find

5   another job, and he suffered actual harm in that he lost his job and income. *Id*. at ¶ 6. Due to the

6   actual harm that Plaintiff suffered, he brought this lawsuit forward.  Plaintiff spent a considerable

7   amount of time better apprising himself of his rights, deciding whether remedial action should be

8   taken, how it should be taken, and searching for attorneys. (Yeremian Decl., ¶44-48.) In the end,

9   Plaintiff decided to vindicate not only his own rights but also those of his co-workers by filing a

10   class action lawsuit.

11       The courage it took to do this should not be underestimated. *Id*. at ¶ 45. By suing

12   Defendant, Plaintiff increased his risk of retaliation by prospective employers. *Id.* Plaintiff has

13   now cost Defendant a substantial sum of money, and such conduct will not be lost on a

14   prospective employer who has to choose between an applicant who has never sued a prior

15   employer and one who has. *Id.* This risk is particularly real in the information age, where

16   employers can, more easily than ever, perform background checks of prospective employees,

17   sometimes with the stroke of a key. *Id.*

18       But Plaintiff did not allow his fears of the potential repercussions of being a class

19   representative deter them from acting for the benefit of class members. *Id.* at ¶ 46. To the

20   contrary, Plaintiff has been intimately involved in this case since its inception. *Id.* He has devoted

21   a substantial amount of time to helping Class Counsel effectively develop and prosecute this

22   action at every stage of the litigation. *Id.* Both before and after the filing of this lawsuit, Plaintiff

23   conferred with Class Counsel on numerous occasions to discuss every aspect of this case;

24   Plaintiff provided Class Counsel with information about Defendant and about the industry

25   generally, reviewed documents, identified witnesses, consulted Class Counsel throughout the

26   litigation repeatedly and at length, participated in the mediation process, monitored the progress

27   of the litigation with Class Counsel, and reviewed and signed the settlement agreement. *Id.*

28       Plaintiff has spent a significant amount of time with Class Counsel detailing his

1   knowledge of Defendant's practices and helping Class Counsel with the prosecution of this

2   action. *Id.* at ¶ 44. He has diligently, adequately, and fairly represented class members, and has

3   not placed his interests above any member of the putative class. *Id.* This sort of payment to a class

4   representative has been a common feature of settlements negotiated by Class Counsel and has

5   been routinely approved by trial courts. *Id.*

6       In light of the foregoing, Class Counsel believes that the incentive award in the amount of

7   $5,000.00 to the representative is fair and reasonable. *Id.*at ¶ 48. Although Class Counsel

8   appreciate that the Court has a duty to ensure that a class representative is not overcompensated at

9   the expense of the class, modest incentive awards in employment class actions, such as the one

10  here, are necessary not only to compensate a class representative for the time spent in the case,

11  but also, and more importantly, to encourage aggrieved employees to challenge questionable

12  employment practices notwithstanding the very real consequences they may face. *Id.*

13      **H.  The Settlement Administrator Selection Process**

14      ILYM Group, Inc. ("ILYM") has provided a quote not to exceed $6,000.00 to administer

15  this settlement. ILYM is a respected administrator, and its quote is reasonable.

16      On November 7, 2018, Class Counsel received a quote from ILYM for their settlement

17  administration process. *See* Exhibit 4 attached to Yeremian Decl. ILYM estimated the total

18  administration cost at $5,935.20 which includes $650.00 for case startup, $990.00 for project

19  management, $427.60 for notification/mailing, $3,177.60 for distribution, and $690.00 for case

20  conclusion. Class Counsel was pleased with this proposal and did not seek any other proposals.

21  On July 16, 2019, Class Counsel received a quote from CPT for $9,500.00. *See* Exhibit 5 attached

22  to Yeremian Decl. On July 18, 2019, Class Counsel received another quote from Rust Consulting

23  for $11,140.00. *See* Exhibit 6 attached to Yeremian Decl. Given the fact that the quotations from

24  CPT and Rust Consulting are far more expensive than the quotation from ILYM, Class Counsel

25  believes that the proposal from ILYM is the most cost effective.

26      Additionally, Class Counsel's firm has used or is currently using ILYM as their settlement

27  administrator for the past two years in the following cases: *Cruz vs. Dahan Investments, Inc.*,

28  (LASC BC657871); *Gutierrez Mercado vs. Diablo View Industries, Inc.*, (Orange County SC 30-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES FOR PRELIMINARY APPROVAL

2016-00852176-CU-OE-CXC); *Verdugo v. Denali Water Solutions, LLC,* (CACD 5:18-cv-00170-ODW(SHK); *Rodriguez vs. PD Products, LLC,* (LASC BC696710); *Titus vs. American Internet Mortgage, Inc.,* (SDSC 37-2018-00036347-CU-OE-CTL; *Galvez vs. Intercontinental Hotels Group Resources, Inc.,* (LASC BC562146); *Woods vs. Clear Channel Outdoor, Inc.,* (Alameda County SC RG17873634). Class Counsel has also used CPT, Rust, Simpluris and several other providers on numerous class actions over the recent years.

## I.    Implementation Schedule

An implementation schedule for the settlement including notice and final approval is included in the Proposed Order filed herewith. Plaintiff's Motion for Attorneys Fees will be filed 14 days prior to the deadline for class members to object or request exclusion.

## IV.    ARGUMENT

### A.    The Court Should Grant Preliminary Approval of the Class Settlement

#### 1. The Standard for Preliminary Approval Has Been Met Class

Class action settlements must be approved by the court, and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(l)(A). Court approval occurs in three steps: (1) preliminary approval of the proposed settlement, including (if the class has not already been certified) conditional certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to object or exclude themselves from the settlement; and (3) a final fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement. See Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

As a matter of public policy, courts both encourage the use of the class action device and favor settlement over continued litigation. *See, e.g., Linder v. Thrifty Oil Co.* (2000) 23 Cal. 4th 429, 434 ("Courts have long acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system."); *State v. Levi Strauss & Co.* (1986) 41 Cal. 3d 460, 471; *Class Plaintiffs v. City of Seattle* (1992) 955 F.2d 1268, 1276 ("[S]trong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned."); *Newberg*, § 11.41.

Moreover, courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered. In short, there is a presumption that the negotiations were conducted in good faith. *Newberg*, §11.51; *Rodriguez v. West Publ. Corp.*, 563 F.3d 948, 964 (9th Cir. 2009); *In re Chicken Antitrust Litigation* (N.D. GA 1980) 560 F. Supp. 957, 962; *Priddy v. Edelman* (6th Cir. 1989) 883 F.2d 438, 447; *Mars Steel Corp. v. Continental Illinois National Bank and Trust Co.* (7th Cir. 1987) 834 F.2d 677, 681. Courts do not substitute their judgment for that of the proponents, particularly when settlement has been reached by experienced counsel familiar with the litigation. *Rodriguez*, 2007 U.S. Dist. LEXIS 74767 at 24; *Hammon v. Barry* (D.D.C. 1990)752 F. Supp. 1087; *In re Armored Car Antitrust Litigation* (N.D. GA 1979) 472 F. Supp 1357; *Sommers v. Abraham Lincoln Federal Savings & Loan Association* (ED PA 1978) 79 F.R.D. 571.

In making a fairness determination, a Court must evaluate factors such as: (1) the strength of plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount offered in settlement; (5) the extent of discovery completed and stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Molski v. Gleich*, (9th Cir. 2003) 318 F.3d 937, 953.

The Settlement here satisfies each of these factors. Class Counsel conducted extensive informal discovery before entering into meaningful settlement negotiations in this matter. *See* Yeremian Decl. This discovery permitted Class Counsel to fairly evaluate the strengths of the case and the risks associated with ongoing litigation.

### 2. The Settlement is Reasonable in Light of the Strengths and Weaknesses of Plaintiff's Case

"An important consideration in judging the reasonableness of a settlement is the strength of the plaintiffs' case on the merits balanced against the amount offered in settlement." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). There is "no single formula" to be applied, but the court may presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by considering Plaintiffs' likelihood

of recovery. *Rodriguez v. West Pub. Corp.,* 563 F.3d 948, 965 (9th Cir. 2009).

Here, Plaintiff alleged that the disclosure and authorization forms that Defendant provided to Plaintiff and other applicants violated the FCRA, ICRAA, and CCRAA. Yeremian Decl. at ¶ 15.

In *Safeco Ins. Co. of Am. v. Burr,* 55 l U.S. 47, 57-59 (2007), the United States Supreme Court explained that "willful" applies not only to "knowingly" violating the FCRA, but to actions that constitute a "reckless disregard of statutory duty." *See also Willes v State Farm Fire & Cas. Co.,* 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard). Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and intentionally" committed the violations, the Court left room for defendants to claim "reasonable construction" or even "careless construction" of the Act as a defense. *See Long v Tommy Hilfiger U.S.A.,* 671 F.3d 371(3d Cir. 2012) (holding that defendant were not liable under the FCRA because their practice was merely a "careless interpretation" of the law and is not a "willful" violation).

Thus, the availability of these defenses to Defendant, coupled with Plaintiff's burden to show that Defendant engaged in "reckless disregard of statutory duty," make it challenging for Plaintiff to prove ultimate liability. *See In re Toys 'R' Us-Del., Inc. FACTA Litig.,* 295 F.R.D. 438, 451 (C.D. Cal. 2014) (finding that the "strength of plaintiff's case" factor "weighs in favor of settlement" where "willfulness under FCRA is a triable issues; *see also Torres v. Pet Extreme,* No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13 (E.D. Cal. 2015) (Findings & Rec. of Mag. Judge) ("Given the uncertainty of litigating this issue of willfulness [under 15 U.S.C. §1681n] ... [this] weighs in favor of settlement").

Indeed, a California district court recently dismissed similar claims brought by another plaintiff. *See Peikoff v. Paramount Pictures Corp*., No. 15-cv-00068-VC, Dkt. No. 13 (Order Granting Defendant's Motion to Dismiss), *2 (N.D. Cal. Mar. 25, 2015) (finding that employee's inclusion of a liability waiver provision in an FCRA disclosure is not willful and dismissing the claim). Additionally, some courts have refused to grant class certification for cases seeking statutory penalties on the grounds that liability "would be enormous and completely out of proportion to any harm suffered by the plaintiff." *Serna v. Big A Drug Stores, Inc*., No. 07-0276

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES FOR PRELIMINARY APPROVAL

1  CJC, 2007 U.S. Dist. LEXIS 82023, *10 (C.D. Cal. Oct. 9, 2007) (quoting *London v. Wal-Mart*
2  *Stores, Inc*., 340 F.3d 1246, 1255 n.5 (11th Cir. 2003)).

3      Under California law, consumer reports are classified under the CCRAA and/or the
4  ICRAA. In 1975, our Legislature repealed the 1970 Consumer Credit Reporting Act and enacted
5  ICRAA and CCRAA to govern consumer background reports, including checks conducted for
6  employment purposes and the statutes were modeled after FCRA. *Connor v. First Student, Inc*., 5
7  Cal. 5th 1026 (2018).  ICRAA applied to consumer reports that included character information
8  obtained only through personal interviews. *Id*. CCRAA is limited to consumer reports containing
9  specific credit information, and it expressly excludes character information obtained through
10 personal interviews. *Id*. However, both statutes govern reports that contain information relating to
11 character and creditworthiness, based on public information and personal interviews that were
12 used for employment background purposes. *Id*. Here, Defendant has argued that the ICRAA is
13 void for vagueness as applied to the conduct alleged here because Plaintiff's report contained
14 information related to Plaintiff's criminal background history, which could bear on both his
15 character and his creditworthiness, thus potentially implicating both the ICRAA and the CCRAA.
16 ECF No. 40 at 13-16. In *Connor v. First Student, Inc.*, the California Court of Appeal held that a
17 background check requiring compliance with the ICRAA may also be a 'credit report' requiring
18 compliance with the CCRAA does not render the ICRAA unconstitutionally vague under due
19 process clause. *Connor v. First Student, Inc.*. Thus, the fact that the two acts overlap in their
20 coverage of some consumer reports does not render the acts unconstitutionally vague as to the
21 extent of that overlap. *Id*.

22      In light of the challenges Plaintiff faces moving forward, the proposed Settlement
23 represents a fair and adequate resolution of these claims.

24      **3. The Risk, Expense and Complexity of the Case, Including the Risk of**
25      **Decertification, Favor Approval of the Settlement**

26      The parties are fully aware of the risks and complexity of the case. While this case is not
27 factually complex, the uncertain legal landscape creates a substantial risk of proceeding to
28 certification and beyond. Even if Plaintiff were to prevail in certification, the costs for both

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES FOR PRELIMINARY APPROVAL

1  parties would mount, and Plaintiff would face "substantial risk of incurring the expense of a trial

2  without any recovery." *See e.g., Toys 'R ' Us FACTA Litig.,* 295 F.R.D. 438, 451 (C.D. Cal.

3  2014.) As *Peikoff* and *Syed* demonstrate, Plaintiffs' claims, much of which rest on a showing of

4  technical violations, have faced judicial resistance in some courts, resulting in a judgment on the

5  pleadings or summary judgment. On the other hand, Defendant faces catastrophic liability if

6  Plaintiffs prevail entirely. This type of all-or-nothing prospect weighs in favor of approval." *Id.* at

7  452.

8        As to the California specific claims, there is a very high risk that class certification would

9  be denied because the California statute expressly does not permit class actions for statutory

10  damages. Cal. Civ. Code § 1786.50(a)(1); *see Espinoza v. Bluemercury, Inc.,* 2017 WL 10799553

11  *3 (N.D. Cal. 2017) (holding that in federal court in a Rule 23 class action, this state law

12  limitation applies).

13        Given the risks outlined above, the issues in this case were complex and the risk for

14  Plaintiff and the class members associated with this litigation was high. *See* Yeremian Decl. A

15  class trial would have required the retention of expensive expert witnesses, the accrual of

16  extensive litigation costs, and the parties would have had to spend a substantial amount of time.

17  In class actions, decertification is always a possibility. There is also the risk that a trial of this

18  magnitude can be unmanageable. (Yeremian Decl., ¶ 25). Given cases like *Duran v. U.S. Bank*

19  *Nat. Assn.*, 59 Cal. 4th 1, 34 (2014) that deal with the complexity of using statistical samples for

20  litigating class claims, decertification is a real risk in any class action of any size that Class

21  Counsel must take into account. Finally, given the complexity and unsettled nature of the issues,

22  it is likely that any outcome at trial would have resulted in a lengthy and costly appeal. An appeal

23  would result in further delay for the class members who have already waited years for resolution

24  in this matter.

25        **4. The Amount Offered in Settlement Supports Approving the Settlement**

26        The Ninth Circuit has held that the reasonableness of a settlement should be evaluated in

27  relation to the potential compensatory damages, not including any penalties that might be

28  awarded. *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 964 (9th Cir. 2009); *see also Miller*

*v. CEVA logistics USA Inc.,* 2015 WL 729638, *7(N.D. Cal. 2015) (accepting settlement valuation based on damages exclusive of interest and penalties).

The class members have relatively small amounts of money at stake, as the FCRA's damages provision limits recovery to between $100 and $1,000 or actual damages, whichever is greater. *See* 15 U.S.C. § 1681(n). Thus, the maximum recovery on a class wide basis under the FCRA is $111,000.00 ($1,000.00 for each of the 111 Class Members) or actual damages.

Additionally, under the ICRAA, "any actual damages sustained by the consumer as a result of the failure or, except in case of class actions, ten thousand dollars ($10,000), whichever sum is greater. Cal. Civ. Code § 1786.50(a)(1). Thus, ICRAA does not provide for the recovery of statutory damages on a class-wide basis.

Under the CCRAA, in the case of a negligent violation, a consumer is entitled to actual damages including court costs, loss of wages, attorneys' fees and, when applicable, pain and suffering." *See* Cal. Civ. Code § 1785.31. However, in the case of a willful violation, the consumer is entitled to actual damages and also punitive damages of not less than one hundred dollars ($100) nor more than five thousand dollars ($5,000) for each violation as the court deems proper. In the case of a class action, any person who willfully violates CCRAA may be liable for punitive damages in any amount that the court may allow and also the court shall consider among relevant factors the amount of any actual damages awarded, the frequency of the violations, the resources of the violator and the number of persons adversely affected.

The maximum recovery on a class wide basis under the ICRAA are actual damages and under the CCRAA are actual damages and punitive damages in any amount that the court may allow under CCRAA. Plaintiff cannot quantify an exact amount for the maximum recovery amount because if Class Members are unable to show actual damages, the relative value of their claims under ICRAA and CCRAA is zero. However, Plaintiff understands that there is value to these claims because Class Members are forgoing the possibility of pursuing $10,000 in statutory damages in an individual action. Plaintiff approximates the maximum amount of actual damages Class Members would receive is about $111,000.00 ($1,000.00 for each of the 111 Class Members) under the ICRAA and also $111,000 ($1,000.00 for each of the 111 Class Members)

1   under the CCRAA due to the fact that a majority of the Class Members did not suffer any actual

2   harm. There were only two Class Members including Cunha who were denied employment based

3   on the results of their background checks and suffered actual harm. Even though a majority of the

4   Class Members did not suffer any actual harm, an allocation of $1,000 in actual damages under

5   ICRAA and CCRAA is fair and reasonable given that there is value in releasing these claims.

6          Pursuant to the terms of the Settlement Agreement, each Class Member will receive

7   approximately $1,369.37 for releasing their FCRA, CCRAA, and ICRAA claims. Approximately

8   $500 is for releasing their FCRA claims, $435 for releasing their CCRAA claims, and $434 for

9   releasing their ICRAA claims.

10         The proposed recovery for Class Members is substantial and approaches the amount that

11  class members will likely receive if Plaintiffs were to prevail at trial. There can be no doubt that

12  this Settlement is the result of vigorous, adversarial, non-collusive, and arms-length negotiations

13  between the parties. In order to determine the approximate potential damages which would be

14  owed to each of the class members, Class Counsel analyzed applicable policies and the time

15  records for all class members. By analyzing this information, Class Counsel was able to estimate

16  the full value of the case if Plaintiff was to prevail at trial.

17         Once Class Counsel determined the maximum potential damages, Class Counsel was able

18  to determine a fair and reasonable settlement for the Class by analyzing the maximum value.

19  Class Counsel analyzed the likelihood of success on the merits. *Id*. Class Counsel believes that

20  the Class had a reasonable likelihood of success, however, Plaintiff also had to weigh

21  Defendant's contentions and evidence regarding what Defendant viewed as strong legal and

22  factual defenses to Plaintiff's claims.

23         After taking into account the risks and likelihood of success on each claim, Class Counsel

24  determined that the settlement amount of $250,000.00 was fair and reasonable.

25         Plaintiff feels that this Settlement is fair, reasonable, and advantageous to the class.

26  Yeremian Decl., ¶ 12.

27              **5. The Settlement was Finalized After a Thorough Investigation**

28         Courts may also consider the extent of discovery and the current stage of the litigation to

evaluate whether parties have sufficient information to make an informed decision to settle the action. *See Linney v. Cellular Alaska Partnership*, 151 F.3d at 1239. A settlement negotiated at an earlier stage in litigation will not be denied so long as sufficient investigation has been conducted. *See Eisen v. Porsche Cars North American, Inc.*, Case No. 11-09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014.)

Here, Plaintiff engaged in extensive investigation and discovery. *See* Yeremian Decl. Based on this discovery and on their independent investigation and evaluation, Plaintiff's counsel is of the opinion that this Settlement for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate.

### 6. The Views of Experienced Counsel Should Be Accorded Substantial Weight

The fact that sophisticated parties with experienced counsel have agreed to settle their dispute should be given considerable weight by courts, since "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Plaintiff is represented by experienced class action counsel possessing significant experience in class action matters. See Yeremian Decl. Plaintiff's counsel is in a good position to evaluable the likelihood of success and the settlement value of the case. Likewise, Defendant's counsel, Lewis Brisbois Bisgaard & Smith LLP, is a nationally recognized labor and employment defense firm. Thus, the parties' recommendation to approve this Settlement should "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (crediting the experience and views of counsel and the involvement of a mediator in approving a settlement resolving automotive defect allegations).

### 7. The Presence of a Governmental Participant

There is no governmental participant in this case. Therefore, this factor is neutral. *E.g., Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, 2017 WL 2289342 (E.D. Cal. 2017): "Because there are no separate governmental participants involved in the action, this factor is neutral…"

**8. The Reaction of the Class**

As notice has not gone out, it is premature to address this factor at this point.

**9. Conclusion**

To summarize, the Settlement here is fair because it provides a substantial payment to each class member for releasing his or her claims; extinguishes the risk of litigation; and provides a fair and adequate distribution of the settlement proceeds whereby the funds are allocated to class members.

**B.   Certificate for Settlement Purposes Only is Appropriate**

**1. The Proposed Class Meets the Requirements of Rule 23**

Before granting preliminary approval of the settlement, the Court should determine that the proposed settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632. An analysis of the requirements of Rule 23(a) and (b)(3), commonly referred to as numerosity, commonality, typicality, adequacy, predominance, and superiority, shows that certification of this proposed Settlement Class is appropriate.

**2. The Proposed Class is Sufficiently Numerous**

The numerosity requirement is met if the class is so large that joinder of all members would be impracticable. *Hanlon*, 150 F.3d at 1019; *Gay v. Waiters' & Dairy Lunchmen's Union*, 489 F. Supp. 282 (N.D. Cal. 1980), *aff'd* 694 F.2d 531 (9th Cir. 1982). Generally, courts will find a class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp. 3d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members).

Here, the "Settlement Class" are "all individuals from whom Defendant obtained written consent between December 20, 2014 and January 1, 2018, using forms titled Disclosure and Authorization for Consumer Reports, Authorization for Background Investigation, and Disclosure and Authorization for Consumer Reports, to conduct a background check and upon whom Defendant subsequently obtained a background check. Joint Stipulation at ¶ 1(f). In discovery, ProPacific has identified 111 Class members. Yeremian Decl. at ¶ 49(a). Thus, there are a

1  sufficient number of class members to warrant certifying this as a class action for settlement

2  purposes.

3              **3. There are Questions of Law and Fact that are Common to the Class**

4       The commonality requirement is met if there are questions of law and fact common to the

5  class. *Hanlon*, 150 F.3d at 1019. The operative criterion for commonality is "the capacity of a

6  classwide proceeding to generate common answers apt to drive the resolution of the litigation."

7  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The commonality requirement is

8  "construed permissively." *Hanlon*, 150 F.3d at 1019-1020. Where "the circumstances of each

9  particular class member vary but retain a common core of factual or legal issues with the rest of

10 the class, commonality exists." *Parra v. Bashas, Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008).

11      Here, each Class Member was adversely affected by the same uniform policies of

12 Defendant. Yeremian Decl. at ¶ 49(e). Specifically, Plaintiff alleges that ProPacific provided

13 Plaintiff and Class Members with consumer report authorization forms and that the consumer

14 report authorization forms violated the FCRA and ICRAA by containing extraneous information.

15 *Id.* The principal issues of controversy are: (1) whether ProPacific's uniform consumer report

16 authorization forms themselves violated sections 1681b(b)(2)(A) and 1786.16(a)(2)(B); (2)

17 whether ProPacific's systematic job application practices requiring that uniform consumer report

18 authorization forms be signed along with other documents violated sections 1681b(b)(2)(A) and

19 1786.16(a)(2)(B); and (3) whether ProPacific's violations were willful. *Id.* Therefore, based on

20 Class Counsel's investigation, the review of the discovery produced by Defendant, and their

21 discussions with Plaintiff, it is clear that the employment practices and policies of Defendant's

22 business are consistent and uniform. *Id.*

23           **4. Plaintiff's Claims are Typical of the Proposed Settlement Class**

24      The typicality requirement is met if the claims of the named representative are typical of

25 those of the class, though "they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

26 Plaintiff's claims are typical of the claims of the whole class because they arise from the same

27 factual basis and are based on the same legal theories as those applicable to the other class

28 members. *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).

Here, Plaintiff's claims are typical of those of other Class Members because they arose from the same factual basis and are based on the same legal theories, specifically, because they were all subject to uniform and consistent procedures used by ProPacific to procure FCRA and ICRAA governed consumer reports. Yeremian Decl. at ¶ 49(c). The central issues of this litigation (whether Defendant violates FCRA and ICRAA provisions), which would arise if this were an individual action brought by Plaintiff, apply to other class members as well, and the answer to these questions would determine Defendant's liability to the entire putative class. *Id*. Thus, Plaintiff's claims are typical of the claims of the putative class. *Id*. Accordingly, the typicality requirement is satisfied. *Id*.

**5. Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class**

The adequacy requirement is met if the Class Representative and Class Counsel have no interests adverse to the interests of the Class Members and are committed to vigorously prosecuting the case on behalf of the class. *Hanlon*, 150 F.3d at 1020.

Here, Plaintiff is a member of the proposed class, and he does not have any interests that are antagonistic to those of the other class members. Yeremian Decl. at ¶ 49. Because Plaintiff's claims are identical to those that would be asserted by the unnamed class members were they before the Court, Plaintiff has every interest in zealously representing the unnamed class members. Indeed, Plaintiff has devoted a substantial amount of time and energy to litigating this action and effecting a settlement. *Id*. Furthermore, Class Counsel are experienced in employment litigation, especially class actions, and have zealously represented the interests of the class in litigating this case. *Id*. Accordingly, the adequacy requirement is satisfied. *Id*.

**6. Common Issues Predominate Over Individual Issues**

Class certification is authorized where common questions of law and fact predominate over individual questions. *Hanlon*, 150 F.3d at 1022-23.

Here, the proposed Class is maintainable under Rule 23(b)(3), as common questions predominate over any question affecting only individual members, and class resolution is superior to other available methods for a fair resolution of the controversy. Yeremian Decl. at ¶ 49(f).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES FOR PRELIMINARY APPROVAL

Courts considering whether to certify a class alleging FCRA violations have found that a FCRA claim for statutory damages "does not require a showing of actual harm when a plaintiff sues for willful violations." *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412 (9th Cir. 2014). Because proof of actual injury is not required, individualized questions do not predominate. *See Ramirez*, 301 F.R.D. at 421.

Here, for purposes of the settlement, the predominance test is satisfied, as the proposed Settlement makes relief available for all Class Members based solely on easily ascertainable criteria, bypassing whatever individual evidentiary and factual issues that could arise in litigation in determining liability or damages. Yeremian Decl. at ¶49(f). Consequently, common questions predominate over individual issues.

### 7. Class Settlement is Superior to Other Available Means of Resolution

Particularly in the settlement context, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. *See Hanlon*, 150 F.3d at 1023. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Id*.

Here, there is little interest or incentive for Class Members to individually control the prosecution of separate actions. Yeremian Decl. at ¶49(g). Although the injury resulting from Defendant's policies and practices are real and significant, the cost of individually litigating each such case against Defendant would easily exceed the value of any relief that could be obtained by any one Class Member individually. *Id*. If Class Members are forced to litigate their claims individually this would result in about 111 individual actions against Defendant. *Id*. Here, the alternative methods of resolution are individual suits for relatively small amounts. *Id*. Hence, an individual suit would prove uneconomical for potential plaintiffs because litigation costs would dwarf a potential recovery. *Id*.

### C.  The Proposed Notice of Settlement Adequately Informs Settlement Class Members About the Case and Proposed Settlement

Constitutional due process requires that class members be provided with notice sufficient to give them an opportunity to be heard in the proceedings. *Mullane v. Central Hanover Bank &*

1   *Trust Co.*, 339 U.S. 306 (1950). Proper notice must provide the class members with sufficient

2   information to make an informed decision as to whether to accept or object to the settlement. *Id.*

3   at 314. The notice must apprise the class members of the pendency of the action; reasonably

4   convey information regarding the settlement and the class members' rights, entitlements, and

5   obligations; and afford class members the opportunity to present their objections. *Id.*

6   Additionally, upon certifying a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to "direct

7   to class members the best notice that is practical under the circumstances, including individual

8   notice to all members who can be identified through reasonable effort." Moreover, Rule 23(e)(1)

9   requires that before a proposed settlement may be approved, the Court "must direct notice in a

10  reasonable manner to all class members who would be bound by the proposal."

11          Here, the Notice of Settlement meets constitutional standards and the requirements of

12  Rule 23 because it provides all the information a reasonable person would need to make a fully

13  informed decision about the settlement. The Notice of Settlement will describe the Action;

14  explain how members of the Settlement Class were identified as members of the Class; indicate

15  the estimated settlement payment for each member of the Settlement Class; indicate that the

16  Court has preliminarily approved the settlement; provide instructions for how to opt-out of the

17  Settlement; and provide instructions for how to object to the settlement at the Fairness Hearing.

18  *See Churchill Village LLC v. Gen. Elec.*, 361 F.3d at 576 ("Notice is satisfactory if it generally

19  describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

20  investigate and to come forward and be heard.")

21          Here, the Notice of Settlement will be sent via first-class mail to each class member.

22  (Yeremian Decl., at ¶ 31.) The Settlement Administrator shall be responsible for completing an

23  address verification and skip trace process as necessary to locate members of the Settlement

24  Class. *Id.* Thus, most, if not all, class members will likely receive the Notice of Settlement. *Id.*

25          Additionally, Class Action Fairness Act of 2005 ("CAFA") notice is not required.

26          Pursuant to controlling authority, the proposed Notice of Settlement and method of

27  distribution fully comport with due process requirements. Therefore, the Court should approve

28  the Notice of Settlement and direct that it be distributed as proposed herein.

1    V.    **CONCLUSION**

2         The parties have negotiated a fair and reasonable settlement. Accordingly, Plaintiff moves

3    the Court to preliminarily approve the Settlement Agreement; direct the dissemination of notice to

4    the class as proposed; and set a hearing and briefing schedule for final Settlement approval and

5    Plaintiff's fee and expense application.

6    Dated: August 21, 2020                    Respectfully submitted,

7                                              DAVID YEREMIAN & ASSOCIATES, INC.

8

9                                              By   /s/ David Yeremian

10                                                 David Yeremian
                                                   Attorneys for Plaintiff
11                                                 and the putative class

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES FOR PRELIMINARY APPROVAL