1  DAVID YEREMIAN & ASSOCIATES, INC.
   David Yeremian (SBN 226337)
2  david@yeremianlaw.com
   Natalie Haritoonian (SBN 324318)
3  natalie@yeremianlaw.com
   535 N. Brand Blvd., Suite 705
4  Glendale, California 91203
   Telephone: (818) 230-8380
5  Facsimile: (818) 230-0308

6  Attorneys for Plaintiff
   JAMES CUNHA
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 JAMES CUNHA , an individual, on behalf of    Case No.: 17-CV-00597-JST
   himself and all others similarly situated,
                                                *[Assigned for all purposes to the Honorable Jon*
12                      Plaintiff,              *S. Tigar]*

13                      v.                      CLASS ACTION

14 INTELLICHECK, LLC, a California Limited      **NOTICE OF MOTION AND UNOPPOSED**
   Liability Company; CHICO PRODUCE,           **MOTION FOR FINAL APPROVAL OF**
15 INC., d/b/a PROPACIFIC FRESH, INC., a        **CLASS ACTION SETTLEMENT;**
   California Corporation; and DOES 1 through   **MEMORANDUM OF POINTS AND**
16 50, inclusive,                               **AUTHORITIES IN SUPPORT THEREOF**

17                                              *[Filed concurrently with Supporting Declarations*
                                                *of David Yeremian and Madely Nava; and*
18                                              *[Proposed] Order and Judgment]*

19                                              Date:          July 1, 2021
                                                Time:          2:00 p.m.
20                                              Courtroom.:    6

21

22

23

24

25

26

27

28

─────────────────────────────────────────────
PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on **July 1, 2021**, at **2:00 p.m.** or as soon thereafter as counsel may be heard, in Courtroom 6 of this Court, located at 1301 Clay St  Oakland, CA 94612, before the Honorable Jon S. Tigar, Plaintiff James Cunha ("Plaintiff"), will and hereby does move this Court for an order pursuant to Federal Rule of Civil Procedure 23 granting final approval of the Stipulation of Settlement of Class Action and Release ("Settlement" or "Settlement Agreement") entered into between the parties in this action. Specifically, Plaintiff seeks an order: (1) certifying the Class for settlement purposes only; (2) finding the Settlement fair, reasonable and adequate, and in the best interests of the Class Members; (3) approving Class Counsel's application for an award of attorneys' fees of  $75,000 and reasonable costs; (4) approving the Class Representative's application for $5,000.00; (5) approving the payment of the reasonable settlement administrative costs; (6) dismissing all of the class claims in the action with prejudice and releasing and forever barring any further Class Member Released Claims by Class Members who did not timely opt out of the Settlement; (7) dismissing all of the claims of Plaintiff James Cunha in this action with prejudice and dismissing Plaintiff as a party from the action and releasing and barring all of his Released Claims; and (8) granting final approval of the class action settlement in this matter and entering of a final order and judgment incorporating by reference the terms and definitions in the Settlement, e-filed ECF No. 198-2.

Plaintiff brings this Motion in accordance with the Court's Order Granting Plaintiff's Unopposed Motion for Preliminary Approval of the Class Action Settlement (ECF Nos. 210), and pursuant to the Court's authority to approve the Settlement upon finding that it is fair, reasonable, and adequate under Rule 23(e)(2) of the Federal Rules of Civil Procedure. The proposed settlement is fair, adequate, and reasonable and in the best interests of the Class as a whole. The procedures proposed by the parties have been adequate to ensure the opportunity of Class members to participate in, opt out of, or object to the Settlement, and it has been preliminarily approved. Settlement Administration has been completed successfully, and the Settlement provides reasonable compensation to the Class Members for their claims against Defendant.

Plaintiff requests entry of the concurrently provided [Proposed] Order and Judgment

1  granting final approval of the Settlement Agreement and awarding the Settlement Administrator,

2  ILYM Group, Inc. ("ILYM"), reasonable administration costs and fees of $6,000.00. The

3  Administration has been summarized and addressed by the Administrator in connection with the

4  Fees and Costs Motion (*see* ECF No. 212-1) and in the concurrently filed Declaration of Madely

5  Nava of ILYM in support of final approval. Plaintiff further requests that the Court approve the

6  requested attorneys' fees and costs and representative incentive award, as addressed in the Fees

7  and Costs Motion documents. Plaintiff respectfully submits good cause exists for granting the

8  Motion for the reasons set forth in the concurrently filed documents, and those submitted with the

9  Fees and Costs Motion (ECF No. 212 *et seq.*).

10         This Motion is based upon this Notice of Motion and Unopposed Motion, the

11  Memorandum of Points and Authorities, and the Declarations of David Yeremian (Class

12  Counsel), and Madely Nava (Settlement Administrator), along with the other documents filed

13  herewith, including the Settlement Agreement and Notice documents, any Exhibits to the

14  Declarations, and the [Proposed] Order and Judgment, the other pleadings and records on file in

15  this action, and the presentations of counsel and such oral or documentary evidence as may be

16  presented at the hearing on this unopposed Motion.

17

18  DATED:  June 14, 2021                    DAVID YEREMIAN & ASSOCIATES, INC.

19

20                                          By /S/ David Yeremian
                                               David Yeremian
21                                             Natalie Haritoonian
                                               Attorneys for Plaintiff James Cunha, and the
22                                             Settlement Class Members

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   STATEMENT OF RELEVANT BACKGROUND FACTS ..................................... 2

   A.   Procedural History and Settlement Approval Proceedings ............................ 2

   B.   The Proposed Settlement Fully Resolves Plaintiff's Claims ......................... 4

   C.   Class Notice and Class Response .................................................................. 4

III.  LEGAL AUTHORITY FOR FINAL APPROVAL ................................................ 6

   A.   The Standard of Review ................................................................................ 6

   B.   Relevant Ninth Circuit Considerations Favor Settlement Approval .............. 7

      1.   Strength of Plaintiff's Case.................................................................... 8

      2.   The Amount Offered in Settlement ........................................................ 9

      3.   Risk, Expense, Complexity, and Likely Duration of Litigation ........... 10

      4.   Risk of Maintaining a Class Action through Trial and Appeal ............. 11

      5.   Extent of Discovery Completed and Stage of the Proceedings ............. 12

      6.   Experience and Views of Counsel ........................................................ 12

      7.   Presence of a Governmental Participant................................................ 13

      8.   Reaction of the Settlement Class Members to the Settlement................ 13

      9.   Settlement Procedure ........................................................................... 14

   C.   Approval of Attorneys' Fees, Costs, Representative Incentive ..................... 14

   D.   Final Certification for Settlement Purposes Is Appropriate .......................... 16

   E.   Settlement Administration Costs Should Be Approved ................................. 17

IV.   NOTICE HAS BEEN DISSEMINATED TO THE CLASS PURSUANT TO THE
      COURT-APPROVED NOTICE PROGRAM……………………………………..18

V.    CONCLUSION.................................................................................................... 18

PLAINTIFF'S MEMORANDUM RE: MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

## TABLE OF AUTHORITIES

2

**State Cases**

3

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) .................................................... 11

4

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) ...................................... 9, 14

5

*Churchill Vill., LLC v. Seattle,* 361 F.3d 566, 576 (9th Cir. 2004) ..................................... 8

6

*Churchill Village v. General Electric*, 361 F.3d 566, 575 (9th Cir.), *cert. denied*, 543 U.S. 818
   (2004) ..................................................................................................................... 7

7

8

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.), *cert. denied*, 506 U.S. 953
   (1992) ..................................................................................................................... 6

9

*Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997)................................................... 11

10

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980)............................... 7

11

*Fecht v. Northern Telecom Ltd. (In re Northern Telecom Ltd. Sec. Litig.)*, 116 F. Supp. 2d 446
   (S.D.N.Y. 2000) .................................................................................................... 11

12

13

*Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985) ............. 14

14

*Grunin v. International House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975)........................... 6

15

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)........................................... 7

16

*Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986) ................................... 11

17

*In re Apple Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991).......... 11

18

*In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976). ...................... 14

19

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) ................................... 7

20

*In re Omnivision Tech., Inc.,* 2008 WL 123936  (N.D. Cal. 2008)............................................ 9, 10

21

*In re PaineWebber Ltd. Pships. Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997)............................ 14

22

*In re Patriot Am. Hospitality, Inc. Sec. Litig. (Open Market Action)*, 2005 U.S. Dist. LEXIS
   40995, *5 (N.D. Cal. 2005)................................................................................... 15

23

*In re Veritas Software Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 30880 at *14-15 (N.D. Cal. Nov.
   15, 2005).............................................................................................................. 10

24

*In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y 1985), *aff'd* (2d Cir.
   1986).................................................................................................................... 12

25

*Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973) ................................................... 8

26

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998)................................. 6

27

*Nelson v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987)............................................... 8

28

ii

*Officers For Justice v. Civil Serv. Comm.*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied*, 459
    U.S. 1217 (1983) ........................................................................................................................ 7

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999) ................................................. 11

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985) ..................................................... 6

*Robbins v. Koger Props, Inc.*, 116 F.3d 1441 (11th Cir. 1997) ..................................................... 11

*See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 213-14 (S.D.N.Y. 1992) .................. 13

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .............................................................. 12

*West Virginia Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ............................. 9

**State Statutes**

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-77 (1974) ......................................................... 6

**Rules**

Fed. R. Civ. P. 23(a) ..................................................................................................................... 11

Fed. R. Civ. P. 23(e)(2) ................................................................................................................... 7

**Treatises**

Manual for Complex Litigation (Second) § 30.44 (1985) ............................................................. 15

Newberg & Conte, *Newberg On Class Actions* (3d ed. 1992), § 11.41, pp. 11-91 .......................... 8

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3        On February 26, 2021, the Court granted preliminary approval of the proposed Settlement

4  reached by the parties in this action, and approved the parties' proposed notice procedure.  (ECF

5  No. 210).  Notice has been disseminated to the Class as directed by the Court.  By this motion,

6  Plaintiff James Cunha ("Plaintiff") respectfully requests that the Court: (1) certify the Class for

7  settlement purposes only; (2) find the Settlement fair, reasonable and adequate, and in the best

8  interests of the Class Members; (3) approve Class Counsel's application for an award of attorneys'

9  fees of $75,000.00 and reasonable costs; (4) approve the Class Representative's application for

10  $5,000.00; (5) approve the payment of the reasonable settlement administrative costs; (6) dismiss

11  all of the claims in this action with prejudice and release and bar any further Class Member

12  Released Claims by Class Members who did not timely opt out of the Settlement; (7) dismiss all

13  of the claims of Plaintiff in this action with prejudice and dismiss Plaintiff as a party from the

14  action and release and bar all of his Released Claims; and (8) grant final approval of the

15  Settlement in this matter.

16        Pursuant to the terms of the Settlement, Defendant Intellicheck, LLC and Chico Produce,

17  Inc. (doing business as ProPacific Fresh, Inc.) (since Defendant Intellicheck, LLC was later

18  dismissed all further references to "Defendant" or "Defendants" means Chico Produce, Inc.) will

19  pay $250,000.00 ("Total Settlement Payment"), which shall include: a Net Settlement Amount of

20  approximately $160,000 from which payments to Class Members shall be made, (2) requested

21  attorneys' fees of $75,000.00 and reasonable costs to Class Counsel; (3) settlement administration

22  costs of $6,000.00; and (4) a requested $5,000.00 Class Representative Incentive Award to

23  Plaintiff.[1]

24        The effectiveness of the notice program, including skip trace attempts, and the adequacy of

25  the Settlement, are reflected in the very positive reaction from the Class.  As of the filing date, no

26  Class Member has asked to be excluded from the Settlement, no Class Member has expressed

27

28  _____
[1] On April 23, 2021, Class Counsel filed a Motion for Approval of Attorneys' Fees and Costs and noticed it concurrently for hearing with the instant motion.  ECF No. 212.

1

their intention to object to the Settlement, and no Class Member has disputed their individual settlement payment.  The current participation rate in this case is 100%.  Declaration of Madely Nava of ILYM Group, Inc. In Support of Final Approval of Class Action Settlement ("Nava Final Approval Declaration").

For the foregoing reasons, and the other details provided below, the Settlement meets the standards for final approval and should therefore be approved.

## II.   STATEMENT OF RELEVANT BACKGROUND FACTS

### A.   Procedural History and Settlement Approval Proceedings

On December 20, 2016, Plaintiff filed a putative class action complaint entitled *James Cunha vs. Intellicheck, LLC, et. al.*, Case No. DR160670, in Humboldt County Superior Court. Plaintiff alleged class-wide claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), and the Investigative Consumer Reporting Agencies Act, California Civil Code § 1786, *et seq.* ("ICRAA"), relating to his seeking employment with Defendant. Plaintiff later amended to add a claim under the Consumer Credit Reporting Agencies Act, California Civil Code § 1785, *et seq.* ("CCRAA"). Plaintiff alleged that the disclosure and authorization forms Defendant provided to Plaintiff and other applicants, titled Disclosure and Authorization for Consumer Reports, Authorization for Background Investigation, and Disclosure and Authorization for Consumer Reports, improperly contained extraneous information, in violation of the FCRA, ICRAA and CCRAA. Plaintiff further alleged that Defendant took adverse employment actions against himself and other applicants based on information contained in consumer reports without first complying with the notice requirements of the FCRA and ICRAA. Finally, Plaintiff alleged that Defendant improperly requested credit information from applicants without complying with the CCRAA. (ECF No. 198-1, ¶ 5)

On February 6, 2017, ProPacific filed its Notice of Removal of Civil Action to United States District Court, Northern District of California pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1441(a), 28 U.S.C. § 1446(b), and 28 U.S.C. § 1367(a). On February 24, 2017, Plaintiff filed a Notice of Intent to File First Amended Class Action Complaint. On March 3, 2017, Plaintiff filed his First Amended Class Action Complaint. On March 16, 2017, ProPacific filed a Motion to

1   Dismiss or Strike Claims Two, Four, Six, and Seven of Plaintiff's First Amended Complaint. On

2   March 22, 2017, ProPacific filed its Notice of Constitutional Challenge of ICRAA Statute. On

3   March 30, 2017, Plaintiff filed an Opposition to Defendant's Motion to Dismiss or Strike. On

4   April 6, 2017, ProPacific filed a Reply in Support of Its Motion to Dismiss or Strike. On May 16,

5   2017, Defendant served its Initial Disclosures. On May 26, 2017, the Court issued an Order

6   Granting in Part and Denying in Part Motion to Dismiss or Strike. On June 30, 2017, Plaintiff filed

7   a Second Amended Class Action Complaint for Damages. (ECF No. 198-1, ¶ 6)

8           On August 29, 2017, the parties mediated this case with Baldwin Lee. During the

9   mediation, the parties discussed all aspects of the case, including the risks of litigation and the

10  risks to both parties of proceeding with a motion for class certification as well as the law relating

11  to employment class actions. The case did not settle at mediation. Later, counsel for Defendant

12  filed a motion to disqualify Patrick Keegan (then counsel for Plaintiff). Out of an abundance of

13  caution for protecting the interests of the Class, Plaintiff sought new counsel and retained Class

14  Counsel to take over representation. Class Counsel substituted into the action and the Court

15  ultimately denied Defendant's motion to disqualify prior counsel. After reviewing the entire file,

16  including all pleadings and discovery, and after meeting and conferring with Plaintiff, Class

17  Counsel, informed by his review of the totality of the proceedings and of what transpired at

18  mediation, engaged counsel for Defendant in further settlement negotiations. Ultimately, the

19  parties agreed to settle the lawsuit according to the terms set forth in the Stipulation. (ECF No.

20  198-1, ¶ 13)

21          On January 31, 2019, Plaintiff filed a motion for preliminary approval of a class action

22  settlement. (ECF No. 153). On June 25, 2019, the Court denied the motion without prejudice.

23  (ECF No. 157). On September 6, 2019, Plaintiff filed a renewed motion for preliminary approval.

24  (ECF No. 169). The Court again denied the motion without prejudice. (ECF No. 181). Then, on

25  August 21, 2020, Plaintiff filed another renewed motion for preliminary approval. (ECF No. 198).

26  On February 16, 2021, the Court issued an order in which it conditionally certified the proposed

27  class for settlement purposes only, preliminarily approved the amended settlement agreement,

28

1    notice plan, and allocation plan, and preliminary appointed David Yeremian as class counsel

2    Cunha as class representative, and ILYM Group, Inc. as the settlement administrator. (ECF No.

3    208). On February 26, 2021, the Court issued an order approving the proposed notice and setting a

4    date for the final fairness hearing (ECF No. 209).

5        On March 12, 2021, the Settlement Administrator received the class data file from

6    Defendant Counsel. (ECF No. 212-8, ¶ 5) The Notice Packet was subsequently mailed, via U.S.

7    First Class Mail, to all 111 class members, on March 26, 2021. (ECF No. 212-8, 7)

8        **The Proposed Settlement Fully Resolves Plaintiff's Claims.**

9        The proposed settlement resolves all class action claims against Defendant.  The settlement

10   provides a significant recovery for Plaintiff and the Settlement Class Members. Specifically, the

11   Total Settlement Payment of $250,000 is a guaranteed fund, with no reversion of funds to the

12   Defendant and it also provides for payments to all Settling Class Members without their need to

13   submit a claim form.  The settlement of this matter was achieved after significant investigation was

14   done by both Parties, including informal discovery, an extensive mediation information exchange

15   process under the supervision of the mediator, a full-day mediation session, and disclosure of

16   Defendant's data regarding the policies and proposed class necessary for Plaintiff to fully evaluate

17   this case.  Further details about the Settlement terms are addressed and summarized by Class

18   Counsel during Preliminary Approval. (*See* ECF No. 198-1) The Preliminary Approval Motion

19   also provide further details as to how the parties added and allocated Settlement value and the

20   bases for doing so. (*Id.*)

21       The portion of the Total Settlement Payment remaining after subtracting the Settlement

22   Administration Expenses, Court-approved attorneys' fees and litigation costs, Court-approved

23   Class Representative Incentive Award, and the portion of PAGA penalties payable to the LWDA,

24   shall be designated the Net Settlement Amount eligible for distribution to Qualified Claimants on

25   a pro rata basis. This amount is estimated to be around $160,900 (i.e., The Total Settlement

26   Payment of $250,000.00 minus the proposed Class Representative Incentive Award ($5,000), the

27   proposed Class Counsel Award (up to $75,000), reasonable costs, the anticipated Settlement

28   Administration Costs ($6,000)  Based on these calculations, the 111 Participating Claimants will

1    receive an estimated average gross payment of $1,369.37. (*See* Declaration of Madely Nava in

2    support of Final Approval Motion "Nava Final Approval Decl.", ¶ 15)

3            **C.        Class Notice and Class Response**

4            As authorized by the Court's order preliminarily approving the Settlement, the Parties

5    engaged ILYM Group, Inc. to provide settlement administration services.  (Nava Final Approval

6    Declaration. ¶ 3)  ILYM's duties have included: (a) printing and mailing the *Notice Class Action*

7    *and Proposed Settlement* (referred to as "Notice Packet"); (b) performing address updates and

8    verifications as necessary; (c) receiving and processing requests for exclusion from and objections

9    to the Settlement; (d) calculating individual settlement award amounts; (e) processing and mailing

10   settlement award checks; (f) handling the distribution of any unclaimed funds pursuant to the

11   terms of the Settlement Agreement; and (g) performing other tasks as the Parties mutually agree to

12   and/or the Court orders ILYM Group to perform.  The Class Notice summarized the settlement

13   terms, provided Class Members with an estimate of how much they would be paid if the

14   Settlement received final approval, and advised Class Members how to submit Requests for

15   Exclusion or object to the Settlement.

16           On March 12, 2021, counsel for Defendant provided ILYM with a mailing list, including

17   each Class Member's full name, last known address, last known telephone number, Social

18   Security Number and employment dates held in a position covered by the Settlement.   (ECF No.

19   212-8, ¶ 5)

20           As part of the preparation for mailing, all 111 Class Member names and addresses

21   contained in the Class List were then processed against the National Change of Address

22   ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of

23   updating and confirming the mailing addresses of the Settlement Class Members before mailing of

24   the Class Notice. (ECF No. 212-8, ¶ 6) The NCOA contains requested change of addresses filed

25   with the USPS. To the extent that an updated address was found in the NCOA database, the

26   updated address was used for the mailing of the Class Notice. (*Id.* at 6) To the extent that no

27   updated address was found in the NCOA database, the original address provided by defense

28   counsel was used for the mailing of the Class Notice. (*Id.*)

1    Only 15 Class Notices have been ultimately deemed undeliverable as no better addresses

2 were found for these Class Members after conducting a skip trace search. (Nava Final Approval

3 Decl. ¶ 8)

4    As of June 11, 2021, the Settlement Administrator reports no requests for exclusion from

5 the Settlement. (Nava Final Approval Decl. ¶ 10) The deadline to request exclusion from the

6 Settlement was May 25, 2021. (Nava Final Approval Decl. ¶ 10)

7    ILYM reports a total of 111 Class Members will participate in the Settlement, representing

8 a 100% participation rate. (Nava Final Approval Decl. ¶ 12)

9    ILYM Group will charge $6,000 for fees associated with the administration of the

10 settlement. This includes all costs incurred to date, as well as the estimated costs involved in

11 completing the settlement. (Nava Final Approval Dec. ¶14)

12    Plaintiff submits the notice and claims process has been successful and complied with

13 constitutional due process. *See, Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985)

14 (holding that "a fully descriptive notice [that] is sent [by] first-class mail to each class member,

15 with an explanation of the right to 'opt out,' satisfies due process"); *Grunin v. International House*

16 *of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (holding that "individualized notice by mail to the

17 last known address [is] the 'best notice practicable' in a class action contest"), *cert. denied*, 423

18 U.S. 864, 96 S. Ct. 124, 46 L. Ed. 2d 93 (1975), *citing Eisen v. Carlisle & Jacquelin*, 417 U.S.

19 156, 174-77 (1974).

20 **III.    LEGAL AUTHORITY FOR FINAL APPROVAL**

21    **A.    The Standard of Review**

22    Under Rule 23(e) of the Federal Rules of Civil Procedure, "A class action shall not be

23 dismissed or compromised without the approval of the court, and notice of the proposed dismissal

24 or compromise shall be given to all members of the class..." In deciding whether to approve a

25 proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements,

26 particularly where complex class action litigation is concerned." *See Linney v. Cellular Alaska*

27 *Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d

28 1268, 1276 (9th Cir. 1992), *cert. denied*, 506 U.S. 953 (1992). Therefore, in making its assessment

1    pursuant to Rule 23(e), the Court's evaluation of what is otherwise "a private consensual

2    agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to

3    reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or

4    collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

5    reasonable, and adequate to all concerned." *Officers For Justice v. Civil Serv. Comm.*, 688 F.2d

6    615, 625 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983); *see also In re Mego Fin. Corp. Sec.*

7    *Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.

8    1998).

9         A settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor

10   should the proposed settlement "be judged against a hypothetical or speculative measure of what

11   might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. To the

12   contrary, the involvement of experienced class action counsel and the fact that the settlement

13   agreement was reached in arms' length negotiations, after relevant discovery had taken place,

14   create a presumption that the agreement is fair. *See, Ellis v. Naval Air Rework Facility*, 87 F.R.D.

15   15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).

16        As explained above, the settlement was reached through informed negotiation by

17   experienced counsel on both sides, and after extensive investigation, informal discovery,

18   amendment of the complaint, mediation with an experienced and respected wage and hour

19   mediator, and conferences regarding exact terms and conditions of the settlement and notice. The

20   mediator's efforts in the mediations also ensured the interests of the Class Members were

21   adequately protected. Under these circumstances, the settlement should be afforded a presumption

22   of fairness.

23        **B.    Relevant Ninth Circuit Considerations Favor Settlement Approval**

24        A court can approve a class action settlement that binds class members "only after a

25   hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A

26   presumption of fairness exists where: (1) the settlement is reached through arms-length bargaining;

27   (2) investigation and discovery are sufficient to allow counsel and the Court to act intelligently; (3)

28

1    counsel is experienced in similar litigation; and (4) the percentage of objections is small.  Newberg

2    & Conte, *Newberg On Class Actions* (3d ed. 1992), § 11.41, pp. 11-91.

3           The Ninth Circuit has explained that courts should consider "some or all" of the following

4    factors in determining whether a proposed settlement is fair, reasonable, and adequate:  (1) the

5    strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further

6    litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

7    in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the

8    experience and views of counsel; (7) the presence of a governmental participant; and (8) the

9    reaction of the class members to the proposed settlement. *Churchill Village v. General Electric*,

10   361 F.3d 566, 575-576 (9th Cir. 2004), *cert. denied*, 543 U.S. 818 (2004), citing *Hanlon*, 150 F.3d

11   at 1026; *see also Linney*, 151 F.3d at 1242. One factor alone may prove determinative. *Id.*

12   Ultimately, "[s]trong judicial policy favors settlements." *Churchill Vill., LLC v. Seattle*, 361 F.3d

13   566, 576 (9th Cir. 2004) (omission and quotation marks omitted*) (*quoting *Churchill Vill., L.L.C. v.*

14   *Gen. Elec.*, 361 F.3d at 576).

15          The relevant *Churchill* factors weigh in favor of final approval. Here, the risk, expense,

16   complexity, and likely duration of further litigation, as well as the risk of maintaining class action

17   status throughout the trial, were high. Defendant would have contested class certification by

18   arguing that individualized issues predominate and by contesting typicality. (Yeremian Decl., at

19   ECF No. 198-1) This is a complex class action case, and establishing liability and proving the

20   amount of damages sustained would be risky, especially in view of Plaintiff's investigation. (*See,*

21   *e.g.*, ECF No. 198-1)

22          **1.       Strength of Plaintiff's Case**

23          In evaluating a settlement in this type of complex litigation, courts have long recognized

24   that such litigation "is notably difficult and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D.

25   525, 528 (S.D.N.Y. 1973) (footnote omitted.). Thus, compromise is particularly appropriate. *Nelson*

26   *v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987). The strengths and risks associated with

27   Plaintiff's claims are addressed by Class Counsel in their Motion for Preliminary Approval.   (ECF

28   No. 198-1) Plaintiff's arguments as to how to value the claims and Defendant's arguments against

1    specific claims have also previously been summarized by Class Counsel in connection with

2    addressing the value assigned to each claim. (ECF No. 198-1)

3          To succeed at trial, Plaintiff would have to prevail on each and every element of his claims.

4    While Plaintiff believes he has arguments and evidence to counter each one of Defendant's

5    positions, there is no guarantee that the Court or jury would agree. *See West Virginia Chas. Pfizer*

6    *& Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("it is known from past experience that no matter

7    how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*,

8    440 F.2d 1079 (2d Cir.), cert. denied, 404 U.S. 871 (1971).  *See also* Plaintiff's Motion for

9    Preliminary Approval of Class Action Settlement (ECF No. 198-1).

10          **2.      The Settlement Amount is a Fair Compromise in Light of the Strength**

11                **of Plaintiff's Claims and the Litigation Risks and Uncertainties**

12          As discussed above and in Plaintiff's Motion for Preliminary Approval of Class Action

13    Settlement (ECF No. 198-1), the Settlement gives substantial monetary benefit to all Settlement

14    Class Members.  With an average individual settlement payment of approximately **$1,369.37**, this

15    represents a substantial and real recovery that is well-within the range of reasonableness for the

16    benefit of the class members.

17          Plaintiff submits the Settlement value of **$250,000.00** for 111 Class Members is fair and

18    reasonable in light of the risk of no recovery following protracted litigation and for all the reasons

19    addressed in this Motion and the Motion for Preliminary Approval. (ECF No. 198-1)  Based on the

20    numerous risks and unresolved questions of law associated with continuing to litigate this case, it is

21    in the best interests of the Settlement Classes to receive a certain and substantial award. Courts in

22    the Ninth Circuit have observed: "simply because a settlement may amount to only a fraction of the

23    potential recovery does not in itself render it unfair or inadequate. Compromise is the very nature of

24    settlement." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979); *see also Nat'l Rural*

25    *Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (it is "well settled law that

26    a proposed settlement may be acceptable even though it amounts to only a fraction of the potential

27    recovery"); *see e.g.*, *In re Omnivision Tech., Inc.*, 2008 WL 123936 (N.D. Cal. 2008) ($13.75

28    million settlement approved despite over $151.8 million estimate of damages through trial). The

1   settlement here is significantly more than a "fraction" and in fact provides a reasonable recovery

2   when considering the associated risk factors involved. The Settlement amount is fair and reasonable

3   in light of the uncertainties associated with continued litigation.

4            **3.    Risk, Expense, Complexity, and Likely Duration of Litigation**

5            Defendant vigorously disputed that the claims in this action have merit and would have

6   continued to assert legal and factual grounds to defend against this action. Defendant further does

7   not concede that certification is appropriate or a class trial would be manageable. If there was no

8   settlement and Plaintiff proceeded through Class certification, expert discovery and trial preparation

9   would be expensive and complex. While certainly attainable from Plaintiff's perspective, victory in

10  such a complex trial is hardly assured.  *See In re Veritas Software Corp. Sec. Litig.* 2005 U.S. Dist.

11  LEXIS 30880 at *14-15 (N.D. Cal. Nov. 15, 2005) (challenges in proving damages and other

12  litigation risks supported approval of settlement).

13           While Defendant has agreed to settle the action, if this case were to proceed, Defendant

14  would continue to assert defenses against liability and as to class certification. Therefore, while

15  Plaintiff believes the claims are meritorious and the Class would be able to establish liability,

16  Plaintiff recognizes the uncertainties of trial and the risks inherent in establishing liability in a

17  complex case of this nature.

18           By approving the Settlement, the Court can guarantee recovery for each of the **111**

19  Participating Class Members without having the Class face the risk of trial and a possible appeal.

20  Expenses incurred for a trial would severely deplete any eventual recovery. Further, post-trial

21  motions and appeals could force class members to wait many more years for any recovery, further

22  reducing its value. Consequently, resolution of this case before trial will substantially and

23  meaningfully benefit the Settlement Class, while reasonably accounting for the risks associated

24  with a protracted litigation.

25           **4.    Risk of Maintaining a Class Action through Trial and Appeal**

26           Maintaining a class action is an expensive and risky enterprise. In addition to the thousands

27  of hours of time and money spent, with no hope of remuneration until and unless there is either a

28  settlement or a judgment, there is also the ever-present possibility that any victory attained by a

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1  plaintiff can be overturned. *See, e.g., Fecht v. Northern Telecom Ltd. (In re Northern Telecom Ltd.*

2  *Sec. Litig.)*, 116 F. Supp. 2d 446 (S.D.N.Y. 2000) (summary judgment granted after seven years of

3  litigation); *Robbins v. Koger Props, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81

4  million for plaintiffs against an accounting firm reversed on appeal on loss causation ground and

5  judgment entered for defendant); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997)

6  (affirming the lower court's granting of summary judgment in favor of defendants); *In re Apple*

7  *Computer Sec. Litig.*, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) (class won jury

8  verdict against two individual defendants, but district court vacated judgment on motion for

9  judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)

10 (where the class won a substantial jury verdict and a motion for judgment notwithstanding the

11 verdict was denied; however, on appeal, the judgment was reversed and the case dismissed – after

12 11 years of litigation).

13        Although the Class has been certified at this time for purposes of settlement only, there is

14 no assurance that it would continue to remain certified. "A district court has a duty to assure that

15 a class once certified continues to be certifiable under Fed. R. Civ. P. 23(a)." *Petrovic v. Amoco*

16 *Oil Co.*, 200 F.3d 1140, 1145 (8th Cir. 1999), citing *Hervey v. City of Little Rock*, 787 F.2d 1223,

17 1227 (8th Cir. 1986). Should this Court not finally approve the Settlement, Plaintiff would need

18 to prevail upon his motion for class certification, which Defendant would vigorously oppose.

19 Additionally, the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541

20 (2011) substantially undermines Plaintiff's ability to certify a class action. Plaintiff must

21 affirmatively demonstrate both that common questions of law and fact exist and that the

22 methodology utilized for showing harm on a class-wide basis actually works, and Class Counsel

23 addresses the risks it faced. (Yeremian Decl. at ECF No. 198-1) Defendant also believes *Dukes*

24 forecloses "trials by formula," finding that this methodology violates its due process rights

25 because it does not allow defendants to challenge and rebut any claims inevitably resulting in

26 payment to persons not damaged, and it poses issues. Federal courts have cited *Dukes* to deny

27 class certification and to decertify cases.

28

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1    Settlement at this time will avoid this uncertainty, and additional substantial costs, such as

2    those that have already been incurred by both Parties and will avoid the delay and risks that

3    would be presented by the further prosecution of this litigation. The instant settlement eliminates

4    these risks.

5    **5.    Extent of Discovery Completed and Stage of the Proceedings**

6    The extent of evidentiary review completed and the stage of the proceedings bear on

7    whether settlement should be approved. Courts look to whether investigation of the facts and

8    evidence is sufficient to allow counsel and the court to act intelligently. *In re Warner*

9    *Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y 1985), *aff'd* (2d Cir. 1986).

10   Discovery and investigation allowed both parties to assess their relative positions and come

11   to the conclusion, based on the analysis of the information, that settlement at this stage of the

12   litigation was proper and that the settlement terms and amount were fair, adequate and reasonable.

13   (ECF No. 198-1) Counsel also completed informal discovery and were in possession of the

14   documents and data necessary for estimating liability exposure at the mediations. (*Id.*)

15   By the time the settlement was reached, the action had proceeded to the point where both

16   Plaintiff and Defendant had "a clear view of the strengths and weaknesses of their cases." *In re*

17   *Warner Communications Sec. Litig.*, 618 F. Supp. at 745. At the time the Parties mediated the

18   action, Plaintiff had been litigating the action for many months and had conducted extensive

19   informal investigation and retained an expert to review data and employment practices.

20   Accordingly, the stage of the proceedings, and the amount of the discovery completed, strongly

21   favor approval of the Settlement. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 213-14

22   (S.D.N.Y. 1992).

23   **6.    Experience and Views of Counsel**

24   Courts routinely presume a settlement is fair where it is reached through arm's-length

25   bargaining. *See Hanlon*, 150 F.3d at 1027 (affirming trial court's approval of class action

26   settlement where parties reached agreement after several months of negotiation and the record

27   contained no evidence of collusion); *see also Satchell v. Fed. Express Corp.*, No. C 03-2659 SI,

28   2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator

12

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   in the settlement process confirms that the settlement is non-collusive."); *Carter v. Anderson*

2   *Merchandisers, LP*, No. EDCV 07-0025-VAP, 2010 WL 1946784, at *7 (C.D. Cal. May 11,

3   2010) (citing *Satchell*). Furthermore, where counsel are well-qualified to represent the proposed

4   class in a settlement based on their extensive class action experience and familiarity with the

5   strengths and weakness of the action, courts find this factor to support a finding of fairness.

6   Carter, 2010 WL 1946784, at *8 ("Counsel's opinion is accorded considerable weight.").

7          Here, the Settlement is the product of arms-length negotiations conducted by capable

8   counsel who are experienced in class action litigation and have invested many hours, and the

9   assistance of an experienced wage and hour class action mediator. (ECF No. 198-1). Defendant is

10  represented by very skilled and capable counsel from a law firm of top tier attorneys. (ECF No.

11  198-1)

12         Having conducted extensive informal investigation and discovery in this case and having

13  assessed the risks of continued litigation, it is the view of Class Counsel that the settlement

14  appropriately reflects the relative strengths of the parties' respective claims and defenses, as well

15  as the substantial risk presented in continuing the litigation, while recognizing the uncertainty,

16  risk, expense, and delay attendant to continuing the action through trial and any appeals. (ECF

17  No. 198-1) Such recommendations should lend a presumption of reasonableness to the

18  Settlement. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Fisher Bros. v.*

19  *Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ellis*, 87 F.R.D. at 18

20  (the view of the attorneys actively conducting the litigation, while not conclusive, "is entitled to

21  considerable weight"). Moreover, "[c]ourts have consistently refused to substitute their business

22  judgment for that of counsel, absent evidence of fraud or overreaching." *In re King Res. Co. Sec.*

23  *Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976).

24                    **7.        Presence of a Governmental Participant**

25         There is no governmental participant in this case. Therefore, this factor is neutral. *E.g.,*

26  *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, 2017 WL 2289342 (E.D. Cal. 2017):

27  "Because there are no separate governmental participants involved in the action, this factor is

28  neutral…"

1      **8.      Reaction of the Settlement Class Members to the Settlement**

2          "A favorable reception by the Class constitutes 'strong evidence' of the fairness of a

3  proposed settlement and supports judicial approval." *In re PaineWebber Ltd. Pships. Litig.*, 171

4  F.R.D. 104, 126 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Here, **111** Class Members out

5  of **111** in the Settlement Class have all become Participating Class Members. (Nava Decl., ¶ 12.)

6  This demonstrates a "favorable reception" by class members to the settlement. Accordingly, this

7  factor of the test is satisfied and supports final approval of the Settlement.

8          The Settlement has been well-received by the Class members. As May 25, 2021 was the

9  deadline to request exclusion from the Settlement or raise any objections and no Class members

10  have objected to the settlement and there are no requests for exclusion. (Nava Final Approval Decl.,

11  ¶ 11-12.)

12          Thus, given the present number of **111** Participating Class Members, the Class members

13  have responded with a **100%** participation rate.

14      **9.      Settlement Procedure**

15          Another factor that may be considered by the Court is "the procedure by which the

16  settlement was arrived at." *See In re Patriot Am. Hospitality, Inc. Sec. Litig. (Open Market*

17  *Action)*, 2005 U.S. Dist. LEXIS 40995, *5 (N.D. Cal. 2005) ("To these factors, the court adds (9)

18  the procedure by which the settlements were arrived at, see Manual for Complex Litigation

19  (Second) § 30.44 (1985) . . . ."). As noted above and described in the Motion for Preliminary

20  Approval (ECF No. 198-1), the Settlement was achieved only after protracted and complex arms-

21  length negotiations by experienced counsel, and with the assistance of an experienced mediator.

22  There is no doubt that the settlement process was adversarial and, therefore, favors approval of

23  the final settlement. *See id.* at *8 (finding that "vigorously adversarial" procedure for arriving at

24  settlement "militates in favor of the settlement").

25      **C.      Approval of Attorneys' Fees, Costs, Class Representative Incentive Award**

26          Plaintiff and Class Counsel have negotiated a Total Settlement Payment of **$250,000.00** for

27  **111** employee Class members in connection with this non-reversionary Settlement. (Yeremian

28  Decl., ¶ 10.) Administration of the Settlement has progressed past the deadline to object or opt-out

of the Settlement on **May 25, 2021**, and the final approval hearing is approaching on **July 1, 2021**. Plaintiff therefore requests, without opposition from Defendant, that Plaintiff's Counsel be awarded at final approval, from the preliminarily approved Total Settlement Payment of $250,000.00, our attorney's fees (not to exceed one-third of the Total Settlement Payment, i.e. $75,000) and reasonable costs, as awarded by the Court (with present costs at approximately $3,101). (Yeremian Decl., ¶ 10.)

Class Counsel has provided support for its request that the Court award attorneys' fees based on Counsel's submissions in connection with this Motion and efforts advancing this litigation to and through Settlement. (Yeremian Decl., ¶¶ 10-19; ECF No. 212-1, ¶¶ 17-26) David Yeremian & Associates, Inc., and the other associate attorney, Natalie Haritoonian, who has worked on this case, have the background, resources, and experience to zealously represent Plaintiff and the Settlement Class Members, and have done so. (Yeremian Decl., ¶¶ 6-7) Class Counsel has also addressed the reasonable of its hourly rates. (Yeremian Decl., ¶¶ 12-18; ECF No. 212-1, ¶¶ 17-26)

Class Counsel has provided the Court with a summary of the hours invested in this case and the Time and Task Detail listings for the attorneys working on it addressing their hours and attorneys' fees for the lodestar cross-check. (Yeremian Decl., ¶ 10-19; ECF No. 212-1, ¶¶ 17-26)

As reported in connection with the filing of the Fees and Costs Motion, Class Counsel incurred approximately 204 attorney hours through the **April 23, 2021** filing, amounting to **$112,500** in attorneys' fees. (Yeremian Decl., at ECF No. 212-1, ¶ 30) Since **April 23, 2021** and through the filing of the present motion, Class Counsel reports that it has incurred an additional **15.5 hours** between Mr. Yeremian and Ms. Haritoonian, which results in **219.5 hours** total hours and **$119,437** in total attorneys' fees through the filing of this Motion. (Yeremian Decl., ¶¶ 17-18) This number is above the requested amount of **$75,000,** in reasonable attorneys' fees, and will increase when considering all the further hours counsel will incur in taking this action through final approval hearing and funding and disbursement. (Yeremian Decl., ¶ 17-18) Therefore, no lodestar multiplier will be required to award Class Counsel reasonable attorneys' fees of **$75,000,**

1    which Class Counsel and Plaintiff have created for the Class members. Class Counsel respectfully

2    requests that the Court award attorneys' fees in the amount of **$75,000**.

3          Class Counsel's declaration in support of the Fees and Costs Motion also reported that it

4    had incurred **$3,101.77** in litigation costs through **April 23, 2021**. (Yeremian Decl., ¶ 17) Since

5    that time, and to take this action through the final approval hearing, Class Counsel reports that it

6    has not incurred any additional expenses. (Yeremian Decl., ¶ 21). The Settlement as preliminarily

7    approved allows for reasonable costs. Any portion of the requested Class Counsel Award ($75,000

8    in fees and reasonable costs) or the Class Representative Incentive Award to Plaintiff ($5,000) that

9    is not awarded to Class Counsel or Plaintiff will be added back into the Net Settlement Amount

10   and will be distributed to Settlement Class Members as provided in the Agreement. (Yeremian

11   Decl., Exhibit A.) Class Counsel also requests that the Court award it costs reimbursements for

12   reasonable litigation costs and expenses incurred in this action in the amount of **$3,101.77**.

13         Finally, Class Counsel and Plaintiff request that the Court award Plaintiff the requested

14   Class Representative Incentive Award of **$5,000.00**. Class Counsel has addressed the

15   contributions Plaintiff has made to this litigation and his efforts on behalf of the Class members.

16   (Yeremian Decl., ¶ 9) Plaintiff also provided a Declaration in support of the Fees and Costs

17   Motion and award of the requested $5,000 Class Representative Incentive Award, which details

18   his invaluable contributions to this litigation and his unwavering efforts to secure this Settlement

19   on behalf of the Class members. (*See* Cunha Declaration in support of Fees and Costs Motion, at

20   ECF No. 212-7, ¶¶ 3-17.) Plaintiff and Class Counsel request that he be awarded the requested

21   Class Representative Incentive Award of **$5,000.00**.

22         **D.    <u>Final Certification for Settlement Purposes Is Appropriate</u>**

23         For the reasons set forth in greater detail in connection with Plaintiff's previously filed

24   Motion for Preliminary Approval, Supplemental Briefing, and Fees and Costs Motion, Plaintiff

25   respectfully submits that the proposed putative Class satisfies the requirements of Fed. Civ. P.

26   23(b)(3) for purposes of settlement. The Court has preliminarily certified the putative class in its

27   Preliminary Approval Order. (*See* ECF. No. 210) The "Settlement Class Members" are defined as:

28   all individuals from whom Chico Produce obtained written consent between December 20, 2014

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1   and January 1, 2018, using forms titled Disclosure and Authorization for Consumer Reports,

2   Authorization for Background Investigation, and Disclosure and Authorization for Consumer

3   Reports, to conduct a background check and upon whom Chico Produce subsequently obtained a

4   background check. Defendant's records establish that there are **111** Settlement Class Members.

5   (Nava Decl., ¶¶ 12.)

6          **E.**     **Settlement Administration Costs Should Be Approved**

7          The Court approved Settlement Administrator, ILYM Group, Inc., is and has been

8   responsible for mailing Class Notice to the Class Members, processing Class Notice, responding to

9   Class member inquiries, calculating the settlement payments, transmitting individual settlement

10  payments to participating Class Members, providing status reports of the settlement administration

11  to all counsel on a regular basis, calculating and withholding the Class Members' share of taxes,

12  paying those withholdings to the appropriate government agencies, distributing the settlement

13  checks, and performing such other duties as the parties may direct. (*See* Nava Decl., ¶¶ 3-14.) The

14  preliminarily approved costs incurred by ILYM Group, Inc. are $6,000, and this is the amount

15  ILYM is requesting it be awarded at final approval. (*Id*. at ¶ 14.) Plaintiff therefore requests final

16  approval of the Settlement Administration costs to ILYM Group, Inc. in the amount of **$6,000.**

17  **IV.    NOTICE HAS BEEN DISSEMINATED TO THE CLASS PURSUANT TO THE**

18          **COURT-APPROVED NOTICE PROGRAM**

19          Rule 23(c)(2)(B) provides that, in any case certified under Rule 23(b)(3), the court must

20  direct to class members the "best notice practicable" under the circumstances. Rule 23(c)(2)(B)

21  does not require "actual notice" or that a notice be "actually received." *Silber v. Mabo*, 18 F.3d

22  1449, 1454 (9th Cir. 1994). Notice need only be given in a manner "reasonably calculated, under

23  all the circumstances, to apprise interested parties of the pendency of the action and afford them an

24  opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S.

25  306, 314 (1950).

26          Here, the Parties jointly drafted the Notice of Class Action Settlement, which the Court has

27  approved.  (ECF No. 210).  Before mailing the Class Notice, the Settlement Administrator verified

28  the addresses produced by Defendant for each Class Member using the National Change of

1  Address Database. (*See* Nava Final Approval Decl. ¶ 6) The Settlement Administrator performed a

2  skip trace to ascertain the current addresses of the class members and re-mail notices to Settlement

3  Administrator, 28 Notices were returned as undeliverable, 10 Notices were re-mailed by ILYM,

4  leaving 18 notices that were deemed undeliverable. (*Id.* at ¶¶ 6-9.)

5  **V.**      **CONCLUSION**

6        For the reasons set forth herein, and in the Motion for Preliminary Approval and Motion

7  for Attorneys' Fees and Costs and Class Representative Incentive Award, and the documents

8  submitted in support, Plaintiff respectfully requests that this Court grant final approval to the

9  proposed Settlement and enter the proposed Judgment and Order in the form submitted herewith.

10

11  DATED:   June 14, 2021                        DAVID YEREMIAN & ASSOCIATES, INC.

12

13                                   By /S/ David Yeremian
                                         David Yeremian
14                                       Natalie Haritoonian
                                         Attorneys for Plaintiff James Cunha, and the
15                                       Settlement Class Members

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT